DO # 348 2CIT/ATTY ORIGINAL

FILED 2019 JUL 22 PM 12:33 FELICIA PITRE DISTRICT CLERK DALLAS CO., TEXAS Alicia Mata DEPUTY

CAUSE NO. DC-19-10273

| | | |
|---|---|---|
| JOHN STANCU, Plaintiff, | § | IN THE DISTRICT COURT |
| v. | § | |
| HYATT CORP./HYATT REGENCY DALLAS, GALLAGHER BASSETT SERVICES, Defendants. | § | E-101st JUDICIAL DISTRICT |
| | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR A JURY TRIAL**

Plaintiff John Stancu, files this original petition and request for a jury trial against Defendants Hyatt Corp./Hyatt Regency Dallas, and Gallagher Bassett Services, and alleges as follows:

**DISCOVERY-CONTROL PLAN**

1. Plaintiff intends to conduct discovery under Level 2/3 of Texas Rule of Civil Procedure 190.3/190.4, and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because plaintiff seeks monetary relief over $100,000.

**CLAIM FOR RELIEF**

2. Plaintiff seeks monetary relief over $1,000,000.

**PARTIES**

3. Plaintiff John Stancu, is an individual residing in Dallas County, and receiving his mail at P.O. Box 133171, Dallas, Texas 75313.

**EXHIBIT B**

4. There are two **Defendants** in this case:

(a). First Defendant is a business named Hyatt Corporation/ Hyatt Regency Dallas. The name and address of its registered agent for service of process is:

**United States Corporation Company**
**211 E. 7-th Street, Ste. 620**
**Austin, Texas 78701-3218**

(b). Second Defendant is a business named Gallagher Bassett Services. The name and address of its registered agent is:

**Prentice Hall Corp. System**
**211 E. 7-th Street, Ste. 620**
**Austin, Texas 78701-3218**

**FACTS**

5. Stancu works as a Building Engineer for Hyatt Regency Dallas Hotel, since 2015. On August 23, 2018, Stancu had a work accident during the course of his job, at Hyatt Regency Dallas Hotel located at 300 Reunion Blvd., Dallas, Texas 75207.

6. Plaintiff Stancu was carrying large, heavy boxes of building supplies, going up the stairwell of the 29 story building. After about one hour of work Stancu accidentally slipped and fell on the metal stairs. During this fall, a 3 feet X 3 feet box got squeezed between the steps and Stancu's abdomen. The sudden, hard hit on Stancu's stomach caused him to pass out for several minutes. A brief description of this accident is presented in the sworn Affidavit of John Stancu, attached hereto as Exhibit A.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

**Gait:**

Normal gait, narrow base, normal posture, normal arm swing

**National Institutes of Health Stroke Scale (NIHSS)**

| | |
|---|---|
| 1a Level of Consciousness: | 0 |
| 1b LOC Questions: | 0 |
| 1c Commands: | 0 |
| 2 Best Gaze: | 0 |
| 3 Visual: | 0 |
| 4 Facial Palsy: | 1 |
| 5a Left Motor Arm: | 0 |
| 5b Right Motor Arm: | 0 |
| 6a Left Motor Leg: | 0 |
| 6b Right Motor Leg: | 0 |
| 7 Limb Ataxia: | 0 |
| 8 Sensory: | 1 |
| 9 Best Language: | 0 |
| 10 Dysarthria: | 0 |
| 11 Extinction and Inattention: (formerly Neglect) | 0 |

**NIHSS Score: 2**

**Pertinent Labs:**

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.67 | 09/01/2018 |
| HGB | 8.5 (L) | 09/01/2018 |
| HCT | 25.6 (L) | 09/01/2018 |
| MCV | 91.1 | 09/01/2018 |
| PLT | 325 | 09/01/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 142 | 09/01/2018 |
| K | 4.0 | 09/01/2018 |
| CL | 106 | 09/01/2018 |
| CO2 | 28 | 09/01/2018 |
| ANIONGAP | 8 | 09/01/2018 |
| BUN | 11 | 09/01/2018 |
| CREATININE | 0.83 | 09/01/2018 |
| GLUCOSE | 98 | 09/01/2018 |

[illegible]

| [illegible] | Value |
|---|---|
| 09/01/2018 | 98 |

CONFIDENTIAL
Tex. Labor Code
§402.083

3. Claimant sustained a compensable injury on August 23, 2018.

## DECISION

Claimant sustained a compensable injury on August 23, 2018.

## ORDER

Insurance Carrier is ordered to pay benefits in accordance with this decision, the Texas Workers' Compensation Act, and the Commissioner's Rules. Accrued but unpaid income benefits, if any, shall be paid in a lump sum together with interest as provided by law.

The true corporate name of the insurance carrier is **HYATT CORPORATION (SELF-INSURED)**, and the name and address of its registered agent for service of process is:

**UNITED STATES CORPORATION COMPANY**
**211 E. 7th STREET, STE. 620**
**AUSTIN, TEXAS 78701-3218**

Signed this 27th day of March, 2019.

Gerri Thomas
Administrative Law Judge

# EXHIBIT G



Picture of the rifle bullet found on my tools cart.

# EXHIBIT H

# Panel Questions State Dept. Role in Iraq Oil Deal

*James Glanz and Richard A. Oppel Jr.*

Bush administration officials knew that a Texas oil company with close ties to President Bush was planning to sign an oil deal with the regional Kurdistan government that ran counter to American policy and undercut Iraq's central government, a Congressional committee has concluded.

The conclusions were based on e-mail messages and other documents that the committee released Wednesday.

United States policy is to warn companies that they incur risks in signing contracts until Iraq passes an oil law and to strengthen Iraq's central government. The Kurdistan deal, by ceding responsibility for writing contracts directly to a regional government, infuriated Iraqi officials. But State Department officials did nothing to discourage the deal and in some cases appeared to welcome it, the documents show.

The company, Hunt Oil of Dallas, signed the deal with Kurdistan's semiautonomous government last September. Its chief executive, Ray L. Hunt, a close political ally of President Bush, briefed an advisory board to Mr. Bush on his contacts with Kurdish officials before the deal was signed.

In an e-mail message released by the Congressional committee, a State Department official in Washington, briefed by a colleague about the impending deal with the Kurdistan Regional Government, wrote: "Many thanks for the heads up; getting an American company to sign a deal with the K.R.G. will make big news back here. Please keep us posted."

The release of the documents comes as the administration is defending help that United States officials provided in drawing up a separate set of no-bid contracts, still pending, between Iraq's Oil Ministry in Baghdad and five major Western oil companies to provide services at other Iraqi oil fields.

In the no-bid contracts, the administration said it had provided what it called purely technical help writing the contracts. The United States played no role in choosing the companies, the administration has said.

Disclosure of those contracts has provided substantial fuel to critics of the Iraq war, both in the United States and abroad, who contend that the enormous Iraqi oil reserves were a motivation for the American-led invasion — an assertion the administration has repeatedly denied.

Iraq's oil minister, Hussain al-Shahristani, has condemned the Kurdistan deal as

illegal because it was not approved by Iraq's central government and was struck without an oil law, which has still not been passed.

After the deal was signed last year, a senior State Department official in Baghdad criticized it, saying, "We believe these contracts have needlessly elevated tensions between the K.R.G. and the national government of Iraq."

The State Department said Wednesday that it had discouraged the deal. Hunt officials declined to comment, and Kurdish government officials said there was no impropriety.

In a letter to the House Committee on Oversight and Government Reform, whose chairman is Representative Henry A. Waxman, Democrat of California, a State Department official wrote that the department had strongly discouraged Hunt from signing the deal until an oil law had been passed.

The State Department told Hunt that "we continue to advise all companies that they incur significant political and legal risk by signing contracts" before then, wrote Jeffrey T. Bergner, an assistant secretary for legislative affairs at the department, in one of the documents made public on Wednesday.

But in a letter to Secretary of State Condoleezza Rice, Mr. Waxman wrote that the documents his committee had collected "tell a different story about the role of administration officials." In letters obtained by the committee, Mr. Hunt informed the President's Foreign Intelligence Advisory Board, of which he was a member, last July and August that he was pursuing serious business interests in Kurdistan.

"We were approached a month ago by representatives of a private group in Kurdistan as to the possibility of our becoming interested in that region," Mr. Hunt wrote to the board last July 12. "We had one team of geoscientists travel to Kurdistan several weeks ago and we were encouraged by what we saw."

In August 2007, Mr. Hunt informed State Department officials directly of his intentions in Kurdistan, and on Sept. 5, three days before the deal was signed, a flurry of e-mail messages among Hunt and State Department officials make clear that the department was aware of what was in the works.

Photo



Ray L. Hunt, the chairman and chief executive of Hunt Oil, in an undated photo. Credit Bloomberg News

In a message to a colleague with the subject line "Hunt Oil to Sign Contract With K.R.G.," one State Department official gives a highly detailed summary of the agreement. Mr. Hunt, the official wrote, "is expecting to sign an exploration contract with the K.R.G. for a field located in the Shakkan district, an area under K.R.G. control (inside the Green Line) but technically in Nineveh Governorate."

"Hunt would be the first U.S. company to sign such a deal," the official wrote, suggesting that the news should be rushed onto the State Department's internal distribution network as quickly as possible.

Despite those exchanges, a State Department official said Wednesday that the company had in fact been discouraged from completing its deal.

"All companies, including Hunt Oil, which have spoken with the United States government about investing in Iraq's oil sector, have and will continue to be given the same advice," John Fleming, an Iraq press officer in the State Department's Bureau of Near Eastern Affairs, wrote Wednesday in an e-mailed response to questions. "We advise companies that they incur significant political and legal risk by signing any contracts with any party before a national law is passed by the Iraqi Parliament."

Another State Department official, who asked to remain anonymous, expressed frustration, saying that a local State Department official in Erbil, the Kurdish provincial capital, who was the head of a so-called Regional Reconstruction Team, tried to dissuade Hunt officials from making the deal.

But no notes were taken at that meeting, the official said, and Hunt representatives later gave a conflicting account of what had been said.

"I have talked to the R.R.T. team leader personally, and he sticks by his story and they stick by theirs," the State Department official said.

Jeanne L. Phillips, a senior vice president for corporate affairs and international relations at Hunt Oil whose correspondence appears at certain points in the documents released Wednesday, said that because Mr. Waxman's letter was not addressed directly to the company, she could not comment on it.

"As a matter of company policy, Hunt Oil Company does not comment on correspondence between third parties," Ms. Phillips wrote in an e-mail message.

An official in the Kurdistan Regional Government reached late Wednesday who asked not to be named said that the government had written some 22 contracts to date.

"Anyone can have a contract with the K.R.G., but it must be accepted and suitable according to assessment by our experts," the official said. "Hunt is a good company and never had its contracts with us illegally or improperly."

The documents released by Mr. Waxman also lay bare what has become a serious dispute between the company and the State Department over what was said

between them before the deal last year.

For example, a senior Hunt official said he was told by State Department officials during a meeting on June 15, 2007, that the United States government did not object to deals with the Kurdish regional government.

"I specifically asked if the U.S.G. had a policy toward companies entering contracts with the K.R.G.," the Hunt official, David McDonald, wrote in an e-mail message to a colleague last Sept. 28. The State Department officials, Mr. McDonald wrote, replied that there was no policy, neither for nor against.

His message concluded: "There was no communication to me or in my presence made by the nine State Department officials with whom I met prior to 8 September that Hunt should not pursue our course of action leading to a contract. In fact, there was ample opportunity to do so, but it did not happen."

The encouragement by State Department officials did not end with the signing of the contract on Sept. 8, the documents suggest. Five days later, a State Department official in the southern city of Basra wrote to Ms. Phillips, "I read and heard about with interest your deal with the regional Kurdish government."

"I don't know if you are aware of another opportunity," the official wrote, mentioning an enormous port project and a natural gas project in the south. After a few more lines, the official concluded, "This seems like it would be a good opportunity for Hunt."

A version of this article appears in print on , on Page A1 of the New York edition with the headline: PANEL QUESTIONS STATE DEPT. ROLE IN IRAQ OIL DEAL.

---

© 2019 The New York Times Company

# EXHIBIT I

# AFFIDAVIT OF JOHN STANCU

STATE OF TEXAS §

DALLAS COUNTY §

Before me, the undersigned Notary Public, on this day personally appeared John Stancu, who swore and deposed under oath as follows:

1. My name is John Stancu. I am over 18 years of age and fully competent to make this affidavit.I have personal knowledge of the facts described in this affidavit, all of which are true and correct.

2. I am employed by Hyatt Regency Dallas/Hyatt Corporation as a building engineer, since October 23, 2015.

3. This particular hotel, Hyatt Regency Dallas, is managed by Woodbine Development Corp./Hunt Realty Investments, a clongomerate owned by oil billionaire Ray Hunt.

4. Currently I am in litigation with my employer for age discrimination and retaliation.

5. In the last two months, my employer escalated their retaliations against me, as described in the following paragraphs:

6. On the month of February, 2019, a vacuum machine that was used for cleaning the air conditioning system was stoled from my tools cart. This sabotaged my job performance and impeded me from doing my job properly.

7. On March, 2019, the chair that I used to do the paper work at the end of the work day, was stolen from the supplies room. Similar chairs were removed from the supplies room at least fifty times before, until I chained the chair to the metal shelves. The next day, on March 26, 2019, the chain that secured the chair was cut with a bolt cutter and the chair was stolen again.
On or about March 28, 2019, an employee of Hyatt by the name of Jerryll Brown approached me and stated that he was instructed by the Director of the Engineering Dept., **Brett Killingsworth** to take the chair out of the room every day.

8. On or about March 28, 2019, at about 7:50 a.m. I found on my tools cart a bullet with my name written on it. I consider this to be an obvious death threat.
A true and correct copy of this rifle bullet is attached to this affidavit as Exhibit A.

9. On or about March 29, 2019, and April 4 and 5, 2019, my direct supervisor Sammy Molina told me that Director **Brett Killingsworth** said to him during conversations about me that, quote: "When I see him I feel like punching him [me, the affiant] straight in the mouth." I reported this threat to the HR Director Mark Spinelli.

10. On the morning of April 20, 2019, at app. 7:25 a.m. supervisor Sammy Molina told me that he received an e-mail from the Hyatt's corporate office, warning him that I am in litigation with Hyatt, and he shall not discuss with me any of the manage - ment's conversations about me, nor their plans for actions against me. This e-mail was underlined as "Confidential".

11. On or about the second week of April, 2019, I was waiting for a service elevator on the P level of the hotel. Another Hyatt's employee by the name of Odilon Martinez was waiting for the same elevator; we had a casual chat while waiting. Director **Brett Killingsworth** was standing in the corner of the hallway, surveilling us from the distance. The next day Mr. Martinez told me that Mr. Killingsworth approached him and asked a string of questions, like "What John said to you ?", and warned him to "Watch out that man !", inquiries that were defamatory. Mr. Martinez stated that, quote: "Your boss does not like you."

12. On April 30, 2019, Director **Brett Killingsworth** instructed supervisor Tim Jarrett to stalk me around the hotel. At app. 2:00 p.m. of the above mentioned day, supervisor Jarrett approa - ched me and went into a tirade of nonsense questions like, quote: "What are you up to ?", searched my tools cart, and in the end asked "Why are you leaving early ?". This kind of confrontational scrutinity was an aggresive form of harassment because: (a). During the morning meeting of that day I informed all the supervisors that I will leave work two hours early in accordance with my Family and Medical Leave Act (FMLA) certification, and (b). All the management knows for two years that I am under FMLA status, including the reduced work schedule. This sort of harass- ment occurred at least twenty times before, is impeding my medical treatment, is in violation of FMLA laws, and creates a hostile work environment.

13. On May 10, 2019, at app. 3:35 p.m., Assistant Director Micah Bell came to the Paint Shop (where I store my supplies and tools at the end of the day) and told me that Director **Brett Killingsworth** instructed him to ask me what I am doing there and practically to keep up the harassments and threats described in the previous paragraphs.

14. On May 14, 2019, at about 9:05 a. m. I was working inside room number 510 of the hotel. During my work I noticed supervisor Sammy Molina standing outside the entry door, like a prison guard, and staring at me in a menacing manner.

15. And in spite of the ongoing Age Discrimination lawsuit, from about January 10, 2019, until present (May 16, 2019) my employer continued to place numerous derogatory and threatening notes about my age, in my tools locker and my supplies cart.

16. My employer is using the Security Dept. of the hotel to stalk me around. For example on May 15, 2019, at app. 2:50 p.m. I was in my 30 minutes lunch break, sitting outside the building, on the hotel's porch. A security worker by the name of Julia came on the porch and was acting like she was looking at the blue skies. This is just one out of hundreds of similar harassing incidents.

17. In addition, everytime I return to work in the mornings, I found my tools and supplies cart vandalized.

18. All of the above described acts of retaliatory harassments were reported to the local and regional Human Resources offices, to the CEO of Hyatt Corp. Mark Hoplamazian, the Executive Chairman of Hyatt Corp. Thomas Pritzker, and the owner of Hyatt Regency Dallas, shady billionaire Ray Hunt. The fact that the adverse actions against me escalated after I informed the above named individuals, is a clear indication that the top management and the owner are condoning these civil rights abuses under the pretense that they are not aware of it. The hundreds of nonstop adverse actions against me established an extremely hostile work environment, reduced my opportunity for promotion to practically zero, and are inflicting harm on my health, and financial wellbeing.

19. The United States Supreme Court has decided that whether a work environment is "objectively intimidating, hostile, or offensive," **id.**, depends on whether the harassment is "severe or pervasive", which "can be determined by looking at all the circumstances." **Harris v. Forklift Sys., Inc.**, 510 U.S. 17, 23 (1993).

20. "Under the totality of circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable [hostile work environment] claim, as well as a continous pattern of much less severe incidents of harassment." **EEOC v. WC&M Enters., Inc.**, 496 F.3d 393, 400 (5th Cir. 2007) (Title VII). Thus, "a regular pattern of frequentverbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII," **Id.**

# EXHIBIT A



Picture of the rifle bullet found on my tools cart.

JOHN STANCU

Sworn to and subscribed before me by John Stancu on this 20-th day of May, 2019.

JAIME WHALEY
Notary Public State of Texas
My Commission# 130979226
My Comm. Exp. Jan. 23, 2021

NOTARY PUBLIC - in and for the STATE of TEXAS

My commission expires on: January 23, 2021

# EXHIBIT J

**Texas Department of Insurance**
Division of Workers' Compensation
7551 Metro Center Dr., Ste 100
Austin, TX 78744-1645

| | |
|---|---|
| **Injured Employee:** | JOHN STANCU |
| **DWC #:** | 19110137-DA |
| **Date of Injury:** | 08/23/2018 |
| **Employer:** | Hyatt Corp |
| **Carrier:** | Hyatt Corp |
| **Carrier Claim #:** | 011202060386WC01 |
| **Date:** | 05/23/2019 |

JOHN STANCU
5454 Amesbury Dr Apt 907
Dallas, TX 75206-3218

Subject Considered:
**REQUEST FOR DESIGNATED DOCTOR EXAMINATION**

## COMMISSIONER ORDER

## APPROVAL OF REQUEST FOR DESIGNATED DOCTOR EXAMINATION

**Designated Doctor Examination Information**

Designated Doctor: CHARLES SILVER
License Number: D7683
Telephone Number: 713-961-7277
Examination Date: 06/14/2019
Examination Time: 11:30 AM
Examination Location*: Charles Silver, M. D., 8500 N Stemmons Fwy Ste 6065, Dallas TX 75247-3811

***NOTE TO TREATING DOCTOR AND INSURANCE CARRIER**
Send medical records to designated doctor's correspondence address at 2211 W 34th St, Houston TX 77018-6004

**Purpose of Examination**

- ☒ Maximum Medical Improvement (MMI)
- ☒ Impairment Rating (IR)
- ☐ Extent of Injury
- ☐ Disability
- ☐ Return to Work
- ☐ Return to Work (Supplemental Income Benefits)
- ☐ Other (Similar Issues): ____________________

The Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) received a request (DWC Form-032, *Request for Designated Doctor Examination*) to appoint a designated doctor to answer questions regarding specific issue(s) enumerated in Section II for the above referenced injured employee claim. The request was reviewed and considered, and the Commissioner of Workers' Compensation has approved the request as authorized by Texas Labor Code §408.0041 and TDI-DWC rules. If you do not already have a copy of the DWC Form-032 filed to request this examination, you may contact the TDI-DWC at 1-800-252-7031 to obtain a copy.

**IT IS THEREFORE ORDERED** by the Commissioner of Workers' Compensation that parties named in this Order comply with the decision as specified below. The examination conducted pursuant to this Order and all reports and communication that result from this Order shall comply with applicable TDI-DWC rules and provisions of the Texas Labor Code. Failure or refusal by any person to comply with this Order is an administrative violation and may subject the person to sanctions as authorized by the Texas Labor Code or TDI-DWC rules.

**IT IS FURTHER ORDERED THAT THE INJURED EMPLOYEE NAMED ABOVE SHALL** attend the examination specified in this Order. The name and telephone number of the designated doctor assigned in accordance with Texas Labor Code §408.0041 are listed in Section I above. The examination date, time, and location are shown above. The examination location may not be changed without prior approval of the TDI-DWC. If the injured employee fails or refuses to attend this examination without good cause, the insurance carrier may suspend payment of income benefits. If a scheduling conflict prevents the injured employee from attending the examination as scheduled, the injured employee must reschedule the examination by calling the designated doctor at least one (1) working day prior to the scheduled examination. A rescheduled examination must occur within 21 calendar days of the originally scheduled examination.

**IT IS FURTHER ORDERED THAT THE DESIGNATED DOCTOR NAMED ABOVE SHALL** perform the examination of this injured employee at the examination location and on the date and time shown above. The examination location may not be changed without good cause and the prior approval of the TDI-DWC. If a scheduling conflict prevents the designated doctor from attending the examination as scheduled, the designated doctor must reschedule the examination by calling the injured employee at least 24 hours prior to the scheduled examination. A rescheduled examination shall be set to occur no later than 21 calendar days after the originally scheduled examination and may not be rescheduled to occur before the originally scheduled examination. If the designated doctor has not received medical records at least three (3) working days prior to the examination, the designated doctor shall not conduct an examination and shall report this violation to the TDI-DWC within one (1) working day of not timely receiving the records. Once notified, the TDI-DWC shall take action necessary to ensure that the designated doctor receives the records. If the designated doctor does not receive the medical records within one (1) working day of the examination or if the designated doctor does not have sufficient time to review the late medical records before the examination, the designated doctor shall reschedule the examination to occur no later than 21 days after receipt of the records. If the injured employee qualifies for accommodations under Title II of the *American with Disabilities Act*, the designated doctor will communicate with the insurance carrier to assure that appropriate accommodations are provided at the time of the examination.

To determine the existence and degree of the injured employee's impairment, the designated doctor must use the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment, Fourth Edition, (1st, 2nd, 3rd, or 4th printing), including corrections and changes as issued by the AMA prior to May 16, 2000. The designated doctor must use the DWC Form-069, *Report of Medical Evaluation*, to report findings and submit the form and documentation supporting the calculation of the impairment rating to the injured employee, injured employee's representative, if any, treating doctor, insurance carrier, and the TDI-DWC no later than seven (7) working days after the examination. 28 Texas Administrative Code (TAC) §§127.10(d), 127.220(b) and 130.3 are applicable to this examination.

**IT IS FURTHER ORDERED THAT THE TREATING DOCTOR, IF ANY, SHALL** send a copy of all medical records related to the injured employee's medical condition to the designated doctor at the correspondence address provided on this Order. The treating doctor may also send the designated doctor an analysis of the injured employee's medical condition, functional abilities, and return-to-work opportunities. The analysis must comply with 28 TAC §127.10(a)(2). If the treating doctor sends an analysis to the designated doctor, the treating doctor must also send a copy to the insurance carrier, injured employee, and injured employee's representative, if any. The treating doctor shall ensure that the required records and analyses, if any, are received by the designated doctor no later than three (3) working days prior to the examination.  The analysis sent by any party may only cover the injured employee's medical condition, functional capabilities, and return-to-work opportunities as provided in Texas Labor Code §408.0041.

**IT IS FURTHER ORDERED THAT THE INSURANCE CARRIER NAMED ABOVE SHALL** send a copy of all medical records related to the injured employee's medical condition to the designated doctor at the correspondence address provided on this Order. The insurance carrier may also send the designated doctor an analysis of the injured employee's medical condition, functional abilities, and return-to-work opportunities. The analysis must comply with 28 TAC §127.10(a)(2). If an analysis is sent to the designated doctor, a copy must also be sent to the treating doctor, injured employee, and injured employee's representative, if any. The insurance carrier must ensure that the required records and analysis, if any, are received by the designated doctor no later than three (3) working days prior to the examination. Texas Labor Code §408.0041(h) requires the insurance carrier to pay for the designated doctor's service. If the injured employee qualifies for accommodations under Title II of the Americans with Disabilities Act, the insurance carrier shall communicate with the designated doctor to ensure that those accommodations are in place for the examination.  The analysis sent by any party may only cover the injured employee's medical condition, functional capabilities, and return-to-work opportunities as provided in Texas Labor Code §408.0041.

**NOTICE TO DOCTORS AND HEALTH CARE PRACTITIONERS:** Your financial interests, as a health care practitioner, in a health care provider including a health care facility are required to be disclosed in accordance with Texas Labor Code §413.041 and 28 TAC § §127.140 and 180.24 when you have made a referral to such a health care provider. To submit information, go to the TXCOMP Health Care Provider System at http://www.tdi.texas.gov/wc/txcomp.html.

**NOTICE TO ALL PARTIES:** This examination is authorized by Order of the Commissioner of Workers' Compensation and may not be canceled except by Order of the Commissioner. Parties are entitled to file a request for an expedited contested case hearing to dispute an approved request for Designated Doctor Examination. Parties seeking expedited proceedings and the stay of an ordered examination must file their request for expedited proceedings with the TDI-DWC within three (3) days of receiving this order [28 TAC §127.1(f)]. A copy of the DWC Form-032 filed to request this examination is available by contacting the TDI-DWC at 1-800-252-7031 to obtain a copy.

**NOTICE TO INJURED EMPLOYEE:** Texas Labor Code §408.0041(h)(2) says the insurance carrier shall pay for reasonable expenses incident to the employee in attending the examination. A travel reimbursement form may be obtained from the TDI website at http://www.tdi.texas.gov/forms/form20.html or by calling 1-800-252-7031. An injured employee who qualifies has the right to receive appropriate accommodations under Title II of the Americans with Disabilities Act.

45441441000045020 8

Joseph McElrath
Deputy Commissioner for Business Process
Designated Doctor Exam Coordination

C:
CHARLES SILVER
Hyatt Corp

This page intentionally left blank.

# EXHIBIT K



Austin
San Antonio
Rio Grande Valley
Houston

Tim K. Singley
One International Centre
100 N.E. Loop 410, Suite 500
San Antonio, TX 78216-4741
Telephone: (210) 581-0293
Fax: (210) 525-0666
tsingley@thorntonfirm.com

June 11, 2019

***Via Email: kblickenstaff@medevaltx.com***
Dr. Charles Silver
2211 W. 34th Street
Houston, Texas 77018

| Re: | DWC No. | : | 19110137 |
|---|---|---|---|
| | Claim No. | : | 011202060386WC01 |
| | Claimant | : | John Stancu |
| | Insured | : | Hyatt Corp |
| | Carrier | : | Self- Insured |
| | Loss Date | : | 08/23/18 |
| | Our File No. | : | 04194-43410 |

Dear Dr. Silver:

Please be advised that the undersigned represents **Hyatt Corp., Self-Insured** in the above referenced matter with respect to a work-related injury of **John Stancu**. Please find this analysis letter as allowed under DWC Rule 126.7(i)(2): "the treating doctor and the insurance carrier may also send the designated doctor an analysis of the employee's medical condition, functional abilities, and return to work opportunities. The analysis may include supporting information such as videotaped activities of the employee, as well as, marked copies of medical records.

You have been selected to serve as a Designated Doctor to provide an examination related to Maximum Medical Improvement (MMI) and Impairment Rating (IR). It is our understanding that you have an appointment to see **Mr. Stancu on June 14, 2019.**

**The compensable injury is limited to a right ankle contusion and abdominal wall contusion only per D&O signed March 27, 2019**.

On 08/23/18, Claimant alleges he was moving boxes of air conditioner filters when he slipped and fell.

On 08/30/18, Claimant presented to Parkland Hospital/ER with complaints of light headedness and diaphoresis that occurred in his engineering job 6 days ago. Claimant reported intermittent episodes of unsteadiness since then; worse when standing and numbness of the fingertips. Claimant denies speech change, abdominal pain, CH, HA, n/v, LOC, or recent trauma. Claimant reports he was on warfarin due to history of PE about a year ago and stopped taking medication about a month ago after seeing blood in stool. Physical exam reveals Claimant is alert with abnormal coordination and gait. Medical records show concern for stroke and GI bleed off anticoagulation. Claimant was diagnosed with multiple right

hemispheric acute infarctions, presumably embolic. **Claimant left against medical advice and stated he would go back to the ER tomorrow**.

On 09/12/18, Claimant presented to Concentra with complaints of right ankle and abdomen injury due to fall while carrying a box at work. Claimant reports dull pain in the right ankle; exacerbating factors include ankle movement. Abdominal pain with full flexion only. Physical exam reveals abdomen has minimal tenderness 2" inferior to umbilicus; mild umbilical hernia but not tender. Right ankle minimal tender right foot ambulation. Diagnosed with right ankle sprain and abdominal wall contusion. Claimant was diagnosed with right ankle sprain and abdominal wall contusion. Claimant was given prescription for Naproxen and PT referral. Claimant continued working with no restrictions.

On 09/17/18, Claimant followed up with Concentra for recheck. Claimant reports ankle doing better and abdominal pain when bending. Claimant complains of feeling tired at the end of the day and right lateral ankle pain; worse in am and improves with activity. Physical exam reveals mild tenderness in the right upper quadrant of the abdominal wall and right ankle normal appearance with full ROM. Claimant was released from care as MMI was reached for the claimant's injury.

For your convenience, use, and consideration, enclosed please find the following identified documentation:

1.    Various DWC Documents;
2.    Written Statement of John Stancu;
3.    Charge of Discrimination Form from TWC Civil Rights Division;
4.    Employer Records;
5.    Medical Records of Parkland Health and Hospital System;
6.    Medical Records of Concentra/ Matthew L. Loewen, DO;
7.    US Dept. of Labor- FMLA Certificate of Provider;
8.    Affidavit and Correspondence of John Stancu;

The compensable injury is limited to a right ankle contusion and abdominal wall contusion only as per the Decision & Order signed March 27, 2019; therefore, please issue a certification that takes into account only these conditions.

Upon completion of your Report of Medical Evaluation with the appropriate attachments, copies are to be filed with the Texas Department of Insurance Division of Workers' Compensation, employee, employee's representative, and the insurance carrier no later than the seventh (7th) working day after the later of the date of the certifying examination or the receipt of all the medical information required by this Section. By copy of this letter, we are hand delivering a copy of the above documents to all interested parties.

The parties appreciate your assistance in this matter. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

THORNTON, BIECHLIN,
REYNOLDS & GUERRA, L.C.

BY______________________
Tim K. Singley

TKS/cn

*Via First Class Mail*

cc: Mr. John Stancu
5454 Amesbury Drive 907
Dallas, Texas 75206

*Via Email: janee_scott@gbtpa.com*

cc: Ms. Janee' Scott
Gallagher Bassett Services
16414 San Pedro Ave, Suite 950
San Antonio, Texas 78232

# EXHIBIT L

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M

Progress Notes by Safari, Nasrin, MD at 5/13/2019 8:00 AM (continued)

HPI

Pt in clinic for completion FMLA form regarding restriction at job (cannot do fast paced job) because of left shoulder pain and left leg numbness since last year August. Left shoulder with some restriction in movements mainly raising.
Does not take warfarin (because of melena) currently on ASA only
Colonoscopy and EGD not done due to does not have insurance y et
Takes his medicines regularly
Taking iron tablets, folic acid and iron

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • HTN (hypertension) | |
| • Hyperlipidemia | |
| • Pulmonary embolism | 06/2017 |

**Patient Active Problem List**

| Diagnosis | Date Noted |
|---|---|
| • Cerebrovascular accident (CVA), unspecified mechanism | 11/08/2018 |
| • Gastrointestinal hemorrhage with melena | 08/30/2018 |
| • Ataxia | 08/30/2018 |
| • Anticoagulation management encounter [Z51.81, Z79.01] | 09/15/2017 |
| • Encounter for therapeutic drug monitoring [Z51.81] | 09/15/2017 |
| • Other pulmonary embolism without acute cor pulmonale, unspecified chronicity | 06/23/2017 |
| • HLD (hyperlipidemia) | |
| • HTN (hypertension) | |

**Social History**

Social History

| | |
|---|---|
| • Marital status: | Single |
| Spouse name: | N/A |
| • Number of children: | N/A |
| • Years of education: | N/A |

Social History Main Topics

| | |
|---|---|
| • Smoking status: | Never Smoker |
| • Smokeless tobacco: | Never Used |
| • Alcohol use | Yes |
| *Comment: casually* | |
| • Drug use: | No |
| • Sexual activity: | Not Currently |
| Partners: | Female |

| Other Topics | Concern |
|---|---|
| • Not on file | |

Social History Narrative
*Lives alone*

Printed on 6/3/19 9:34 AM PARKLAND HEALTH & HOSPITAL SYSTEM

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 624524610
Encounter date: 5/13/2019

**Ioan John Stancu**
**5/20/2019 3:20 PM Appointment**

Description: **63 year old male**
Provider: **RAD DX CR IRVING**
Department: **Rad Irving**

XR SHOULDER LEFT 2 OR MORE VIEWS [372952865] — Resulted: 05/20/19 1546, Result status: Final result

Resulted by: Sims, Gina Cho, MD
Accession number: 85391411
Performed: 05/20/19 1533 - 05/20/19 1542
Resulting lab: PARKLAND LAB

Narrative:
EXAM: XR SHOULDER LEFT 2 OR MORE VIEWS

HISTORY: 63 years -old Male with shoulder pain

TECHNIQUE: XR SHOULDER LEFT 2 OR MORE VIEWS

COMPARISON: None

Impression:

Bones are osteopenic. There are mild degenerative changes of the glenohumeral and acromioclavicular joints. Diffuse osteopenia reduces sensitivity for detecting subtle nondisplaced fractures or infiltrating process. No acute displaced fracture or dislocation seen. Osseous irregularity at the greater tuberosity can be seen with rotator cuff pathology.

FOLLOW-UP RECOMMENDATIONS: Per clinical team.

Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **7 - Unknown** | PARKLAND LAB | Unknown | 5201 HARRY HINES BLVD DALLAS TX | 09/08/04 0500 - Present |

**Ioan John Stancu**
**5/13/2019 8:00 AM Office Visit**

Description: **63 year old male**
Provider: **Nasrin Safari, MD**
Department: **Irving Fam Practice**

**Progress Notes by Safari, Nasrin, MD at 5/13/2019 8:00 AM**

Author: Safari, Nasrin, MD
Filed: 5/14/2019 8:20 AM
Status: Signed
Service: (none)
Encounter Date: 5/13/2019
Editor: Safari, Nasrin, MD (Attending)
Author Type: Attending
Note Type: Progress Notes

**Subjective**

**Patient ID:** Ioan John Stancu is an 63 year old male.

**Chief Complaint:**
**Chief Complaint**
Patient presents with
- Hypertension
  *f/u and lt shoulder pain*

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 624524610
Encounter date: 5/13/2019

***Be Advised:*** *Epic is dynamic electronic medical record software that will produce a copy of the patient's medical records. A Face Sheet report is produced which contains demographic information that is not static as to a specific encounter date, but updated to the last current information.*

## Patient Demographics

**Name**
Stancu, Ioan John

**Patient ID**
1408904

**SSN**
xxx-xx-6846

**Sex**
Male

**Birth Date**
06/08/55 (63 yrs)

**Address**
5454 Amesbury Dr
Apt 907
Dallas TX 75206

**Phone**
469-567-3365 (H)
202-689-9233 (M)

**Email**

**Employer**
Hyatt Regency Hotel

**County**
DALLAS

**Reg Status**
PENDING

**PCP**
Safari, Nasrin, MD214-266-3000

**Admission Date**

**Discharge Date**

**Admitting Provider**

**Marital Status**
Single

**Alias**
STANCU,IOAN J

**Language**
English

**Emergency Contact 1**
Ryan Stancu (RELATIVE)
469-567-3365 (M)

## Patient Ethnicity & Race

**Ethnic Group**
Non Hispanic

**Patient Race**
White

Admit/Appt Department: IRVING FAMILY PRACTICE
Advance Directive:No
Privacy Notice: Acknowledgement

## Hospital Account

| Name | Acct ID | Class | Status | Primary Coverage |
|---|---|---|---|---|
| Stancu, Ioan John | 624524610 | COPC Outpatient | Billed | None |

## Guarantor Account (for Hospital Account #624524610)

**Name**
Stancu, Ioan John
**Address**
5454 Amesbury Dr
Apt 907
Dallas, TX 75206
**Emp Name**
Hyatt Regency Hotel
**Emp Address**
600 Reunion Blvd
DALLAS, TX 75207

**Relation to Pt**
Self
**Phone**
469-567-3365(H)

**Service Area**
PHHS

**Active?**
Yes
**Gender**
Male

**Acct Type**
Personal/Family
**DOB**
06/08/55

**Emp Status**
Part Time
**Emp Phone**
214-651-1234

**Occupation**

## Coverage Information (for Hospital Account #624524610)

Not on file

# EXHIBIT M

# Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)

U.S. Department of Labor
Wage and Hour Division

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

OMB Control Number: 1235-0003
Expires: 8/31/2021

**SECTION I: For Completion by the EMPLOYER**

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: Hyatt Regency Dallas, Dana Lopez - Tel: 214.712.7017, Fax: 214.712.7128

Employee's job title: Shift Engineer Regular work schedule: Average of 40hrs/week

Employee's essential job functions: Walking and standing for prolonged periods of time, some lifting, pushing, pulling, climbing, gripping, and grasping

Check if job description is attached:

**SECTION II: For Completion by the EMPLOYEE**

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: Ioan John Stancu
First Middle Last

**SECTION III: For Completion by the HEALTH CARE PROVIDER**

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Nasrin Safari 1800 N. Britain Rd. Irving, 75061

Type of practice / Medical specialty: Internal Medicine

Telephone: (214) 266 3000 Fax:( )

PART A: MEDICAL FACTS

1. Approximate date condition commenced: August 2018

   Probable duration of condition: undetermined

   **Mark below as applicable:**

   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ___No _✓_Yes. If so, dates of admission:

   08/30/2018 – 09-01-2018

   Date(s) you treated the patient for condition:

   11/8/2018

   Will the patient need to have treatment visits at least twice per year due to the condition? ___No _✓_Yes.

   Was medication, other than over-the-counter medication, prescribed? ___No _✓_Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ___No _✓_Yes. If so, state the nature of such treatments and expected duration of treatment:

   Referred to vascular surgery, physical therapy, GI specialist

2. Is the medical condition pregnancy? _✓_No ___Yes. If so, expected delivery date: ______

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: _✓_No ___ Yes.

   If so, identify the job functions the employee is unable to perform:

   unable to perform the fast paced job known as unit 1

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   Stroke August 2018, left shoulder pain chronic

CONTINUED ON NEXT PAGE

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ✓ No ___Yes.

   If so, estimate the beginning and ending dates for the period of incapacity: ____________________

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ✓ No ___Yes. Need follow ups.

   If so, are the treatments or the reduced number of hours of work medically necessary?
   ___No ✓ Yes.

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   about once every 3 months follow up appointments

   Estimate the part-time or reduced work schedule the employee needs, if any: N/A

   __________ hour(s) per day; __________ days per week from ____________ through ____________

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ✓ No ___Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups?
   ✓ No ___ Yes. If so, explain:

   ______________________________________________

   ______________________________________________

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency : _____ times per _____ week(s) _____ month(s)

Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

______________________________________________

CONTINUED ON NEXT PAGE

Signature of Health Care Provider

5/13/2019
Date

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

# EXHIBIT N

# Designation Notice (Family and Medical Leave Act)

U.S. Department of Labor
Wage and Hour Division

OMB Control Number: 1235-0003
Expires: 8/31/2021

**Leave covered under the Family and Medical Leave Act (FMLA) must be designated as FMLA-protected and the employer must inform the employee of the amount of leave that will be counted against the employee's FMLA leave entitlement. In order to determine whether leave is covered under the FMLA, the employer may request that the leave be supported by a certification. If the certification is incomplete or insufficient, the employer must state in writing what additional information is necessary to make the certification complete and sufficient. While use of this form by employers is optional, a fully completed Form WH-382 provides an easy method of providing employees with the written information required by 29 C.F.R. §§ 825.300(c), 825.301, and 825.305(c).**

To: John Stancu

Date: 05/16/2019

We have reviewed your request for leave under the FMLA and any supporting documentation that you have provided. We received your most recent information on ______________________ and decided:

_✓_ **Your FMLA leave request is approved. All leave taken for this reason will be designated as FMLA leave.**

**The FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. Based on the information you have provided to date, we are providing the following information about the amount of time that will be counted against your leave entitlement:**

_____ Provided there is no deviation from your anticipated leave schedule, the following number of hours, days, or weeks will be counted against your leave entitlement: ______________________

_____ Because the leave you will need will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period (if leave was taken in the 30-day period).

**Please be advised (check if applicable):**

_____ You have requested to use paid leave during your FMLA leave. Any paid leave taken for this reason will count against your FMLA leave entitlement.

_____ We are requiring you to substitute or use paid leave during your FMLA leave.

_____ You will be required to present a fitness-for-duty certificate to be restored to employment. If such certification is not timely received, your return to work may be delayed until certification is provided. A list of the essential functions of your position ___ **is** ___ **is not** attached. If attached, the fitness-for-duty certification must address your ability to perform these functions.

_____ **Additional information is needed to determine if your FMLA leave request can be approved:**

_____ The certification you have provided is not complete and sufficient to determine whether the FMLA applies to your leave request. You must provide the following information no later than ______________________, unless it is not
(Provide at least seven calendar days)
practicable under the particular circumstances despite your diligent good faith efforts, or your leave may be denied.

______________________________________________
(Specify information needed to make the certification complete and sufficient)

______________________________________________

_____ We are exercising our right to have you obtain a second or third opinion medical certification at our expense, and we will provide further details at a later time.

_____ Your FMLA Leave request is Not Approved.
_____ The FMLA does not apply to your leave request.
_____ You have exhausted your FMLA leave entitlement in the applicable 12-month period.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

It is mandatory for employers to inform employees in writing whether leave requested under the FMLA has been determined to be covered under the FMLA. 29 U.S.C. § 2617; 29 C.F.R. §§ 825.300(d), (e). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 – 30 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

# EXHIBIT O

# AFFIDAVIT OF JOHN STANCU

STATE OF TEXAS §

DALLAS COUNTY §

Before me, the undersigned Notary Public, on this day personally appeared John Stancu, who swore and deposed under oath as follows:

1. My name is John Stancu. I am over 18 years of age and fully competent to make this affidavit. I have personal knowledge of the facts described in this affidavit, all of each are true and correct.

2. I am employed by Hyatt Regency Dallas/Hyatt Corporation as a building engineer, since October 23, 2015.

3. This particular hotel, Hyatt Regency Dallas, is managed by Woodbine Development Corp./Hunt Realty investments, a conglomerate owned by oil billionaire Ray Hunt.

4. Currently I am in litigation with my employer for age discrimination and numerous retaliations.

5. On Augusst 23, 2018, I suffered a work accident that caused the following serious damages to my health: abdominal injuries, a stroke that paralized myleft arm and left leg, and multiple related health problems.

6. On October 6, 2018, I filed a workers' compensation claim and immediately thereafter, my employer started a long campaign of retaliations against me.

7. On March 27, 2019, the Court of Texas Department of Insurance Division of Workers' Compensation (TDI-DWC) found that I sustained a compensable injury on August 23, 2018, and ordered Hyatt to pay benefits in accordance with the Texas Workers' Compensation Act.

8. On May 13, 2019, my treating doctor, Nasrin Safari, M.D. issued a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act).

9. On July 22, 2019, I filed a lawsuit against my employer, Hyatt for retaliations against me because of my workers' comp. claim, including Hyatt's refusal to pay benefits as ordered by the Judge of the TDI-DWC's Court.

10. From August 23, 2018 to July 22, 2019 and continuing, Hyatt violated my FMLA's rights by imposing on me (under the threat of getting fire) that I perform jobs that are restricted by the FMLA's Certification, thus further aggravating my injuries to the point of life threatening.

JOHN STANCU

Sworn to and subscribed before me by John Stancu on this 19-th day of July, 2019.

JILLIAN TOWNSEND
Notary Public State of Texas
My Commission # 130579989
My Comm. Exp. March 11, 2020

NOTARY PUBLIC - in and for the State of Texas

My commission expires on: 3/11/2020

# EXHIBIT N

# Designation Notice (Family and Medical Leave Act)

U.S. Department of Labor
Wage and Hour Division

OMB Control Number: 1235-0003
Expires: 8/31/2021

**Leave covered under the Family and Medical Leave Act (FMLA) must be designated as FMLA-protected and the employer must inform the employee of the amount of leave that will be counted against the employee's FMLA leave entitlement. In order to determine whether leave is covered under the FMLA, the employer may request that the leave be supported by a certification. If the certification is incomplete or insufficient, the employer must state in writing what additional information is necessary to make the certification complete and sufficient. While use of this form by employers is optional, a fully completed Form WH-382 provides an easy method of providing employees with the written information required by 29 C.F.R. §§ 825.300(c), 825.301, and 825.305(c).**

To: John Stancu

Date: 05/16/2019

We have reviewed your request for leave under the FMLA and any supporting documentation that you have provided. We received your most recent information on ____________________ and decided:

_✓_ **Your FMLA leave request is approved. All leave taken for this reason will be designated as FMLA leave.**

**The FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. Based on the information you have provided to date, we are providing the following information about the amount of time that will be counted against your leave entitlement:**

_____ Provided there is no deviation from your anticipated leave schedule, the following number of hours, days, or weeks will be counted against your leave entitlement: ____________________

_____ Because the leave you will need will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period (if leave was taken in the 30-day period).

**Please be advised (check if applicable):**

_____ You have requested to use paid leave during your FMLA leave. Any paid leave taken for this reason will count against your FMLA leave entitlement.

_____ We are requiring you to substitute or use paid leave during your FMLA leave.

_____ You will be required to present a fitness-for-duty certificate to be restored to employment. If such certification is not timely received, your return to work may be delayed until certification is provided. A list of the essential functions of your position ___ **is** ___ **is not** attached. If attached, the fitness-for-duty certification must address your ability to perform these functions.

_____ **Additional information is needed to determine if your FMLA leave request can be approved:**

_____ The certification you have provided is not complete and sufficient to determine whether the FMLA applies to your leave request. You must provide the following information no later than ____________________, unless it is not
(Provide at least seven calendar days)
practicable under the particular circumstances despite your diligent good faith efforts, or your leave may be denied.

____________________
(Specify information needed to make the certification complete and sufficient)
____________________

_____ We are exercising our right to have you obtain a second or third opinion medical certification at our expense, and we will provide further details at a later time.

_____ Your FMLA Leave request is Not Approved.
_____ The FMLA does not apply to your leave request.
_____ You have exhausted your FMLA leave entitlement in the applicable 12-month period.

PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

It is mandatory for employers to inform employees in writing whether leave requested under the FMLA has been determined to be covered under the FMLA. 29 U.S.C. § 2617; 29 C.F.R. §§ 825.300(d), (e). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 – 30 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

# EXHIBIT O

# AFFIDAVIT OF JOHN STANCU

STATE OF TEXAS §

DALLAS COUNTY §

Before me, the undersigned Notary Public, on this day personally appeared John Stancu, who swore and deposed under oath as follows:

1. My name is John Stancu. I am over 18 years of age and fully competent to make this affidavit. I have personal knowledge of the facts described in this affidavit, all of each are true and correct.

2. I am employed by Hyatt Regency Dallas/Hyatt Corporation as a building engineer, since October 23, 2015.

3. This particular hotel, Hyatt Regency Dallas, is managed by Woodbine Development Corp./Hunt Realty investments, a conglomerate owned by oil billionaire Ray Hunt.

4. Currently I am in litigation with my employer for age discrimination and numerous retaliations.

5. On Augusst 23, 2018, I suffered a work accident that caused the following serious damages to my health: abdominal injuries, a stroke that paralized myleft arm and left leg, and multiple related health problems.

6. On October 6, 2018, I filed a workers' compensation claim and immediately thereafter, my employer started a long campaign of retaliations against me.

7. On March 27, 2019, the Court of Texas Department of Insurance Division of Workers' Compensation (TDI-DWC) found that I sustained a compensable injury on August 23, 2018, and ordered Hyatt to pay benefits in accordance with the Texas Workers' Compensation Act.

8. On May 13, 2019, my treating doctor, Nasrin Safari, M.D. issued a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act).

9. On July 22, 2019, I filed a lawsuit against my employer, Hyatt for retaliations against me because of my workers' comp. claim, including Hyatt's refusal to pay benefits as ordered by the Judge of the TDI-DWC's Court.

10. From August 23, 2018 to July 22, 2019 and continuing, Hyatt violated my FMLA's rights by imposing on me (under the threat of getting fire) that I perform jobs that are restricted by the FMLA's Certification, thus further aggravating my injuries to the point of life threatening.

JOHN STANCU

Sworn to and subscribed before me by John Stancu on this 19-th day of July, 2019.

JILLIAN TOWNSEND
Notary Public State of Texas
My Commission # 130579989
My Comm. Exp. March 11, 2020

NOTARY PUBLIC - in and for the State of Texas

My commission expires on: 3/11/2020



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

| | |
|---|---|
| 08/31/2018 | 99 |
| 08/30/2018 | 108 |
| 06/21/2017 | 104 |

**Imaging:**
Echo:
Interpretation Summary
Normal chamber sizes.
Left ventricular systolic function is normal.
LVEF = 64% by Teichholz method.
Normal LV wall motion.
Focal thickening of an LV false chord is noted
The right ventricle is normal in size and function.
Mild mitral regurgitation.
Mild to moderate aortic regurgitation.
Diastolic dysfunction, Grade II (pseudonormalization pattern).
The IVC is normal in size with an inspiratory collapse of greater then 50%, suggesting normal right atrial pressure.
Injection of contrast documented no interatrial shunt at rest and with valsalva.
Mild aortic root dilatation.

MR :
Brain: Multiple foci of restricted diffusion involving the right cerebral hemisphere including right posterior temporal lobe, right occipital lobe, right parietal lobe, right basal ganglia, and right corona radiata and centrum semiovale are noted with corresponding T2 and FLAIR hyperintense most likely representative of acute infarcts.

CTA
1. Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. These changes can be better evaluated with carotid Doppler.
2. Right deep watershed infarcts, seen on prior MRI, are poorly delineated

EKG: NSR

**Current Medications:**
Current Facility-Administered Medications

| Medication | Dose | Frequency |
|---|---|---|
| • acetaminophen (TYLENOL) tablet DOSE: 650 mg | 650 mg | Q4HR PRN |
| • aspirin chewable tablet DOSE: 81 mg | 81 mg | DAILY |
| • atorvastatin | 80 mg | DAILY |

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

| | | |
|---|---|---|
| (LIPITOR) tablet 80 mg | | |
| • docusate sodium (COLACE) capsule DOSE: 100 mg | 100 mg | BID |
| • HYDROcodone-acetaminophen (NORCO) 5-325 mg tablet DOSE: 1 tablet | 1 tablet | Q4HR PRN |
| • ondansetron (ZOFRAN) tablet DOSE: 4 mg | 4 mg | Q8HR PRN |
| • pantoprazole EC (PROTONIX) tablet DOSE: 40 mg | 40 mg | DAILY |

**Assessment and Plan:**

Ioan John Stancu is a 63 year old male who is now admitted for multiple watershed infarcts with symptoms of LUE weakness and numbness. No other high risk findings s/o embolism on work up so far ( R ICA not stenosis, echo is normal) , no afib seen
He was on warfarin for PE, recently off due to GIB for which he is being worked up by GI/IM service.

Recommendations:
Telemetry
On atorva 80 mg
Aspirin 81
TEE
Carotid doppler

- **MR Brain**: *Complete*
- **Arteries Head & Neck**: *Complete*
- **CV ECHO**: *Complete* EF 64% with no noted shunt
- **Risk Factors**: *Complete* HgbA1c 5.2; LDL 106; Cholesterol 165; , no k nown afib

**DVT**: SCD
**Stroke Neuro checks**? Yes Frequency q 4 hrs prn
**TPA Given?** No **Hemorrhagic Conversion?** No
**Swallow Evaluation:** Passed.

**Follow Up Needed?**: Yes
**D/C Planning:** per primary team, pending work up
**Follow up appointment needed?** Yes, with neurology

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

Patient seen and staffed with Stroke attending, Dr. Warnack.

Shazia Mirza, PGY- 2
Neurology
Pager: 214-786-5273

Note signed by ... Worthy R, MD at 9/1/2018 1:37 PM

Progress Notes by Rowley, Michael William, MD at 9/1/2018 5:23 PM

Author: Rowley, Michael William, MD
Filed: 9/1/2018 5:33 PM
Status: Signed

Service: Gastroenterology
Date of Service: 9/1/2018 5:23 PM
Editor: Rowley, Michael William, MD (Fellow)

Author Type: Fellow
Creation Time: 9/1/2018 5:30 PM

Brief note:

Endoscopy had to be pushed back today given urgent add ons.

Clears now, NPO at MN. Mag citrate x2 this evening

Enteroscopy/EGD tomorrow

**Michael William Rowley, M.D.**
PGY-4, GI Fellow
Pager: 214-786-1712

**Division of Digestive and Liver Diseases**
**UT Southwestern Medical Center**

Electronically signed by Rowley, Michael William, MD at 9/1/2018 5:33 PM

Progress Notes by Frankl, Joseph Andrew, MD at 9/1/2018 5:23 PM

Author: Frankl, Joseph Andrew, MD
Filed: 9/1/2018 5:51 PM
Status: Signed

Service: Internal Medicine
Date of Service: 9/1/2018 5:23 PM
Editor: Frankl, Joseph Andrew, MD (PGY 1)

Author Type: PGY 1
Creation Time: 9/1/2018 5:49 PM

I was paged that the patient wanted to leave AMA to attend to urgent matters at home. I explained the risks of leaving and the rationale for continued hospitalization. The patient expressed understanding and said he would come back to the ED tomorrow after dealing with matters at home.

Joseph Frankl, MD
PGY-1
Internal Medicine
Page: 214-588-1188

Electronically signed by Frankl, Joseph Andrew, MD at 9/1/2018 5:51 PM

Progress Notes by Giles, Michael Alexander, MD at 9/1/2018 8:05 AM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

| CHOLHDLRATIO | 5 | 08/31/2018 |
|---|---|---|

Lab Results

| Component | Value | Date |
|---|---|---|
| AST | 24 | 08/30/2018 |
| ALT | 21 | 08/30/2018 |
| ALKPHOS | 104 | 08/30/2018 |
| BILITOTAL | 0.3 | 08/30/2018 |
| LIPASE | 23 | 08/30/2018 |
| ALB | 4.3 | 08/30/2018 |

CT Angiography Head and Neck:
1. Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. These changes can be better evaluated with carotid Doppler.
2. Right deep watershed infarcts, seen on prior MRI, are poorly delineated

CV Echo: Grade II diastolic dysfunction

MR Brain W/O contrast:
1. Multiple foci of restricted diffusion involving the right cerebral hemisphere consistent with acute infarcts many of which in a watershed distribution.

CXR: Unchanged mild left lower lobe atelectasis.

**Assessment/Plan:**
Ioan Stancu is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 who presented to the ED on 8/30 for light headedness and diaphoresis. Initially had downtrending RBC/Hg and with history of melana, our suspicion is high for an ongoing GI bleed. Patient also found to have small R cerebral hemisphere strokes (unsteadiness, weakness of L hand) in the setting of recently discontinued warfarin for melena.

**# Ischemic stroke to R cerebral hemisphere**, concerning for cardioembolus given lack of ipsilateral carotid stenosis. MRI brain showed embolic stroke to R cerebral hemisphere.
- left hand apraxia and unsteadiness on exam
- Patient started on ASA 81 per Neuro recs
- TEE ordered
- **Cleared by PT/OT/ST**

**# Hx of PE in 2017**
In the setting of previous VTE, recent discontinuation of anticoagulation, and development of L sided hand weakness and numbness, he was at risk for stroke. Unfortunately, this is outside of the window (4.5 hrs alteplase and 6 hr thrombectomy) for intervention since it occurred about 6- 7 days ago. I am uncertain of the cause of the embolism. He has no history of atrial fibrillation. TTE in 2015 did not mention any ASD or PFO. However, unifying diagnosis for prior PE and now embolic stroke would be the presence of an ASD.
- on ASA 81
- Must be cautious of anticoagulation in the setting of recent melena
- Continue tele to evaluate for paroxysmal a-fib
- TTE showed Grade II diastolic dusfunction



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 9/1/2018 8:05 AM (continued)

**# Anemia w/ recent history of melena**

Patient reports black stools prior to stopping warfarin in July. It is not clear how long these black stools have been occurring and have since resolved. He may have been slowly bleeding from an upper source given description as black and tarry. He denies abdominal pain, reflux symptoms, or excessive NSAID use. He has no history of cirrhosis. Therefore, most likely is vascular lesion (angiodysplasia > dieulafoy's), polyp, or malignancy. He doesn't appear to be actively bleeding now; DRE showed brown stool.

**- RBC 2.81, Hg 8.5, stable compared to yesterday's. Transfuse patient if Hg<7 or any active** bleeding.
- 40mg PO pantoprazole daily
**- Upper and lower scope planned for today**
- May require prolonged anticoagulation in the setting of prior PE and now embolic stroke, will need to consider risk for GI bleed.
- Trend CBC
- PT, INR
- Anemia studies

**# HTN**

On lisinopril 10mg BID at home.
- Will hold initially given concern for GI bleed vs stroke. Can restart as BP allows.

**# HLD**

On simvastatin 20mg at home.
- Will escalate to high intensity atorvastatin 80mg
- Lipid panel in AM.

Bowel: Colace daily
DVT: ASA 81
GI: Pantoprazole
Diet: NPO after midnight
CODE: FULL

**Electronically Signed by:**
Michael Giles, MD
Psychiatry, PGY1
Internal Medicine Service

[illegible] Christiane Dahl, MD at 9/1/2018 9:34 PM

Progress Notes by Giles, Michael Alexander, MD at 9/1/2018 5:23 PM

| | | |
|---|---|---|
| Giles, Michael Alexander, MD | Service: Internal Medicine | Author Type: PGY 1 |
| 9/2/2018 9:30 AM | Date of Service: 9/1/2018 5:23 PM | Creation Time: 9/2/2018 9:25 AM |
| Signed | Editor: Giles, Michael Alexander, MD (PGY 1) | |

Attempted to call patient with the number provided in the EMR. No answer. Unfortunately, a voicemail was not left because the answering message had not been setup yet and an identity could not be determined.

[illegible] signed by Giles, Michael Alexander, MD at 9/2/2018 9:30 AM

Progress Notes by Giles, Michael Alexander, MD at 8/31/2018 6:58 AM

Printed on 9/24/18 11:05 AM

PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 8/31/2018 6:58 AM (continued)

Giles, Michael Alexander, MD
8/31/2018 6:57 PM
Attested Addendum
Original Note by Giles, Michael Alexander, MD (PGY 1) filed at 8/31/2018 6:53 PM
Renner, Christiana Sahl, MD at 9/12/2018 4:20 PM

Service: Internal Medicine
Date of Service: 8/31/2018 6:58 AM
Editor: Giles, Michael Alexander, MD (PGY 1)

Author Type: PGY 1
Creation Time: 8/31/2018 6:58 AM

Attestation signed by Renner, Christiana Sahl, MD at 9/12/2018 4:20 PM

Please see my addendum to H&P on 8/31 for my thoughts on this pt.

Christiana S. Renner, MD
x8188

**Internal Medicine Progress Note**

**Subjective:**
Patient complained of hunger and was wanted to leave AMA to see family who is visiting from Romania. After detailing the dangers associated w ith leaving AMA and not getting care, he agreed to stay. Still feels fatigued, lightheaded. Left-sided upper extremity incoordination/apraxia remains and was most noticeable when the patient struggled to remove a water bottle from plastic grocery bag.

ROS: pertinent findings above

**Objective:**
Pulse: 62 (08/30/18 1817), Monitored Heart Rate: 63 bpm (08/31/18 0500)
BP: 134/66, Temp: 37.2 °C (98.9 °F), Temp src: Oral, Respiratory Rate: 16, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 100 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Physical Exam:
Gen: A&O x 3 in NAD.
Eyes: Non-sclerotic, pale-conj unctiva
ENT: Oropharynx clear of exudates and erythema
Neck: No JVD. No LAD.
CV: Non-tachycardic. Regular rhythm. No extra sounds, murmurs, rubs.
Resp: CTAB with normal respiratory effort.
Abd: Non-distended. BS present. Soft, nontender.
Musculoskeletal: ROM full
Skin: No rashes.
Extremities: Pulses full and equal. No edema.
Neuro: CN 2-12 intact. He has unsteady and wide gait. L hand has minor past pointing on finger-to-nose. L arm has mild pronator drift. L hand is 4/5 strength to finger grip and spread. Decreased sensation to li ght tough on L hand and all L fingers. Apraxia of left hand.
Psych: Somewhat anxious appearing.

**Laboratory/Diagnostics/Imaging:**

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 142 | 08/31/2018 |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 8/31/2018 6:58 AM (continued)

| | | |
|---|---|---|
| K | 4.2 | 08/31/2018 |
| CL | 105 | 08/31/2018 |
| CO2 | 26 | 08/31/2018 |
| ANIONGAP | 11 | 08/31/2018 |
| BUN | 11 | 08/31/2018 |
| CREATININE | 0.89 | 08/31/2018 |
| GLUCOSE | 99 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 7.55 | 08/31/2018 |
| HGB | 8.[illegible] (L) | 08/31/2018 |
| HCT | 25.0 (L) | 08/31/2018 |
| MCV | 93.3 (H) | 08/31/2018 |
| PLT | 331 | 08/31/2018 |
| NEUTROABS | 4.31 | 08/31/2018 |
| LYMPHSABS | 2.11 | 08/31/2018 |
| MONOSABS | 0.73 | 08/31/2018 |
| EOSABS | 0.34 | 08/31/2018 |
| BASOSABS | 0.04 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHOL | 165 | 08/31/2018 |
| TRIGLYCERIDE | 125 | 08/31/2018 |
| HDL | 34 (L) | 08/31/2018 |
| LDLCALC | 106 (H) | 08/31/2018 |
| CHOLHDLRATIO | 5 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| AST | 24 | 08/30/2018 |
| ALT | 21 | 08/30/2018 |
| ALKPHOS | 104 | 08/30/2018 |
| BILITOTAL | 0.3 | 08/30/2018 |
| LIPASE | 23 | 08/30/2018 |
| ALB | 4.3 | 08/30/2018 |

CT Angiography Head and Neck:

1. Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. These changes can be better evaluated with carotid Doppler.
2. Right deep watershed infarcts, seen on prior MR I, are poorly delineated

CV Echo: Grade II diastolic dysfunction

MR Brain W/O contrast:

1. Multiple foci of restricted diffusion involving the right cerebral hemisphere consistent with acute infarcts many of which in a watershed distribution.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Imaging - All Results (continued)

MR BRAIN W/O IV CONTRAST [350262339]

Resulted: 08/31/18 0851, Result status: Final result

Ordering provider: Klein, Kelly Ruthanne, MD 08/30/18 1905

Resulted by:
Perez, Carlos Luis, MD
Pacicco, Thomas Alfred, MD
Accession number: 84948470

Performed: 08/30/18 2017 - 08/30/18 2126
Resulting lab: PARKLAND LAB
Signed by: Perez, Carlos Luis, MD on 8/31/2018 8:51 AM

EXAM: MR BRAIN W/O IV CONTRAST

HISTORY: 63 years-old Male with weakness

TECHNIQUE: Multisequence and multiplanar imaging of the brain without contrast.

COMPARISON: None

FINDINGS:
Brain: Multiple foci of restricted diffusion involving the right cerebral hemisphere including right posterior temporal lobe, right occipital lobe, right parietal lobe, right basal ganglia, and right corona radiata and centrum semiovale are noted with corresponding T2 and FLAIR hyperintense most likely representative of acute infarcts.

Additional foci of T2 such FLAIR hyperintensity signal involving the anterior right and left deep and periventricular white matter, nonspecific but most like the sequela of chronic microvascular ischemic changes.

Mild global cerebral volume loss. There is no hydrocephalus, acute hemorrhage, mass effect, midline shift, or extra axial fluid collection. Midline structures are within normal limits. The paranasal sinuses are clear. Hypopneumatized right mastoid air cells.

Impression:

1. Multiple foci of restricted diffusion involving the right cerebral hemisphere consistent with acute infarcts many of which in a watershed distribution.

FOLLOW-UP RECOMMENDATIONS: Per clinical team.

A Red message has been generated for KELLY RUTHANNE KLEIN in the PowerScribe 360 Critical Results application on 8/30/2018 9:49 PM, Message ID 2993658.

I have personally reviewed the image(s) and the report above and concur.

CV ECHO COMPLETE [350277154]

Resulted: 08/31/18 0933, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/30/18 2239
Accession number: 84949022

Performed: 08/31/18 0920 - 08/31/18 0920
Resulting lab: PARKLAND LAB

Parkland Health & Hospital System
5200 Harry Hines Blvd.
Dallas, TX 75235
Phone (214) 266-9541

Adult Echocardiogram Report
Name: STANCU, IOAN JOHN Study Date: 08/31/2018 08:48 AM BP: 140/74 mmHg
MRN: 1408904 Patient Location: 560000^C-05^C5^PHHS^R^^ACH^ACH HR: 70 bpm
DOB: 06/08/1955 Gender: Male
Age: 63 yrs Ethnicity: White Height: 72 in
Weight: 180 lb
Performed By: Tai Nguyen,



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Imaging - All Results (continued)

CV ECHO COMPLETE [350277154] (continued) Resulted: 08/31/18 0933, Result status: Final result

RDCS BSA: 2.0 m2
Referring Physician: RENNER, CHRISTIANA SAHL
Encounter Number: 373006263 Order Number: 350277154 Accession Number: 84949022
Ordering Physician: HUNTLEY, GEOFFREY

Reason For Study: new embolic stroke, ?ASD vs PFO

Procedure: Complete 2D Echocardiogram with Spectral and Color Doppler was performed. Contrast with Agitated Saline.

Interpretation Summary
Normal chamber sizes.
Left ventricular systolic function is normal.
LVEF = 64% by Teichholz method.
Normal LV wall motion.
Focal thickening of an LV false chord is noted
The right ventricle is normal in size and function.
Mild mitral regurgitation.
Mild to moderate aortic regurgitation.
Diastolic dysfunction, Grade II (pseudonormalization pattern).
The IVC is normal in size with an inspiratory collapse of greater then 50%, suggesting normal right atrial pressure.
Injection of contrast documented no interatrial shunt at rest and with valsalva.
Mild aortic root dilatation.

MMode/2D Measurements & Calculations
IVSd: 1.1 cm
LVIDd: 4.5 cm
LA dimension: 3.2 cm
LV mass(C)d: 167.2 grams
LV mass(C)dI: 82.1 grams/m2
LVIDs: 2.5 cm
LVPWd: 1.0 cm
LVOT diam: 2.0 cm
Ao root diam: 3.4 cm

LVOT area: 3.3 cm2

Doppler Measurements & Calculations
MV E max vel: 64.0 cm/sec
MV E/A: 0.98
LV V1 max PG: 2.1 mmHg
LV V1 mean PG: 1.1 mmHg
LV V1 max: 73.2 cm/sec
LV V1 VTI: 15.3 cm
MV A max vel: 65.5 cm/sec
MV dec time: 0.26 sec
PA V2 max: 95.4 cm/sec
PA max PG: 3.6 mmHg
PA acc time: 0.15 sec

LAX SAX 4C 2C

Stage 1

| Segments | Size |
|---|---|
| 1-2 | small |
| 3-5 | moderate |
| 6-14 | large |
| 15-16 | diffuse |

X - Cannot Interpret 1 - Normal 2 - Hypokinetic 3 - Akinetic 4 - Dyskinetic 5 - Aneurysmal

Left Ventricle: Normal chamber sizes. Left ventricular systolic function is normal. LVEF = 64% by Teichholz



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Imaging - All Results (continued)

CV ECHO COMPLETE [350277154] (continued) — Resulted: 08/31/18 0933, Result status: Final result

method. Normal LV wall motion. A false chord is noted (normal variant). Focal thickening of an LV false chord is noted

Right Ventricle: The right ventricle is normal in size and function.

Atria: The left atrial size is normal. Right atrial size is normal. Injection of contrast documented no interatrial shunt at rest and with valsalva.

Mitral Valve: The mitral valve is normal in structure and function. Mild mitral regurgitation.

Tricuspid Valve: The tricuspid valve is normal in structure and function. Trace tricuspid regurgitation.

Aortic Valve: The aortic valve is normal in structure and function. Mild to moderate aortic regurgitation.

Pulmonic Valve: The pulmonic valve is normal in structure and function. Trace pulmonic valvular regurgitation.

Hemodynamics: Diastolic dysfunction, Grade II (pseudonormalization pattern). Insufficient TR jet to estimate RVSP. The IVC is normal in size with an inspiratory collapse of greater then 50%, suggesting normal right atrial pressure.

Great Vessels: Sinus of valsalva measures 4.2cm. Ascending Aorta measures 3.9cm. Mild aortic root dilatation.

Pericardium/Pleural: There is no pericardial effusion.

---

Electronically signed by: Hesham Sadek, MD 08/31/2018 09:33 AM
"I personally reviewed the image(s) and the report and agree with the findings as noted."

CT ANGIOGRAPHY HEAD & NECK W IV CONTRAST [350277168] — Resulted: 08/31/18 1138, Result status: Final result

Abhyankar, Rahul Dilip, MD 08/31/18 0820

Resulted by:
Agarwal, Amit Kumar, MD
Hewett, Lee, MD
Accession number: 84949236

08/31/18 0935 - 08/31/18 0948
PARKLAND LAB
Signed by: Agarwal, Amit Kumar, MD on 8/31/2018 11:38 AM

EXAM: CT ANGIOGRAPHY HEAD & NECK W IV CONTRAST

HISTORY: 63 years old Male with right hemisphere stroke

TECHNIQUE: The patient was scanned from the aortic arch through the vertex with a helical CT scanner at 0.6 mm collimation during bolus administration of IV contrast. Images were reviewed on a 3D workstation using MPR, MIP, and volume rendered techniques.

COMPARISON: None

FINDINGS:
Aortic Arch:
Normal three-vessel anatomic configuration of the aortic arch is demonstrated. Origins of the great vessels appear normal.

Extracranial Carotid Arterial System:
Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. The RIGHT common carotid artery, internal carotid artery, and external carotid artery otherwise demonstrate no abnormality.
The LEFT common carotid artery, internal carotid artery, and external carotid artery otherwise demonstrate no abnormality.

Extracranial Vertebral Arterial System:
The RIGHT vertebral artery demonstrates no abnormality. Mild stenosis of the origin of left vertebral artery secondary to soft plaque. The LEFT vertebral artery otherwise demonstrates no abnormality. The vertebral arteries are codominant.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Imaging - All Results (continued)

CT ANGIOGRAPHY HEAD & NECK W IV CONTRAST [350277168]
(continued)

Resulted: 08/31/18 1138, Result status: Final result

Intracranial Anterior Circulation:
Mild atherosclerotic calcification involving bilateral cavernous ICAs with no significant stenosis.
The RIGHT anterior circulation including the right internal carotid artery, middle cerebral artery, and anterior cerebral artery otherwise demonstrates no abnormality.
The LEFT anterior circulation including the left internal carotid artery, middle cerebral artery, and anterior cerebral artery otherwise demonstrates no abnormality.

Vertebrobasilar Circulation:
The basilar artery is unremarkable. Vertebral arteries are codominant. Mild multifocal stenosis of the V4 segment of the left vertebral artery due to soft plaques.
The RIGHT posterior cerebral artery, superior cerebellar artery, and posterior inferior cerebellar artery otherwise demonstrate no abnormality.
The LEFT posterior cerebral artery, superior cerebellar artery, and posterior inferior cerebellar artery otherwise demonstrate no abnormality.

Other:
The visualized dural sinuses and intradural venous system are unremarkable. No evidence of intracranial mass, mass effect, or abnormal enhancement.

IMPRESSION:

1. Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. These changes can be better evaluated with carotid Doppler.
2. Right deep watershed infarcts, seen on prior MRI, are poorly delineated

FOLLOW-UP RECOMMENDATIONS: Per clinical team.

I have personally reviewed the image(s) and the report above and concur.

US DOPPLER CAROTID COMPLETE [350339487]

Resulted: 09/02/18 1614, Result status: Final result

Ordering provider: Abhyankar, Rahul Dilip, MD 08/31/18 1204

Resulted by:
Setiawan, Anthony Tan, MD
Hu, Tianshen, MD
Accession number: 84951151

Performed: 09/01/18 1504 - 09/01/18 1542
Resulting lab: PARKLAND LAB
Signed by: Setiawan, Anthony Tan, MD on 9/2/2018 4:14 PM

EXAM: US DOPPLER CAROTID COMPLETE

HISTORY: 63 years -old Male with carotid stenosis bilateral

TECHNIQUE: Survey ultrasound imaging of the bilateral extracranial carotid arterial system was performed including color flow and spectral analysis Doppler evaluation with representative images obtained. Velocity criteria are extrapolated from diameter data validated with angiographic measurements as based on the Society of Radiologists in Ultrasound Consensus Conference Radiology 2003; 229; 340-346.

COMPARISON: None

FINDINGS:
Right Carotid:
Common Carotid Artery (CCA): Somewhat tortuous course. Intimal thickening noted.
Extracranial Internal Carotid Artery (ICA) and Bulb: No significant tortuosity. Focal plaque formation noted.
External Carotid Artery (ECA): Normal high resistance waveform.
CCA Peak Systolic Velocity (PSV): 63 cm/sec (distal)
ICA PSV: 65.4 cm/sec, otherwise velocity (distal)
ICA End Diastolic Velocity (EDV): 24.5 cm/sec (distal)
ICA/CCA PSV ratio: 1.0 (distal)
ECA PSV: 122.8 cm/sec
Findings by color and spectral Doppler evaluation are concordant with grayscale images.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Imaging - All Results (continued)

US DOPPLER CAROTID COMPLETE [350339487] (continued) Resulted: 09/02/18 1614, Result status: Final result

Left Carotid:
Common Carotid Artery (CCA): No significant tortuosity. Intimal thickening noted.
Extracranial Internal Carotid Artery (ICA) and Bulb: No significant tortuosity. Moderate atherosclerotic plaque formation. The plaque in the ICA appears homogeneous, smooth, and noncalcified.
External Carotid Artery (ECA): Normal high resistance waveform.
CCA Peak Systolic Velocity (PSV): 84 cm/sec (distal)
ICA PSV: 191 cm/sec, proximal at the area of stenosis.
ICA End Diastolic Velocity (EDV): 54 cm/sec (proximal)
ICA/CCA PSV ratio: 2.27 (proximal)
ECA PSV: 68.2 cm/sec
Findings by color and spectral Doppler evaluation are concordant with grayscale images.

Vertebral Arteries:
Right: Antegrade flow. Normal appearing waveform.
Left: Antegrade flow. Normal appearing waveform.

Other: None.

1. Right carotid system: Normal.
2. Left carotid system: Atherosclerosis resulting in 50-69% stenosis in the proximal ICA based on Doppler measurements.
3. Vertebral system: Normal antegrade flow in the vertebral arteries bilaterally.

FOLLOW-UP RECOMMENDATIONS: Per clinical team.

ACR Accredited

Note, that portions of the findings and impression of this final report have been modified and /or revised from the initial preliminary radiology on-call report, by me on 9/2/2018. The initial preliminary report can be found in Epic through the Result History link.

I have personally reviewed the image(s) and the report above and concur.

Lab - All Results

POC HGB MEASURED [341168852] (Abnormal) Resulted: 08/30/18 1555, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1547 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1547 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| POC Hgb Measured | 8.7 | 13.2 - 16.9 g/dL | L |
| Comment: Operator ID: Clint White | | | |
| Performed at | ED | — | — |

COMPLETE BLOOD COUNT [350262322] (Abnormal) Resulted: 08/30/18 1637, Result status: Final result

Parkland

5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

**COMPLETE BLOOD COUNT [350262322] (Abnormal) (continued)**

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1602 — Resulted: 08/30/18 1637, Result status: Final result — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| WBC | 7.50 | 4.22 - 10.33 x10(9)/L | — |
| RBC | 3.06 | 4.27 - 5.99 x10(12)/L | L |
| Hemoglobin | 9.3 | 13.2 - 16.9 g/dL | L |
| Hematocrit | 28.4 | 39.6 - 50.2 % | L |
| MCV | 92.8 | 79.0 - 92.2 femtoliters | H |
| MCH | 30.4 | 26.5 - 32.6 pg | — |
| MCHC | 32.7 | 32.3 - 36.5 g/dL | — |
| RDW-CV | 14.4 | 11.4 - 14.4 % | — |
| PLATELETS | 353 | 160 - 383 x10(9)/L | — |
| MPV | 10.5 | 8.8 - 12.2 femtoliters | — |

**DIFFERENTIAL AUTO [350262324]**

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1602 — Resulted: 08/30/18 1637, Result status: Final result — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| NEUTROS ABS | 5.01 | 1.98 - 6.59 x10(9)/L | — |
| IMMATURE GRANS ABS | 0.03 | 0.00 - 0.06 x10(9)/L | — |

Comment:
The reference range has been validated for adults (>=16 yrs.).
More info is available at Parklandlab.com.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| IMMATURE GRANS PCT | 0.4 | 0.0 - 0.9 % | — |

Comment:
Increased immature granulocytes (metamyelocytes, myelocytes and promyelocytes) indicate a left shift, which can be seen in infection/inflammation, malignancy, trauma, steroid use, pregnancy and other conditions. Bands and blasts are not included with the immature granulocytes; bands are included with Neutro Abs. The reference range has been validated for adults (>=16 yrs.).
More info is available at Parklandlab.com.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| LYMPHS ABS | 1.71 | 1.30 - 4.07 x10(9)/L | — |
| MONOS ABS | 0.54 | 0.28 - 0.92 x10(9)/L | — |
| EOS ABS | 0.18 | 0.04 - 0.62 x10(9)/L | — |
| BASOS ABS | 0.03 | 0.02 - 0.10 x10(9)/L | — |

**URINALYSIS [350262310]**

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 — Resulted: 08/30/18 1657, Result status: Final result — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Aspirate_BKR | Urine | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| Color UA | Yellow | — | — |
| Clarity UA | Clear | — | — |
| Glucose UA | Negative | Negative | — |
| Bilirubin UA | Negative | Negative | — |
| Ketones UA | Negative | Negative | — |

5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

URINALYSIS [350262310] (continued) — Resulted: 08/30/18 1657, Result status: Final result

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| SPEC GRAV. UA | 1.010 | 1.002 - 1.030 | — |
| Blood UA | Negative | Negative | — |
| pH UA | 6.0 | 5.0 - 7.0 | — |
| Protein UA | Negative | Neg-Trace | — |
| Urobilinogen UA | 0.2 | 0.2 - 1.0 EHR Units/dL | — |
| Nitrite UA | Negative | Negative | — |
| Leukocytes UA | Negative | Negative | — |

COMPREHENSIVE METABOLIC PANEL [350262308] — Resulted: 08/30/18 1703, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| SODIUM | 137 | 135 - 145 mmol/L | — |
| POTASSIUM | 3.9 | 3.6 - 5.0 mmol/L | — |

Comment: Potassium level in a plasma (green top) sample is 0.2 mmol/L (mean) lower than that in a serum (red top) sample.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| CHLORIDE | 102 | 98 - 109 mmol/L | — |
| CO2 | 26 | 22 - 31 mmol/L | — |
| ANION GAP | 9 | 6 - 16 mmol/L | — |
| Glucose Random | 108 | 65 - 200 mg/dL | — |
| CREATININE | 0.84 | 0.67 - 1.17 mg/dL | — |
| eGFR African American | >60 | mL/min/1.73m2 | — |
| eGFR NON-AFRICAN AMERICAN | >60 | mL/min/1.73m2 | — |
| eGFR Interpretation | See Interpretation | — | — |

Comment: Two estimates of GFR (eGFR African American and eGFR Non-African American) are provided.
Please choose the eGFR value appropriate for this patient's race.

eGFR >59 mL/min/1.73m2 An eGFR in this range is not sufficient to make the diagnosis of CKD stage 1 or 2.
Evaluation of additional clinical and laboratory indicators of CKD such as abnormal urine analysis or renal imaging abnormalities should be taken into consideration.
eGFR 30-59 mL/min/1.73m2 CKD Stage 3: Moderate decrease in GFR
eGFR 15-29 mL/min/1.73m2 CKD Stage 4: Severe decrease in GFR
eGFR <15 mL/min/1.73m2 CKD Stage 5: Kidney Failure

NOTE: eGFR calculations are based on "sex" and "date of birth" provided at time of order.
The Creatinine methodology is traceable to the isotope dilution mass spectrometry (IDMS).
Effective April 20, 2007, the estimated GFR is based on the IDMS-Traceable MDRD study equation.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| BUN | 12 | 6 - 23 mg/dL | — |
| Calcium Total | 9.2 | 8.4 - 10.2 mg/dL | — |
| PROTEIN, TOTAL | 7.3 | 6.6 - 8.7 g/dL | — |
| ALBUMIN | 4.3 | 3.5 - 5.2 g/dL | — |
| ALT | 21 | 10 - 50 Units/L | — |
| AST | 24 | 10 - 50 Units/L | — |
| ALK PHOS | 104 | 40 - 129 Units/L | — |
| BILIRUBIN, TOTAL | 0.3 | 0.2 - 1.3 mg/dL | — |

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

LIPASE [350262309]

Resulted: 08/30/18 1703, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| LIPASE | 23 | 7 - 59 Units/L | — |

TROPONIN T-HS [350262315]

Resulted: 08/30/18 1703, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| Troponin T-hs | 10 | ng/L | — |

Reference Ranges:

<6 ng/L Undetectable
6-51 ng/L Indeterminate. Serial measurements and clinical correlations required.
>=52 ng/L Abnormal

ABORH [350262318]

Resulted: 08/30/18 1714, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1601 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| ABORH | B Pos | — | — |

ANTIBODY SCREEN [350262320]

Resulted: 08/30/18 1714, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1601 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| AB SCRN | Negative ABSC | — | — |

THYROID STIMULATING HORMONE REFLEX [350262316]

Resulted: 08/30/18 1732, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| TSH | 1.24 | 0.40 - 4.50 mcIU/mL | — |

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

HIV 1 AND 2 AG/AB COMBO SCREEN [350262306]

Resulted: 08/30/18 1926, Result status: Final result

Ordering provider: Roppolo, Lynn Palacol, MD 08/30/18 1603 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 1608 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| HIV Ag/Ab Interp | Nonreactive | Nonreactive | — |

RETICULOCYTE ABSOLUTE COUNT [350277146] (Abnormal)

Resulted: 08/30/18 2213, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/30/18 2053 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 2155 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| RETIC CT ABS | 175 | 42 - 123 x10(9)/L | H |
| Comment: If present, Pappenheimer Bodies or Howell Jolly Bodies may affect results. | | | |
| RETIC CT PCT | 6.6 | % | — |

TOTAL IRON BINDING CAPACITY (IRON AND UIBC) [350277144] (Abnormal)

Resulted: 08/30/18 2330, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/30/18 2053 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 2155 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| IRON | 31 | 59 - 158 mcg/dL | L |
| UIBC | 262 | 112 - 347 mcg/dL | — |

FERRITIN [350277145]

Resulted: 08/30/18 2330, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/30/18 2053 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 2155 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| FERRITIN | 46 | 30 - 400 ng/mL | — |

TOTAL IRON BINDING CAPACITY (IRON AND UIBC) [350277144] (Abnormal)

Resulted: 08/30/18 2346, Result status: Edited Result - FINAL

Ordering provider: Huntley, Geoffrey Donald, MD 08/30/18 2053 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/30/18 2155 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| IRON | 31 | 59 - 158 mcg/dL | L |
| UIBC | 262 | 112 - 347 mcg/dL | — |
| TIBC | 293 | 171 - 504 mcg/dL | — |
| Pct Saturation | 11 | 16 - 50 % | L |

PROTIME WITH INR [350277160] (Abnormal)

Resulted: 08/31/18 0541, Result status: Final result



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

PROTIME WITH INR [350277160] (Abnormal) (continued)

Ordering physician: Huntley, Geoffrey Donald, MD 08/31/18 0011
Resulted: 08/31/18 0541, Result status: Final result
Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/31/18 0522 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| Protime | 14.6 | 10.2 - 12.9 sec | H |
| INR | 1.2 | 0.9 - 1.1 | H |

Comment:
The INR is intended for patients on long-term, stable, oral anticoagulation therapy. INR values should be 2.0-3.0 in most cases and 2.5-3.5 for higher intensity of anticoagulation.

COMPLETE BLOOD COUNT [350277163] (Abnormal)

Ordering physician: Huntley, Geoffrey Donald, MD 08/31/18 0500
Resulted: 08/31/18 0544, Result status: Final result
Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/31/18 0522 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| WBC | 7.55 | 4.22 - 10.33 x10(9)/L | — |
| RBC | 2.68 | 4.27 - 5.99 x10(12)/L | L |
| Hemoglobin | 8.1 | 13.2 - 16.9 g/dL | L |
| Hematocrit | 25.0 | 39.6 - 50.2 % | L |
| MCV | 93.3 | 79.0 - 92.2 femtoliters | H |
| MCH | 30.2 | 26.5 - 32.6 pg | — |
| MCHC | 32.4 | 32.3 - 36.5 g/dL | — |
| RDW-CV | 14.4 | 11.4 - 14.4 % | — |
| PLATELETS | 331 | 160 - 383 x10(9)/L | — |
| MPV | 10.4 | 8.8 - 12.2 femtoliters | — |

DIFFERENTIAL AUTO [350277165]

Ordering physician: Huntley, Geoffrey Donald, MD 08/31/18 0500
Resulted: 08/31/18 0544, Result status: Final result
Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/31/18 0522 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| NEUTROS ABS | 4.31 | 1.98 - 6.59 x10(9)/L | — |
| IMMATURE GRANS ABS | <0.03 | 0.00 - 0.06 x10(9)/L | — |

Comment:
The reference range has been validated for adults (>=16 yrs.).
More info is available at Parklandlab.com.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| IMMATURE GRANS PCT | 0.3 | 0.0 - 0.9 % | — |

Comment:
Increased immature granulocytes (metamyelocytes, myelocytes and promyelocytes) indicate a left shift, which can be seen in infection/inflammation, malignancy, trauma, steroid use, pregnancy and other conditions. Bands and blasts are not included with the immature granulocytes; bands are included with Neutro Abs. The reference range has been validated for adults (>=16 yrs.).
More info is available at Parklandlab.com.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| LYMPHS ABS | 2.11 | 1.30 - 4.07 x10(9)/L | — |
| MONOS ABS | 0.73 | 0.28 - 0.92 x10(9)/L | — |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

DIFFERENTIAL AUTO [350277165] (continued)

Resulted: 08/31/18 0544, Result status: Final result

| | | | |
|---|---|---|---|
| EOS ABS | 0.34 | 0.04 - 0.62 x10(9)/L | — |
| BASOS ABS | 0.04 | 0.02 - 0.10 x10(9)/L | — |

BASIC METABOLIC PANEL [350277159]

Resulted: 08/31/18 0603, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/31/18 0011 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/31/18 0522 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| SODIUM | 142 | 135 - 145 mmol/L | — |
| POTASSIUM | 4.2 | 3.6 - 5.0 mmol/L | — |

Comment:
Potassium level in a plasma (green top) sample is 0.2 mmol/L (mean) lower than that in a serum (red top) sample.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| CHLORIDE | 105 | 98 - 109 mmol/L | — |
| CO2 | 26 | 22 - 31 mmol/L | — |
| ANION GAP | 11 | 6 - 16 mmol/L | — |
| Glucose Random | 99 | 65 - 200 mg/dL | — |
| BUN | 11 | 6 - 23 mg/dL | — |
| Calcium Total | 8.6 | 8.4 - 10.2 mg/dL | — |
| CREATININE | 0.89 | 0.67 - 1.17 mg/dL | — |
| eGFR African American | >60 | mL/min/1.73m2 | — |
| eGFR NON-AFRICAN AMERICAN | >60 | mL/min/1.73m2 | — |
| eGFR Interpretation | See Interpretation | — | — |

Comment:
Two estimates of GFR (eGFR African American and eGFR Non-African American) are provided.
Please choose the eGFR value appropriate for this patient's race.

eGFR >59 mL/min/1.73m2 An eGFR in this range is not sufficient to make the diagnosis of CKD stage 1 or 2.
Evaluation of additional clinical and laboratory indicators of CKD such as abnormal urine analysis or renal imaging abnormalities should be taken into consideration.
eGFR 30-59 mL/min/1.73m2 CKD Stage 3: Moderate decrease in GFR
eGFR 15-29 mL/min/1.73m2 CKD Stage 4: Severe decrease in GFR
eGFR <15 mL/min/1.73m2 CKD Stage 5: Kidney Failure

NOTE: eGFR calculations are based on "sex" and "date of birth" provided at time of order.
The Creatinine methodology is traceable to the isotope dilution mass spectrometry (IDMS).
Effective April 20, 2007, the estimated GFR is based on the IDMS-Traceable MDRD study equation.

LIPID PANEL [350277161] (Abnormal)

Resulted: 08/31/18 0621, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 08/31/18 0011 Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 08/31/18 0522 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| CHOLESTEROL | 165 | 120 - 199 mg/dL | — |
| TRIGLYCERIDES | 125 | 50 - 150 mg/dL | — |
| HDL Cholesterol | 34 | 35 - 55 mg/dL | L |
| Non-HDL Cholesterol | 131 | 95 - 160 mg/dL | — |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab All Results (continued)

LIPID PANEL [350277161] (Abnormal) (continued) — Resulted: 08/31/18 0621, Result status: Final result

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| LDL. CALC | 106 | <=99 mg/dL | H |
| CHOL/HDL RATIO | 5 | 0 - 5 | — |

National Cholesterol Education Program-Adult Treatment Panel (ATPIII) Guidelines: The Reference Ranges below are based on the National Cholesterol Education Program-Adult Treatment Panel (ATPIII) Guidelines. These reference ranges are not dervived from a population of healthy PHHS individuals.

Risk determinates in addition to LDL-cholesterol include the presence or absence of CHD, other forms of atherosclerotic disease, and the following major non-cholesterol risk factors:

Cigarette smoking
Hypertension (BP>=140/90 mmHg or on antihypertensive medication)
Low HDL cholesterol (40 mg/dL)*
`Family history of premature CHD (CHD in male first degree relative <55 years; CHD in female first degree relative <65 years)
Age (men>=45 years; women >55 years)**
* HDL cholesterol >= 60 mg/dL counts as a negative risk factor; its presence removes one risk factor from the total count.
** In ATP III, diabetes is regarded as a CHD risk equivalent.

ATP III Classification of LDL
. Total, and HDL Cholesterol (mg/dL)
LDL Cholesterol
<100 Optimal
100-129 Near optimal/above optimal
130-159 Borderline high
160-189 High
>= 190 Very high

Total Cholesterol
<200 Desirable
200-239 Borderline high
>= 240 High

HDL Cholesterol
<40 Low
>= 60 High

COMPLETE BLOOD COUNT [350339512] (Abnormal) — Resulted: 09/01/18 0804, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 09/01/18 0305 — Resulting lab: PARKLAND LAB

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 09/01/18 0728 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| WBC | 6.67 | 4.22 - 10.33 x10(9)/L | — |
| RBC | 2.81 | 4.27 - 5.99 x10(12)/L | L |
| Hemoglobin | 8.5 | 13.2 - 16.9 g/dL | L |
| Hematocrit | 25.6 | 39.6 - 50.2 % | L |
| MCV | 91.1 | 79.0 - 92.2 femtoliters | — |
| MCH | 30.2 | 26.5 - 32.6 pg | — |
| MCHC | 33.2 | 32.3 - 36.5 g/dL | — |
| RDW-CV | 14.6 | 11.4 - 14.4 % | H |
| PLATELETS | 325 | 160 - 383 x10(9)/L | — |
| MPV | 10.2 | 8.8 - 12.2 femtoliters | — |

BASIC METABOLIC PANEL [350339513] — Resulted: 09/01/18 0839, Result status: Final result

Ordering provider: Huntley, Geoffrey Donald, MD 09/01/18 0305 — Resulting lab: PARKLAND LAB



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Lab - All Results (continued)

BASIC METABOLIC PANEL [350339513] (continued) Resulted: 09/01/18 0839, Result status: Final result

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| — | Blood | 09/01/18 0728 |

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| SODIUM | 142 | 135 - 145 mmol/L | — |
| POTASSIUM | 4.0 | 3.6 - 5.0 mmol/L | — |

Potassium level in a plasma (green top) sample is 0.2 mmol/L (mean) lower than that in a serum (red top) sample.

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| CHLORIDE | 106 | 98 - 109 mmol/L | — |
| CO2 | 28 | 22 - 31 mmol/L | — |
| ANION GAP | 8 | 6 - 16 mmol/L | — |
| Glucose Random | 98 | 65 - 200 mg/dL | — |
| BUN | 11 | 6 - 23 mg/dL | — |
| Calcium Total | 8.7 | 8.4 - 10.2 mg/dL | — |
| CREATININE | 0.83 | 0.67 - 1.17 mg/dL | — |
| eGFR African American | >60 | mL/min/1.73m2 | — |
| eGFR NON-AFRICAN AMERICAN | >60 | mL/min/1.73m2 | — |
| eGFR Interpretation | See Interpretation | — | — |

Comment:

Two estimates of GFR (eGFR African American and eGFR Non-African American) are provided.
Please choose the eGFR value appropriate for this patient's race.

eGFR >59 mL/min/1.73m2 An eGFR in this range is not sufficient to make the diagnosis of CKD stage 1 or 2.
Evaluation of additional clinical and laboratory indicators of CKD such as abnormal urine analysis or renal imaging abnormalities should be taken into consideration.
eGFR 30-59 mL/min/1.73m2 CKD Stage 3: Moderate decrease in GFR
eGFR 15-29 mL/min/1.73m2 CKD Stage 4: Severe decrease in GFR
eGFR <15 mL/min/1.73m2 CKD Stage 5: Kidney Failure

NOTE: eGFR calculations are based on "sex" and "date of birth" provided at time of order.
The Creatinine methodology is traceable to the isotope dilution mass spectrometry (IDMS).
Effective April 20, 2007, the estimated GFR is based on the IDMS-Traceable MDRD study equation.

Other - All Results

Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **7 - Unknown** | PARKLAND LAB | Unknown | 5201 HARRY HINES BLVD DALLAS TX | 09/08/04 0500 - Present |

Immunizations Administered for This Admission

No immunizations on file. Never Reviewed

Not reviewed this visit

Encounter-Level Scanned Documents:

There are no encounter-level scanned documents.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

# Encounter Discharge Summary Report

Disclaimer

*The Encounter Discharge Summary report is compiled at the time of a patient's discharge. Several sections of this report are populated from portions of the electronic health record that may continue to receive updated information for up to 30 days post-discharge. These sections include the discharge summary and/or procedure notes, pathology reports and future referral orders. The Discharge Summary note is final upon signature by the attending provider.*

Treatment Team

| Provider | Service | Role | Specialty | From | To |
|---|---|---|---|---|---|
| Renner, Christiana Sahl, MD | Internal Medicine | Admitting Provider | INTERNAL MEDICINE | – | – |
| Renner, Christiana Sahl, MD | Internal Medicine | Attending Provider | INTERNAL MEDICINE | 08/30/18 1719 | – |

Patient Information

**Patient Name:** Ioan John Stancu
**Last Admit/Appt Department:** SIXTEEN EPILEPSY
**Admit Dx/Chief Complaint:** Gastrointestinal hemorrhage with melena ;Ataxia
**Admit Date/Time:** 8/30/2018 1:37 PM
**Discharge Date/Time:** 9/1/2018 5:23 PM
**Discharge Condition:** Stable

**MRN #:** 1408904
**HAR #:** 623114903
**CSN#:** 373006263

**Advance Directive:** No
**Privacy Notice:** Acknowledgement
**Discharge Disposition:** AMA

Problem List as of 9/1/2018

**Gastrointestinal hemorrhage with melena - Primary**

Relevant Orders

*PLACE IN HOSPITAL SERVICE (Completed)*

**Ataxia**

Relevant Orders

*PLACE IN HOSPITAL SERVICE (Completed)*

This is a filtered list. 5 active problems are not being displayed here.

Problem List as of 9/1/2018

| | ICD-10-CM | Noted - Resolved |
|---|---|---|
| [illegible] for Tdap vaccination | Z23 | Unknown - 6/5/2015 |
| **HTN (hypertension)** | I10 | Unknown - Present |
| [illegible] chest pain | R07.9 | 11/21/2014 - 12/26/2014 |
| [illegible] discharge follow-up | Z09 | Unknown - 6/5/2015 |
| **HLD (hyperlipidemia)** | E78.5 | Unknown - Present |
| [illegible] prophylactic vaccination and inoculation against [illegible] | Z23 | Unknown - 5/2/2015 |
| **Other pulmonary embolism without acute cor pulmonale, unspecified chronicity** | I26.99 | 6/23/2017 - Present |
| **Anticoagulation management encounter [Z51.81, Z79.01]** | Z51.81, Z79.01 | 9/15/2017 - Present |
| **Encounter for therapeutic drug monitoring [Z51.81]** | Z51.81 | 9/15/2017 - Present |

# EXHIBIT D



**Texas Department Of Insurance**
**Division of Workers' Compensation**
Records Processing
7551 Metro Center Dr. Ste.100 • MS-94
Austin, TX 78744-1609
(800) 252-7031 (512) 804-4378 fax www.tdi.texas.gov

DWC Claim# 19110137
Carrier Claim# 011202060386WC01

← Send the completed form to this address.

# Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC Form-041)

Claim for workers' compensation must be filed by the injured employee or by a person acting on the injured employee's behalf **within one year** of the date of injury or within one year from the date the injured employee knew or should have known the injury or disease may be work-related.

## I. INJURED EMPLOYEE INFORMATION

**Name** (First, Middle, Last) John, Ioan, STANCU
**Social Security Number** 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
**Date of birth** (mm / dd / yyyy) 06-08-1955
**Address** (street, city/town, state, zip code, county, country) 5454 Amesbury Dr., Apt 907
**Phone Number** (469) 567-3365
**E-Mail address**
**Sex** [X] Male [ ] Female
**Race / Ethnicity** [X] White, not of Hispanic Origin [ ] Black, not of Hispanic Origin [ ] Hispanic [ ] Asian or Pacific Islander
**Do you speak English?** [X] Yes [ ] No If no, specify language
**Marital status** [ ] Married [ ] Widowed [ ] Separated [X] Single [ ] Divorced
**Do you have an attorney or other representation?** [ ] Yes [X] No **If yes, name of representative**
**Have you returned to work?** [X] Yes [ ] No
**If returned to work, date returned** (mm/dd/yyyy) 09-05-2018
**Work status** [X] Regular [ ] Restricted
**Occupation at time of injury** Preventive Maintenance
**Date of hire** (mm / dd / yyyy) 10-23-15
**Hired or recruited in Texas** [X] Yes [ ] No
**Pre-tax wages** (at the time of injury) $15.25 [X] hourly [ ] weekly [ ] monthly

## II. INJURY INFORMATION

**I am reporting an** [X] injury or [ ] occupational disease
**Date of injury** (mm / dd / yyyy) 08-23-18
**Time of injury** 9:00 a.m
**First work day missed** (mm / dd / yyyy) 8-24-18
**Date injury was reported to the employer** (mm / dd / yyyy) 8-23-18
**Where did the injury occur?** County Dallas State TX Country U.S.A
**If accident occurred outside of Texas, on what date did you leave Texas?** (mm/dd/yyyy)
**Witness(es) to the injury** (list by name)
**Describe cause of injury or occupational disease, including how it is work related**
Shortage of man-power, work over-load and the employer's relentless pressure on its workers to move faster and faster. The accident occurred at work.
**Body part(s) affected by the injury** Abdomen, right ankle and related impairments.
**If injury is the result of an occupational disease:**
**1. On what date was the employee last exposed to the cause of the occupational disease?** (mm / dd / yyyy)
**2. When did you first know occupational disease was work related?** (mm / dd / yyyy)

## III. EMPLOYER INFORMATION (at the time of injury)

**Employer name** Hyatt Regency Dallas
**Employer address** (street, city/town, state, zip code, county, country) 300 Reunion Blvd. Dallas, TX 75207
**Employer phone number** 214-712-7017
**Supervisor name** Brett Killingsworth

## IV. DOCTOR INFORMATION

**Name of treating doctor** Parkland Hospital
**Phone number** (214) 920-5060
**Address** (street, city/town, state, zip code) 5201 Harry Hines Blvd., Dallas TX 75235
**Name of workers' compensation health care network, if any** Gallagher Basset

[signature]
**Signature of injured employee or person filling out this form on behalf of injured employee**

10-06-2018
**Date**

John Stancu
**Printed name of injured employee or person filling out form on behalf of injured employee**

CLAIMANT'S EXHIBIT 2 P 1
FOR IDENTIFICATION

# EXHIBIT E

GALLAGHER BASSETT
GUIDE. GUARD. GO BEYOND.

## Notice of Denial of Compensability/Liability and Refusal to Pay Benefits

**Date:** SEPTEMBER 27, 2018

**To:** JOHN STANCU
5454 AMESBURY DR APT 907
DALLAS TX 75206

**Re:**

| | |
|---|---|
| Date of injury: | 08/23/2018 |
| Nature of injury: | CONTUSION/SPRAIN |
| Notice of injury date: | 09/13/2018 |
| ~~Part of body injured:~~ | ~~ABDOMEN AND RIGHT ANKLE~~ |
| Employee SSN: | XXX-XX-6846 |
| DWC claim #: | 19110137 |
| Carrier name/TPA name: | Safety National Casualty Corp/GALLAGHER BASSETT SERVICES, INC. |
| Carrier claim #: | 011202-060386-WC-01 |
| Employer name: | HYATT CORPORATION |
| Employer address, city, state, zip: | 300 REUNION BLVD, DALLAS TX 75207 |

**We, Gallagher Bassett Services on behalf of** Safety National Casualty Corp, **reviewed your workers' compensation claim. Based on the facts we have about your claim, we are not going to pay income or medical benefits.**

**We denied your claim because:**

Gallagher Bassett on behalf of the Carrier denies the claim in it's entirety as no injury was sustained within the course and scope of employment. There is no definite date, time, place or cause for the alleged injury. There are multiple discrepancies regarding the alleged injury. Mr. Stancu is suffering from an ordinary disease of life. Gallagher Bassett denies the claim in it's entirety as no injury was sustained within the course and scope of employment either as a specific injury or occupational disease on or before 8/23/2018. Gallagher Bassett disputes disability as Mr. Stancu has not sustained disability as defined by the Texas Workers Compensation Act. The alleged mechanism of injury is not consistent with the claimed injury.

**Contact me if you: (1) have questions, (2) need to give more facts about this claim, or (3) disagree with this decision.**

| | |
|---|---|
| Senior Resolution Manager: | JANEE SCOTT |
| Phone (toll free): | 1-800-727-8245 EXT. 5016 |
| Fax / Email: | 210-403-9621 / JANEE_SCOTT@GBTPA.COM |

If you would like to get letters by fax or email, send your fax number or email address to me.

**If we are not able to resolve an issue after you contact me:**

Call the Texas Department of Insurance, Division of Workers' Compensation at 1-800-252-7031, Monday to Friday, 8 a.m. to 5 p.m. Central time.

You have the right to ask for a benefit review conference. If you ask for a conference, you will meet with: (1) someone from **Gallagher Bassett Services on behalf of** Safety National Casualty Corp, and (2) a benefit review officer with the Texas Department of Insurance, Division of Workers' Compensation. The conference will take place at a Division of Workers' Compensation office. To ask for a conference, fill out a "Request to Schedule, Reschedule, or Cancel a Benefit Review Conference" form (DWC045) - www.tdi.texas.gov/forms/dwc/dwc045brc.pdf.

If you don't have an attorney, the Office of Injured Employee Counsel can help you prepare for the conference. To learn more, go to www.OIEC.texas.gov or call 1-866-393-6432, ext. 44186, Monday to Friday, 8 a.m. to 5 p.m. Central time.

**Making a false workers' compensation claim is a crime that may result in fines or prison.**

O 210.403.9682
F 210.403.9621
T 800.727.8245
www.gallagherbassett.com

# EXHIBIT F

CONFIDENTIAL
Tex. Labor Code
§402.083

**TEXAS DEPARTMENT OF INSURANCE**
**DIVISION OF WORKERS' COMPENSATION**
**DALLAS FIELD OFFICE**
**DALLAS, TEXAS**

TDI/DWC
RECEIVED
APR 01 2019
CHIEF CLERK OF
PROCEEDINGS

| | | |
|---|---|---|
| **JOHN STANCU,**<br>**CLAIMANT** | § § § | |
| **v.** | § § | **DOCKET NO.**<br>**DA-19110137-01-CC-DA44** |
| **HYATT CORPORATION (SELF-INSURED),**<br>**INSURANCE CARRIER** | § § § § | |

## DECISION AND ORDER

This case is decided pursuant to Chapter 410 of the Texas Workers' Compensation Act and the Rules of the Texas Department of Insurance, Division of Workers' Compensation (DWC). For the reasons discussed herein, the Administrative Law Judge (ALJ) determined that Claimant sustained a compensable injury on August 23, 2018.

## STATEMENT OF THE CASE

A benefit review officer with DWC held a benefit review conference on January 28, 2019, to mediate resolution of the disputed issue. The parties were unable to reach agreement. Accordingly, on March 27, 2019, Gerri Thomas, a DWC ALJ, held a contested case hearing to decide the following disputed issue:

Did Claimant sustain a compensable injury on August 23, 2018?

## PARTIES PRESENT

Claimant appeared and was assisted by Leigh Provost, ombudsman. Insurance Carrier appeared and was represented by Tim Singley, attorney.

CONFIDENTIAL
Tex. Labor Code
§402.083

## EVIDENCE PRESENTED

The following witnesses testified:

For Claimant: Claimant.

For Insurance Carrier: None.

The following exhibits were admitted into evidence:

ALJ's Exhibits: ALJ-1 and ALJ-2.

Claimant's Exhibits: C-1 through C-8.

Insurance Carrier's Exhibits: CR-A through CR-J.

## DISCUSSION

Claimant testified that he was carrying a 2 ½ x 3-foot box while traversing some stairs at work on August 23, 2018, when he slipped and fell forward, catching the box between the steps and his abdomen. Claimant alleged that he injured his abdomen and right ankle in the fall. He further testified that he reported his injury shortly after the fall to his immediate supervisor, Samuel Molina. He also indicated that he believed the impact to his abdomen from the fall caused internal bleeding, which resulted in a stroke. Claimant sought emergency care at Parkland Hospital on August 30, 2018 (and for a few days following), where he was diagnosed with an ischemic stroke to the right cerebral hemisphere, a history of pulmonary embolism in 2017, and anemia with a recent history of melena. On September 12, 2018, Claimant was evaluated by the providers at Concentra Medical Centers who diagnosed him with a right ankle sprain and abdominal wall contusion.

Insurance Carrier contended that Claimant had a history of various claims, which it argued called into question Claimant's credibility. Insurance Carrier contended that Claimant delayed reporting his claimed injury and provided inaccurate information concerning the circumstances of the claimed injury to his employer. Insurance Carrier pointed to notes from Amanda Norton with the employer and resultant accident/injury forms to support its position. Insurance Carrier further argued that Claimant's emergency room records with Parkland were devoid of any mention of a work-related injury, or the effects thereof. Instead, Insurance Carrier argued that Claimant experienced a non-work-related incident on August 23, 2018, which resulted in mounting medical bills, and that Claimant fabricated his claimed injury to receive benefits because he did not have health insurance to cover the associated bills.

CONFIDENTIAL
Tex. Labor Code
§402.083

Claimant explained that his memory was impacted after his stroke, but he was sure that he informed the providers at Parkland of his fall at work. Claimant contended that the emergency room providers were simply more concerned with his immediate health issues, rather than reporting his account of the events from August 23, 2018.

The enormity of the conflicting argument and evidence was considered; however, the more credible evidence demonstrated that Claimant sustained damage or harm to the physical structure of his body, at least in the form of a right ankle sprain and abdominal wall contusion, while in the course and scope of his employment on August 23, 2018.

The ALJ considered all of the evidence admitted. The Findings of Fact and Conclusions of Law are based on an assessment of all of the evidence whether or not the evidence is specifically discussed in this Decision and Order.

## FINDINGS OF FACT

1. The parties stipulated to the following facts:

   A. Venue is proper in the Dallas Field Office of the Texas Department of Insurance, Division of Workers' Compensation.

   B. On August 23, 2018, Claimant was the employee of Hyatt Corporation, Employer.

   C. On August 23, 2018, Employer provided workers' compensation insurance as a Self-Insured.

2. Insurance Carrier delivered to Claimant a single document stating the true corporate name of Insurance Carrier, and the name and street address of Insurance Carrier's registered agent, which document was admitted into evidence as ALJ's Exhibit Number 2.

3. Claimant sustained damage or harm to the physical structure of his body while in the course and scope of his employment on August 23, 2018.

## CONCLUSIONS OF LAW

1. The Texas Department of Insurance, Division of Workers' Compensation, has jurisdiction to hear this case.

2. Venue is proper in the Dallas Field Office.

7. Stancu immediately informed his employer Hyatt about this accident, and because of the excruciating pain caused by the injuries, Stancu left his job early on that day and took several days off from work without pay, hoping that rest will alleviate his pain.

8. On August 31, 2018, due to his aggravating medical condition, Stancu was admitted into the Emergency Room at Parkland Hospital. The results from two days of extensive medical tests show that Stancu suffered a major internal bleeding due to the impact on his abdomen (copies of medical records from Parkland Hospital are attached hereto as Exhibit B), and a stroke that paralyzed the left side of Stancu's body, including his left arm and left leg. A true and correct copies of medical records from Parkland Hospital, pertaining to the stroke, are attached hereto as Exhibit C.

**WORKERS' COMPENSATION RETALIATION**

9. Plaintiff Stancu was employed by defendant Hyatt as described in paragraph 5 of this petition.

10. Hyatt was a subscriber under the Texas Workers' Compen - sation Act.

11. Stancu filed a workers' compensation claim in good faith with the Workers' Compensation Division of the Texas Department of Insurance. A true and correct copy of this claim is attached hereto as Exhibit D.

12. Stancu is representing himself in this case because he cannot afford an honest workers' compensation attorney.

13. Stancu instituted a workers' compensation proceeding in good faith, and only after defendants Hyatt and Gallagher Bassett refused under false pretenses to pay Stancu benefits in accordance with Texas Workers' Compensation Laws.

14. As soon as Stancu informed Hyatt about his work accident, Hyatt began an aggressive campaign of discriminatory retaliations against Stancu, employing every retaliatory persecution that they could, in order to cover up Stancu's injuries, force him to quit his job, and/or drop his claim. What makes this egregious assault on Stancu even more inhumane and vicious is the fact that these adverse actions against a 65 years old injured worker were taking place while Stancu was suffering from disabling workplace injuries. The following paragraphs are brief descriptions of the retaliatory acts against Stancu:

15. From the day of the accident (August 23, 2018) Hyatt proceeded with a very hostile inquiry of the accident, an interrogation resembling a criminal investigation. Like for instance asking Stancu to complete three times the same accident report form, asking numerous times the same questions, over and over, rolling back video cameras films for the purpose of making Stancu look like a dishonest person, interrogating Stancu's coworkers, again with the same scope of slandering and defaming Stancu.

16. In spite of Stancu's life threatening injuries and the need for expert medical treatments, Hyatt directed Stancu to go to Concentra, a Band-Aid "medical" facility associated with Hyatt. Concentra is known in Texas for helping employers like Hyatt to reduce their liabilities for work accidents , first, because Concentra does not have qualified doctors and proper medical equipment for serious injuries, and second, because Concentra has a symbiotic business relationship with its main customers: the employers.

17. In addition Hyatt impeded Stancu from keeping his doctors appointments by making them as difficult as possible. For example Hyatt refused to give Stancu a day off during medical treatments; when the doctor appointment was at 9:a.m., Hyatt demanded that Stancu come to work for one hour, leave for the doctor's visit, and then return to work for about two hours.This exposed Stancu to another work accident because Stancu was heavily medicated and weakened during medical treatments. Furthermore, there was no business need for these malicious burdens, because there were many other engineers in the building. More over, after Stancu returned to work from his doctor appointments, the former HR Assistant Director Amanda Norton, fraudulently erased any evidence of Stancu's lost time from work, by falsifying Stancu's time clock records.

18. Mrs. Norton also lied to Stancu that Hyatt's Workers' Compensation insurance is Gallagher Bassett Services. Later, Stancu found out that Hyatt is **self-insured**, and

Gallagher Basset is the administrator of Hyatt's workers' compensation claims, i.e. Hyatt's partner in subverting Texas Workers' Compensation laws.

19. On September 27, 2018, Gallagher Bassett sent Stancu a letter titled "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits." This letter also derogatorily states (even before seeing the medical records) that, quote: "...Mr. Stancu is suffering from an ordinary disease of life." "Disease of life" is a reference to Stancu's old age and an obvious form of age discrimination. On the bottom of the same letter mentioned above, defendant Gallagher Bassett states in bold letters that **"Making a false workers' compensation claim is a crime that may result in fines or prison."**, obviously a brazen attempt to coerce Stancu into dropping his claim. A true and correct copy of this letter is attached hereto as Exhibit E.

20. Because of defendants' adverse actions against Stancu, on October 6, 2018, Stancu filed a claim with the Texas Department of Insurance, Division of Workers' Compensation (see Exhibit D) and asked for a hearing by the Court of the above named government institution. On March 27, 2019, the Court ruled that Stancu sustained a compensable injury on August 23, 2018, and ordered Hyatt to pay benefits in accordance with the Court's decision, the Texas Workers' Compensation Act, and the Commissioner Rules. A true and correct copy of the Judge Decision and Order is attached hereto as Exhibit F.

21. Before, during, and after the above described Court proceedings, Hyatt and Gallagher Basset escalated their retaliations against Stancu. The following are more examples:

22. From September 2018, to present, Hyat engaged in continued retaliations. One of the continued acts of retaliations against Stancu is the Slander and Defamation of Stancu, by telling his coworkers that he is a crook, and is a danger to their job. During the same time period mentioned above, Hyatt subjected Stancu to a prison-camp style of harassing scrutinity, by instructing the security department of the hotel, Stancu's supervisors and coworkers, and outside contractors , to stalk him everywhere (even to the restroom) thus creating a very hostile work environment.

23. On the month of February 2019, a vacuum machine that Stancu used for cleaning the air conditioning system was stoled from Stancu's tools cart. This made Stancu's job harder, and sabotaged his job performance.

24. Stancu had in the supplies room an old chair that he used for doing his paper work at the end of the day. This chair was sneakingly removed from the room hundreds of times, by an unknown person until Stancu chained the chair to a metal shelf. On March 26, 2019, the chain that secured the chair was cut with a bolt cutter and the chair was stolen again. After Stancu began asking his coworkers about this harassing situation, on March 28, 2019, an employee of Hyatt by the name of Jerryl Brown, approached Stancu and stated that he had no personal animosity towards Stancu

but he was told to remove the chair, and this job assignment came from the management, namely the Director of Engineering Department, Brett Killingsworth, and the General Manager, Fred Euler. Mr. Brown also remarked that, quote: "For some reasons, they wanted to make your job, hell!". Mr. Brown also asked Stancu not to reveal that he gave him this information.

25. On the same day of March 28, 2019, one day after the Court ruled against Hyatt regarding the work accident, Stancu found on his tools cart a rifle bullet with his name written on it. Stancu considered this for what it was: a terroristic threat under the criminal law, and plain and simple a death threath. This incident was reported to the HR office. A true and correct copy of a picture of the rifle bullet is attached hereto as Exhibit G.

26. If defendants try or succeed in carrying out their death threats against Stancu, the individuals most likely responsible are the owner of Hyatt Regency Dallas, oil billionaire Ray Lee Hunt, and his hired oppressors, former general manager Fred Euler, and Director Brett Killingsworth. This blunt analysis is supported by the following facts: (a). a pattern of vicious retaliations against Stancu; (b). a propensity for violence by the above named persons; (c). their delusion of being above the law; and (d). their porcine greed for money. Pertaining to this perverse greed, while the assault by a multi-billionaire against an injured worker is grossly inhumane, what is even more tragic is Ray L. Hunt's manipulation of George Bush/ Dick Cheney Administration to invade Iraq under the false pretenses of weapons of mass destruction, a wildcatter adventure at the expense

of the United States tax payers, and the death of **4,482** American soldiers.[1]

A true and correct copy of a related New York Times report is attached hereto as Exhibit H.

27. On or about March 29, 2019, and again on April 4 and 5, 2019, supervisor Sammy Molina told Stancu that Director Brett Killingsworth said to him during conversations about Stancu, that, quote: "When I see him, I feel like puncing him straight in the mouth." Stancu reported this threat of workplace violence to the HR Director Mark Spinelli.

28. On the morning of April 20, 2019, at app. 7:25 am, supervisor Sammy Molina showed Stancu an e-mail that he, and all the managers and directors from all departments received from Hyatt's corporate office, warning them that Stancu is taking legal action against Hyatt, and to inform all employees to be aware. This e-mail is a defamation of Stancu, and a retaliatory action by inciting all off Stancu's coworkers against him.

29. On or about April 24, 2019, Director of Engineering Brett Killingsworth, slandered and defamed Stancu to a coworker from another department by the name of Odilon Martinez (see Exhibit I ).

30. On April 30, 2019, Director Brett Killingsworth ordered supervisor Tim Jarrett to stalk Stancu all day around the hotel.

31. On May 10, 2019, Director Brett Killingsworth assigned his assistant Micah Bell to stalk Stancu all day long around the hotel.

[1] **Mr. Hunt was a close political ally of George W. Bush and a member of the President's Foreign Intelligence Advisory Board.**

32. On May 14, 2019, Director Killingsworth assigned supervisor Sammy Molina to stalk Stancu all day long around the hotel buildings.

33. On May 15, 2019, was the turn of the Security Dept. of the hotel to keep up the stalking of Stancu. For example, at app. 2:50pm, Stancu clocked out for his 30 minutes lunch break. This time Stancu was outside the building, on the porch. (again, Stancu was on his own time, not on Hyatt's time clock). A security worker by the first name of Julia came out several times and was just staring at Stancu. This is just one out of hundreds of similar harassing incidents.

34. From May 18, 2019 to July 6, 2019, Director Killingsworth engaged in a different form of retaliation against Stancu, by having employees from different departments orchestrating hundreds of phony work orders directed at Stancu for the sole purpose of harassment, and lowering his job performance, since nothing gets acomplished by chasing fake work requests. Here are some of the employees involved in this corrupt practice: manager Kyle, manager Victor, both from Housekeeping Department, Irene Martinez, hotel maid, Alex Dantes - Director in Rooms Dept., and all the hotel's maids. In fact, former General Manager Fred Euler and Director Fred Killingsworth, promised monetary rewards for the employees who make the most work requests chanelled to Stancu.

35. On July 9, 2019, at about 4:45 pm, Stancu went to the copy machine designated for Hyatt's employees, to make copies of his completed work assignments for that day, a task that Stancu performed for the last 4 years. This time, Mr. Killingsworth

stalked Stancu, and engaged in an aggressive confrontation, insulting Stancu in front of other employees. All of the above described inci - dents were reported to no avail to local and corporate HR Offices.

36. In addition, everytime Stancu returned to work in the mornings he found his tools cart and the room were he kept his supplies, turned upside-down and vandalized. A more detailed description of the above mentioned retaliations is presented in the sworn Affidavit of John Stancu, attached hereto as Exhibit I.

37. Director Killingsworth, assistant director Micah Bell, super-visor Sammy Molina, and HR Director Mark Spinelli, are viciously viola - ting Stancu's rights as provided by the Family and Medical Leave Act (FMLA), by maliciously assigning Stancu under ludicrous pretenses to perform jobs that are specifically restricted by the Certification of Health Care Provider for Employee's Serious Health Condition (FMLA) - see Exhibit M, and in spite of Hyatt's own approval of said FMLA Certfi-cation - see Exhibit N, and related sworn Affidavit of John Stancu - see Exhibit O.

38. During the month of July, 2019, Director Killingsworth also escalated the already insane retaliations against Stancu by coercing few of Stancu's coworkers to stalk Stancu nonstop and everywhere: job sites, employees' lunch room, locker room, restrooms, and even outside the hotel, after Stancu clocks out.

39. And last but not least, Stancu's work accident was caused by Director Killinksworth in the following manner: the AC filters that Stancu was replacing every four months in the 1,200 rooms of the hotel, were transported close to the service elevators by a fork-lift driver. About six months prior to the accident, Director Killingsworth told the fork-lift driver not to carry the filters for Stancu anymore, leaving Stancu with no other option but to carry manually, via the stairs, hundreds of large boxes of filters. This specific intent to cause injury was orchestrated by Hyatt's Director Brett Killingsworth, and was the principal and only reason of the disabling accident.

39. For the March 27, 2019, Court hearing, defendants Hyatt and Gallagher Bassett employed an unethical, mad-dog type of lawyer by the name of Tim Singley, to further slander and defame Stancu. And this lawyer did exactly what he was hire for: instead of addressing the facts of this case, Hyatt's lawyer slandered and insulted Stancu for more than two hours, in a full blown retaliatory assault. The Judge warned him that the Court would not take in consideration his defamatory attack on Stancu. In the end, the Court ruled that Stancu sustained a compensable injury and ordered Hyatt to pay benefits (see Exhibit F).

40. After the Court ordered Hyatt to pay benefits, Hyatt's lawyer resorted to the following dirty tricks for the purpose of further delaying to pay benefits as ordered by the Court, and cover up the extent of the injuries:

(a). On or about the month of May, 2019, Hyatt's lawyer asked the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) to order a designated doctor examination for evaluating Stancu's Maximum Medical Improvement and Impairment Rating.

(b). On May 23, 2019, the Commissioner of TDI-DWC approved Hyatt's request and issued an order for a designated doctor examination. A true and correct copy of this order is attached hereto as Exhibit J. According to the above mentioned order the designated doctor was Mr. Charles Silver, and the examination was scheduled for June 14, 2019, and rescheduled by the doctor for June 17, 2019.

(c). On June 11, 2019, few days before the examination, Hyatt's lawyer Tim Singley (the same one that slandered Stancu during the Court's hearing) sent Dr. Silver a letter, falsely stating among other lies that, quote:

"The compensable injury is limited to a right ankle contusion and abdominal wall contusion only per D&O signed March 27, 2019."

A true and correct copy of this misleading letter is attached hereto as Exhibit K. There is no such limitation in the Court's Decision and Order (see Exhibit F). The purpose of Mr. Singley deceiving letter to Dr. Silver was to minimize Hyatt's liability for full compensation of Stancu by duping the doctor to evaluate only the external bruises on Stancu's body.

(d). On June 17, 2019, Stancu showed up for the examination, and Dr. Silver informed him that he will only evaluate "the right ankle contusion and abdominal wall contusion" as asked by Hyatt's lawyer. Stancu had no choice but to decline subjecting himself to a phony examination,[1] because first, the Court Order does not stipulate anywhere that "the compensable injury is limited to a right ankle contusion and abdominal wall contusion", and second, the Commissioner's Order states that the designated doctor should evaluate

---

1. When the injuries from the accident consist of a major stroke, a partial paralysis of the entire left part of Stancu's body, including his left arm and left leg, yet this doctor examina - tion is limited under false pretenses only to the external bruises, is very obvious that this process is more than unfair: it ignores the medical records and emanates a heavy stench of corruption.

Stancu's Maximum Medical Improvement and Impairment Rating, evaluation that naturally includes all the injuries that Stancu incurred during the accident. Furthermore, the Commissioner's Order, just like the Court's Order, does not stipulate anywhere that the doctor's examination is limited only to the right ankle contusion and abdominal wall contusion.

41. Defendants' refusals to compensate Stancu even after the Court ordered them to pay Stancu's benefits, aggravated Stancu's injuries to the point that the injuries became chronic. Medical records showing the negativ impact of Hyatt's adverse actions are attached hereto as Exhibit **L.**

42. Hyatt's retaliations against Stancu disabled the injured worker to the extent that he (Stancu) is currently under work restrictions in accordance with the Family and Medical Leave Act (FMLA). A true and correct copy of the Certification of Health Care Provider for Employee's Serious Health Condition (FMLA) is attached hereto as Exhibit **M.**

43. All of the above described acts of inhumane retaliations against Stancu were reported to the local and regional HR offices, to the CEO of Hyatt Corp., Mark Hoplamazian, to the Executive Chairman of Hyatt Corp., Thomas Pritzker, and the shady owner of Hyatt Regency Dallas Hotel, oil billionaire **Ray Hunt. The** fact that the adverse actions against Stancu escalated after the above named individuals were notified, is a clear indication that the top management and the owner are the masterminds of these vicious human rights abuses under the ludicrous pretense that they

are not aware of it. The hundreds of nonstop, oppressive retaliations against Stancu established an extremely hostile work environment, reduced Stancu's opportunity for promotion or for a better job to practically zero, and are inflicting harm on Stancu's health, and financial wellbeing.

44. As described in the previous paragraphs, Hyatt retaliated and discriminated against Stancu by creating and permitting a hostile work environment; see **Garcia**, 85 S.W.3d at 369. See also **Rivas v. Southwest Key Programs, Inc.**, 507 S.W.3d 777, 780 (Tex.App.-El Paso 2015, no pet.) A hostile work environment is one so severe and pervasive that it destroys the employee's opportunity to succeed in the workplace. **Garcia**, 85 S.W.3d at 370.

45. Stancu proved by a preponderance of evidence throughout this petition, and will further prove through witnesses, that defendants created and permitted a hostile work environment that was and still is continuing to be subjectively and objectively offensive. Plaintiff Stancu also reserves the right to amend his petition, and bring in new evidence as it develops.

46. Stancu showed by a preponderance of evidence in this petition and the attached exhibits that:

(a). Stancu belonged to a protected group.

(b). Stancu was subjected to unwelcome harassment.

(c). The harassment was based on his having filed a workers' compensation claim.

(d). The harassment affected a term, condition, and/or privilege of his employment.

(e). Defendants knew or should have known of the harassment and did not take action to stop it.

47. The United States Supreme Court has decided that whether a work environment is "objectively intimidating, hostile, or offensive," **id.**, depends on whether the harassment is "severe or pervasive", which "can be determined by looking at all the circumstances." **Harris v. Forklift Sys., Inc.**, 510 U.S. 17,23 (1993).

48. "Under the totality of circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable [hostile work environment] claim, as well as a continous pattern of much less severe incidents of harassment."
**EEOC v. WC&M Enters., Inc.**, 469 F.3d 393,400 (5th Cir. 2007) (Title VII).

Thus, " a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII,". **Id.**

**DAMAGES**

49. Defendants wrongful acts caused injury to Stancu, which resulted in the following damages:

50. **Actual damages:**

(a). Stancu incurred medical bills in excess of $50,000.

(b). The treating doctor prescribed that Stancu undergo the following medical procedures (see Exhibit L) needed to treat the actual injuries caused by the accident:

(1). Vascular surgery.
(2). Examinations by GI specialists.
(3). Abdominal surgery (hernia).
(4). Treatment by a Neurologist.
(5). Physical therapy.

The actual cost of the above named medical treatments is over $190,000.

(c). The estimated time off from work that Stancu will need during the above mentioned treatments is 12 months and amount to an actual loss of $22,000.

(d). Stancu already lost about 3 months from work, which totals $6,000.

The total amount of Stancu's actual damages, up to this date of July 22, 2019, is **$268,000.**

51. In an action for workers' compensation retaliation, the plaintiff can recover actual damages. **In re Poly-Am.,L.P.** 262 S.W.3d 337,351 (Tex.2008); see Texas Labor Code §451.002(a). (Plaintiff can recover "reasonable damages"); see, e.g., **Southwestern Bell Tel. Co. v. Garza,** 164 S.W.3d 607, 615 (Tex.2004) ($1,034,108 in actual damages); see e.g. **Continental Coffee Prods. v. Cazarez, 937** S.W.2d 444,445 (Tex. 1996)($150,000 in actual damages).

52. **Economic damages.** Economic damages are intended to compen - sate the plaintiff for actual economic or pecuniaryloss. Tex.Civ. Prac.& Rem. Code §41.001(4). Economic damages can be divided into damages for past pecuniary losses and future pecuniary losses.

**(1) Past pecuniary losses.** Plaintiff can recover past lost wages and past lost benefits. See **Garza,** 164 S.W.3d at 615 n.5; **TDFPS v. Parra,** 503 S.W.3d 646,662(Tex.App. - El Paso 2016, pet. denied); **Hertz Equip. Rental Corp. v. Barousse,** 365 S.W.3d 46,57(Tex.App.-Houston[1st Dist.] 2011, pet. denied).

**(2) Future pecuniary losses.** The plaintiff can recover future lost wages and future lost benefits. See **In re Poly-Am.,**262 S.W.3d at 351; **Garza,** 164 S.W.3d at 615; Future pecuniary losses should be calculated by sub - stracting the amount the plaintiff will actually earn

in the future from the amount the plaintiff would have earned in the future if the defendants had not retaliated. **Hertz Equip. Rental**, 365 S.W.3d at 57 ; **Southwestern Elec. Power Co. v. Martin**, 844 S.W.2d 299,234 (Tex.App. - Texarkana 1992, writ denied).

53. **Mental-anguish damages.** Plaintiff can recover damages for past and future mental anguish. See **Garza** 164 S.W.3d at 615 n.5 ; **Parra**, 503 S.W.3d at 662.

54. **Exemplary damages.** In an action for workers' compensation retaliation the plaintiff can recover exemplary damages. **In re Poly-Am.,L.P.**, 262 S.W.3d 337,351 (Tex.2008). To recover exemplary damages, the plaintiff must first recover actual damages **Houston Nw. Med. Ctr. Survivor, Inc. v. King**, 788 S.W.2d 179,181-82 (Tex.App. - Houston [1st Dist.] 1990, no writ). Plaintiff's injury resulted from defendants' actual malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## INJUNCTIVE RELIEF

55. Plaintiff seeks injunctive relief unde Texas Labor Code section 451.003, and will file an Application for a Temporary Restraining Order, and Temporary Injunction.

## JURY DEMAND

56. Plaintiff demands a jury trial in accordance with the Seventh Amendment to the United States Constitution, and tenders the appropriate fee with this petition.

## CONDITIONS PRECEDENT

57. All conditions precedent to plaintiff's claim for relief have been performed or have occurred.

## REQUEST FOR DISCLOSURE

58. Under Texas Rule of Civil Procedure 194, plaintiff requests that defendants disclose, within 50 days of service of this request, the information or material described in Rule 194.2.

## OBJECTION TO ASSOCIATE JUDGE

59. Plaintiff objects to the referral of this case to an associate judge for hearing a trial on the merits or presiding at a jury trial.

## PRAYER

60. For these reasons, plaintiff ask that the Court issue citation for defendants to appear and answer, and that plaintiff be awarded judgment against defendants for the following :

a. Actual damages.

b. Temporary Restraining Order, and Temporary Injunction.

c. Exemplary damages.

d. Prejudgment and postjudgment interest.

e. Court costs.

f. All other relief to which plaintiff is entitled.

Respectfully submitted,

JOHN STANCU

Plaintiff Prose

P.O. Box 133171
Dallas, TX 75313
Tel.(202)689-9233

# EXHIBIT A

# AFFIDAVIT OF JOHN STANCU

## TIMELINE OF THE AUGUST 23, 2018 WORK ACCIDENT

STATE OF TEXAS  §

DALLAS COUNTY  §

Before me, the undersigned Notary Public, on  this  day personally appeared John Stancu, who swore and deposed under oath as follows:

"My name is John Stancu, I am over 18 years of age and fully competent to make this affidavit. I have personal knowledge of the facts recited herein which are true and correct.

I am employed by Hyatt Regency Dallas Hotel as a Building Engineer.

On August 23, 2018, between the hours of app. 8:a.m.-9:a.m. I was carrying boxes full of air conditioner filters, through the stairs of the building, from B-level to P-level. Those boxes are large (3'x3'x4') and weigh about 70 pounds.

While carrying the above mentioned boxes, I slipped on one of the steps and fell forward. As a result, my abdominal area was hit very hard by the edge of one box that I dropped. The box got squeezed between the stairs and my abdomen and I felt **immediately** a sharp pain in my stomach.

The above described accident occurred after about one hour of work, at app. 9:00 a.m.  About ten minutes later I experienced a prolonged bout of diarhea with blood, and I temporarily passed out.

I informed my direct supervisor Samuel Molina about the accident at about 9:45 a.m., and I left my job early on that day of August 23, 2018.

The following six days I took time off from work, hoping that few days of rest will alleviate my pain.

During August 24 to  31, 2018, I began experiencing dizziness, numbness and loss of sensation on the entire left part of my body and especially my left arm, extreme tiredness, blurry vision, memory losses, and black stools.

Because my condition got worse, on August 31, 2018, I  was admitted into the Emergency Room at Parkland Hospital.

After two days overnight stay in the ER, and a series of medical tests and MRI-s, the doctors diagnosed the following:

1. That due to the major blood loss, my red blood cells were reduced to a very low, life threatening level.
2. That the stroke occurred within few minutes of the accident, and the related impairments were triggered right during the stroke, when I passed out.
3. The doctors also recommended that I undergo colonoscopy and endoscopy tests to (a) make sure that the internal wound is healed, and (b) to make sure that there is not a pre-existing condition. I am planning to take the recommended tests as soon as I obtain coverage and arrange time off from work.

**For the record, I underline here that before this accident I never experienced any abdominal pain, internal bleeding, intestinal problems, nor any of the medical impairments that arose immediately after the August 23, 2018, work accident.**

JOHN STANCU

SUBSCRIBED AND SWORN TO BEFORE ME on this 19 **-th** day of December, 2018, to which I certify my hand and seal of office.

SANDRA ALVARADO
Notary ID #131462479
My Commission Expires
February 22, 2022

**NOTARY PUBLIC**
in and for THE STATE OF TEXAS

# EXHIBIT B



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

No Known Allergies

**Problem List:**

Patient Active Problem List

Diagnosis

- HTN (hypertension)
- HLD (hyperlipidemia)
- Other pulmonary embolism without acute cor pulmonale, unspecified chronicity
- Anticoagulation management encounter [Z51.81, Z79.01]
- Encounter for therapeutic drug monitoring [Z51.81]
- Gastrointestinal hemorrhage with melena
- Ataxia

**Medications:**

Current Facility-Administered Medications

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Dose |
|---|---|---|---|---|---|---|
| • pantoprazole EC (PROTONIX) tablet DOSE: 40 mg | 40 mg | ORAL | ONCE | Roppolo, Lynn Palacol, MD | | |

Current Outpatient Prescriptions

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 mg chewable tablet | Take 1 Tab by mouth one time a day. | 30 Tab | 2 |
| • lisinopril 10 mg tablet | Take 1 tablet by mouth twice a day | 60 tablet | 3 |
| • simvastatin 20 mg tablet | Take 1 tablet by mouth daily at bedtime | 30 tablet | 3 |
| • warfarin 5 mg tablet | One pill daily except take one and half pill on Wednesday and Friday | 30 tablet | 2 |

(Not in a hospital admission)

**Past Medical History:**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • HTN (hypertension) | |
| • Hyperlipidemia | |
| • Pulmonary embolism | 06/2017 |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

**Past Surgical History:**

has a past surgical history that includes HX Hernia Repair (Bilateral).

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • HX HERNIA REPAIR *inguinal* | Bilateral | |

**Family History:**

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • No Known Problems | Mother | |
| • No Known Problems | Father | |
| • Epilepsy | Neg Hx | |
| • Heart Problems | Neg Hx | |
| • Lipids | Neg Hx | |
| • Headache/Migraine | Neg Hx | |
| • Hepatitis | Neg Hx | |
| • Depression | Neg Hx | |
| • Psychiatric Illness | Neg Hx | |

**Social History:**

Social History

Social History

| | |
|---|---|
| • Marital status: | Single |
| Spouse name: | N/A |
| • Number of children: | N/A |
| • Years of education: | N/A |

Social History Main Topics

| | |
|---|---|
| • Smoking status: | Never Smoker |
| • Smokeless tobacco: | Never Used |
| • Alcohol use | Yes |
| *Comment: casually* | |
| • Drug use: | No |
| • Sexual activity: | Not Currently |
| Partners: | Female |

Other Topics | Concern
- Not on file

Social History Narrative

*Lives alone*

**Lab Results**

Lab Results

| Component | Value | Date |
|---|---|---|



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

| | | |
|---|---|---|
| NA | 137 | 08/30/2018 |
| K | 3.9 | 08/30/2018 |
| CL | 102 | 08/30/2018 |
| CO2 | 26 | 08/30/2018 |
| ANIONGAP | 9 | 08/30/2018 |
| BUN | 12 | 08/30/2018 |
| CREATININE | 0.84 | 08/30/2018 |
| GLUCOSE | 108 | 08/30/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 7.50 | 08/30/2018 |
| HGB | 9.3 (L) | 08/30/2018 |
| HCT | 28.4 (L) | 08/30/2018 |
| MCV | 92.8 (H) | 08/30/2018 |
| PLT | 353 | 08/30/2018 |

No results found for: PTT

Lab Results

| Component | Value | Date |
|---|---|---|
| INR | 1.0 | 06/25/2018 |

SODIUM

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 137 | 135 - 145 mmol/L | Final |

POTASSIUM

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 3.9 | 3.6 - 5.0 mmol/L | Final |

Comment:
*Potassium level in a plasma (green top) sample is 0.2 mmol/L (mean) lower than that in a serum (red top) sample.*

CHLORIDE

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 102 | 98 - 109 mmol/L | Final |

CO2

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 26 | 22 - 31 mmol/L | Final |

ANION GAP

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 9 | 6 - 16 mmol/L | Final |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Abhyankar, Rahul Dilip, MD at 8/31/2018 1:24 PM (continued)

Recommendations:
- For secondary stroke prevention, recommended ASA 81 mg po every day and simvastatin 20 mg. Heparin gtt is not indicated.
- TEE to look for cardiac thrombus
- Telemetry to look for atrial fibrillation
- Normotensive blood pressure goal
- PT/OT/ST
- Stroke team will follow along

See original consult note for attending attestation

**Electronically signed by:**
Rahul Abhyankar, MD
PGY-4, Adult Neurology
Pager: 214-786-7783

[illegible] MD at 8/31/2018 1:42 PM

Consults by Browning, Jeffrey David, MD at 8/31/2018 7:46 AM

Author: Browning, Jeffrey David, MD | Service: Gastroenterology | Author Type: Attending
Filed: 8/31/2018 5:35 PM | Date of Service: 8/31/2018 7:46 AM | Creation Time: 8/31/2018 7:46 AM
Note Type: Addendum | Editor: Browning, Jeffrey David, MD (Attending)
Related Notes: Original Note by Rowley, Michael William, MD (Fellow) filed at 8/31/2018 12:36 PM
Consult Orders
1. Consult GI - General GI Service [350277166] ordered by Huntley, Geoffrey Donald, MD at 08/30/18 2239

**GI Attending**

I have seen and examined Ioan John Stancu and I agree with the history, physical, assessment, and plan per Dr. Rowley. Briefly, this is a 63 year old male with unprovoked PE previously on coumadin admitted with a stroke. Patient self d/c his coumadin after episode of melenic stool. We are asked to see him for GI bleeding. No h/o colonoscopy. (+) IDA. We will plan for EGD and colonoscopy tomorrow to evaluate his GIB.

**UTSW Digestive and Liver Diseases Consult Note**

Reason for Consultation: anemia
Consulting M.D.: Christiana Sahl Renner
Interpretor: none

History of Present Illness: Ioan John Stancu is a 63 year old male with h/o unprovoked PE previously warfarin, HTN and HLD who presented to the ED with 6 day dizziness, numbness/weakness in L hand and mild L arm weakness prompting presentation to the ED. Found to have a stroke on MRI. Also concern for GIB for which we are consulted.

In June 2017 had a PE which was unprovoked. Therefore was put on warfarin indefinitely. In July however developed melena over a 2 day period suddenly. He therefore stopped his warfarin as he was instructed previously to do so. However, he did not end up following up with his doctor after this. Switched himself to ASA. Since that time no bleeding at all, GI or non-GI.

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Browning, Jeffrey David, MD at 8/31/2018 7:46 AM (continued)

No prior ulcers. No prior endo scopies. No FH GI malignancy.

NSAID/BC powder use?: none
Anticoagulation/antiplatelet therapy ?: ASA

Prior Endoscopies:
No prior EGDs or colonoscpies

**Past History:**
Past Medical History:

| Diagnosis | Date |
|---|---|
| • HTN (hypertension) | |
| • Hyperlipidemia | |
| • Pulmonary embolism | 06/2017 |

PSH:
hernia

**Family History:**
Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • No Known Problems | Mother | |
| • No Known Problems | Father | |
| • Epilepsy | Neg Hx | |
| • Heart Problems | Neg Hx | |
| • Lipids | Neg Hx | |
| • Headache/Migraine | Neg Hx | |
| • Hepatitis | Neg Hx | |
| • Depression | Neg Hx | |
| • Psychiatric Illness | Neg Hx | |

No FH of GI malignancy

**Social History:**
Social History
Substance Use Topics

| | |
|---|---|
| • Smoking status: | Never Smoker |
| • Smokeless tobacco: | Never Used |
| • Alcohol use | Yes |
| *Comment: casually* | |

Review of Systems **(bold is positive)**
***General***: weight changes, fatigue, weakness, fever, chills, night sweats
***Derm***: changes in skin, rashes
***HENT***: headache, epistaxis
***Eyes***: blurry vision, vision loss
***CV***: chest pain, palpitations, edema

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

***Pulm***:shortness of breath, cough, hemoptysis
***Gastrointestinal***: above
***GU***: dysuria, hematuria
***Msk***: joint pain, myalgias
***Neuro***: loss of consciousness, **focal neurological deficits**
***Endocrine***: heat intolerance, cold intolerance
***Heme***: bleeding, easy bruising

Allergies:
No Known Allergies

**Inpatient Medications:**
Current Facility-Administered Medications

| Medication | Dose | Frequency |
|---|---|---|
| • acetaminophen (TYLENOL) tablet DOSE: 650 mg | 650 mg | Q4HR PRN |
| • atorvastatin (LIPITOR) tablet 80 mg | 80 mg | DAILY |
| • docusate sodium (COLACE) capsule DOSE: 100 mg | 100 mg | BID |
| • HYDROcodone-acetaminophen (NORCO) 5-325 mg tablet DOSE: 1 tablet | 1 tablet | Q4HR PRN |
| • pantoprazole EC (PROTONIX) tablet DOSE: 40 mg | 40 mg | DAILY |

Outpatient Medications:
Outpatient Prescriptions Marked as Taking for the 8/30/18 encounter (Hospital Encounter)

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 mg chewable tablet | Take 1 Tab by mouth one time a day. | 30 Tab | 2 |

**Objective:**

**Physical Exam**
Pulse: 62 (08/30/18 1817), Monitored Heart Rate: 63 bpm (08/31/18 0500)



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Browning, Jeffrey David, MD at 8/31/2018 7:46 AM (continued)

BP: 134/66, Temp: 37.2 °C (98.9 °F), Temp src: Oral, Respiratory Rate: 16, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 100 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Body mass index is 24.41 kg/m².
Gen: NAD.
Eyes: normal conjunctiva, PEERL. Scleral icterus absent.
ENT: normal gingiva. oropharynx is normal.
Neck: neck is supple. No cervical lymphadenopathy.
CV: RRR, S1/S2 normal. Leg edema absent.
Resp: CTAB, normal respiratory movements
Abd: soft, non-distended. non-tender
No masses. No hepatomegaly. Ascites absent.
Rectal: fleck of brown, solid stool. No masses
Musculoskeletal: normal range of motion. No digital clubbing or cyanosis.
Skin: No rashes. Jaundice absent.
Neuro: A&O x3. CN nerve normal except for L lip droop w smile. L bicep 4/5. L handgrip 4/5. LE normal strength

**Pertinent labs**

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 142 | 08/31/2018 |
| K | 4.2 | 08/31/2018 |
| CL | 105 | 08/31/2018 |
| CO2 | 26 | 08/31/2018 |
| ANIONGAP | 11 | 08/31/2018 |
| BUN | 11 | 08/31/2018 |
| CREATININE | 0.89 | 08/31/2018 |
| GLUCOSE | 99 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 7.55 | 08/31/2018 |
| HGB | 8.1 (L) | 08/31/2018 |
| HCT | 25.0 (L) | 08/31/2018 |
| MCV | 93.3 (H) | 08/31/2018 |
| PLT | 331 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| AST | 24 | 08/30/2018 |
| ALT | 21 | 08/30/2018 |
| ALKPHOS | 104 | 08/30/2018 |
| BILITOTAL | 0.3 | 08/30/2018 |
| LIPASE | 23 | 08/30/2018 |
| ALB | 4.3 | 08/30/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| INR | 1.2 (H) | 08/31/2018 |

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Browning, Jeffrey David, MD at 8/31/2018 7:46 AM (continued)

**Imaging:**
I have personally reviewed all pertinent available imaging.

**Impression/Recommendations:**
Ioan John Stancu is a 63 year old male with h/o unprovoked PE 1.5 yrs ago, HTN, HLD now with embolic stroke in the setting of discontinued warfarin in July. 2 day h/o melenic stools led to self discontinuation: no overt bleeding since but does have IDA.

I counseled the patient at length about the clear benef it >> risk associated with performing a double endoscopy. I would recommend EGD (push enteroscopy if no source found) and colonoscopy as an inpatient. I counseled him at length about the r/b/a. He is concerned about the perforation risk which is about 1/500 and bleeding risk which is <1% if polyps are removed. The likelihood it would require transfusion is even lower. He is especially concerned about risk of blood transfusion as he has heard of people getting infections from them. I explained this risk is estimated as < 100,000 to 1 million for HIV, HCV and other communicable diseases as in the last 30 years, these viruses are now discovered and very well tested for.

I explained that in the setting of overt bleeding and IDA ,this procedure is clearly indicated even if there was no question of need for AC as there is clearly an abnormality in his GI tract. I explained bleeding does not occur just because of AC.

Outpatient work up is less ideal for 2 reasons. While work up for IDA is typically very appropriate for the outpatient setting, he has clear indication f or anticoagulation again. The exact timing of initiationhas not been clarified by neurology (presumably within a month and likely even sooner as the stroke is fairly mild) but I am concerned of risk of overt GI bleed in the meantime. His initial bleeding risk was not life threatening but could be. He does at least agree to seek care immediately if it happens again this time.

Furthermore, he it sounds like he does not have insurance curren tly and unclear if he'll be able to get PFA. However, he believes this will be covered by worker's comp.

The patient expresses very good understanding of all of these issues. He clearly has competence to make this decision.

--------

-Please send a FIT if possible as he states he might reconsider if positive
-please have financial counseling or social work see the patient so his exact insurance status/eligibility can be determined.
-for now he can eat from a GI standpoint
-I would recommend a push enteroscopy with colonoscopy if nothing is found on initial EGD. All of these can be performed at the same time. Follow up capsule study would be indicated if above is negative
-However, EGD/colonoscopy with follow up capsule endoscopy if negative is reasonable too. There would be a slight decreased risk of complications of EGD instead of enteroscopy with understanding repeat procedure could be needed if an interveenable lesion is identified that is reachable with push.

-I stressed that if he changes his mind at any time which here, he can alert his team and we will be happy to proceed with the procedure.

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Browning, Jeffrey David, MD at 8/31/2018 7:46 AM (continued)

-If he can in fact get insurance arranged, please call me to schedule the procedure as an outpatient.

**Attending: Dr Browning**
**See attending addendum for any final recommendations**

**Signed: Michael William Rowley, M.D., GI Fellow-PGY4**
**Pager: 214-786-2712**
**Division of Digestive and Liver Diseases**
**UT Southwestern Medical Center**

**Addendum:**
Called back by primary team this afternoon. Patient now agrees to do procedure.

Will consent for enteroscopy/colonoscopy for tomorrow morning. Prep tonight. Clears now. NPO MN

Plan for colonoscopy tomorrow

Recommendations:
- I have placed orders for Clear liquid diet today, NPO at midnight
-4 L Golytely at 1700 this evening
- Hold AM anticoagulation on day of procedure
- Please give Zofran prn if pt experiences nausea while drinking prep.
- Patient must drink all 4 L prep. Prep tastes better cold, mixed with other clear/flavorful beverage such as lemonade, sprite, crystal light, gatorade. Pt to drink 8 oz glass of Golytely mixture every 15 minutes until ALL liquid is gone. Goal is to drink the golytely **within 2 hours**. Pt should not sip the prep.
- BMs should be **CLEAR** (appearance of water or urine).
- If pt's BMs are not clear at 4 AM, nursing should contact on-call primary team cross-cover to order 2 additional liters of Golytely.
-Pt must drink these 2 L within by 5:30 AM in order to have colonoscopy performed as scheduled.

[illegible] signed by Browning, Jeffrey David, MD at 8/31/2018 5:35 PM

H&P by Huntley, Geoffrey Donald, MD at 8/30/2018 7:15 PM

[illegible] Huntley, Geoffrey Donald, MD
[illegible] 8/31/2018 12:28 AM
[illegible] Attested Addendum
[illegible] Original Note by Huntley, Geoffrey Donald, MD (PGY 1) filed at 8/30/2018 11:48 PM
[illegible] Renner, Christiana Sahl, MD at 9/1/2018 12:07 AM

Service: Internal Medicine
Date of Service: 8/30/2018 7:15 PM
Editor: Huntley, Geoffrey Donald, MD (PGY 1)

Author Type: PGY 1
Creation Time: 8/30/2018 7:15 PM

[illegible] signed by Renner, Christiana Sahl, MD at 9/1/2018 12:07 AM

Attending Addendum:

I have seen and examined Mr. Stancu with Dr. Huntley on 8/31. I agree with the review of systems, past medical history, social history, family history as outlined above.

HPI reviewed with pt--he notes that he began feeling worse with L hand numbness, increased dizziness, and unsteadiness about one week ago. He was unable to tell me why he did not come in then. Of note, he

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

H&P by Huntley, Geoffrey Donald, MD at 8/30/2018 7:15 PM (continued)

Patient reports black stools prior to stopping warfarin in July. It is not clear how long these black stools have been occurring. This has resolved. His Hgb is down to 9.3 from 15 in 2017. He may have been slowly bleeding from an upper source given description as black and tarry. He denies abdominal pain, reflux symptoms, or excessive NSAID use. He has no history of cirrhosis. Therefore, most likely is vascular lesion (angiodysplasia > dieulafoy's), polyp, or malignancy. He doesn't appear to be actively bleeding now; DRE showed brown stool.
- 40mg PO pantoprazole daily
- GI consult
- May require prolonged anticoagulation in the setting of prior PE and now embolic stroke, will need to consider risk for GI bleed.
- Trend CBC
- PT, INR
- Anemia studies

# HTN
On lisinopril 10mg BID at home.
- Will hold initially given concern for GI bleed vs stroke. Can restart as BP allows.

# HLD
On simvastatin 20mg at home.
- Will escalate to high intensity atorvastatin 80mg
- Lipid panel in AM.

Bowel: Colace daily
DVT: None given concern for GI bleed
GI: Pantoprazole
Diet: General, NPO after midnight
CODE: FULL

**Electronically Signed by:**
Geoffrey Huntley, MD
Internal Medicine, PGY1

[illegible] MD at 9/1/2018 12:07 AM

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM

Mirza, Shazia A, MBBS
9/1/2018 12:39 PM
Attested
Warnack, Worthy R., MD at 9/1/2018 1:37 PM

Service: Neurology
Date of Service: 9/1/2018 10:57 AM
Editor: Mirza, Shazia A, MBBS (PGY 2)

Author Type: PGY 2
Creation Time: 9/1/2018 10:57 AM

[illegible] signed by Warnack, Worthy R., MD at 9/1/2018 1:37 PM

**VASCULAR NEUROLOGY ATTENDING NOTE**

Chart reviewed, patient seen and examined and patient management discussed with Dr. Mirza and team. I agree with findings, assessment, and plan of care as noted. 63y/o man admitted to the medicine service on 8/30 with lightheadedness and diaphoresis, seen by neurology for evaluation of L hand weakness. Patient seen on 9/1 rounds at about 1015.
Results: TEE: pending.
Exam: NIHSS score 2: L facial weakness-1, L hemisensory-1.
Diagnoses: Multiple R hemispheric acute infarctions, presumably embolic (cardiac vs prothrombotic) in etiology. 8/31 CTA head and neck: no R ICA stenosis; incidentally identified L carotid stenosis of about 40%. 8/31 TTE w bubble study: no high embolic risk findings. Hx PE 2017. Recent melena. Anemia. HTN. HLD.
Plan: ASA 81mg/d.

Printed on 9/24/18 11:05 AM

PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 9/1/2018 8:05 AM (continued)

Author: Giles, Michael Alexander, MD
Filed: 9/1/2018 11:03 AM
Status: Attested
Cosigner: Renner, Christiana Sahl, MD at 9/1/2018 9:34 PM
Service: Internal Medicine
Date of Service: 9/1/2018 8:05 AM
Editor: Giles, Michael Alexander, MD (PGY 1)
Author Type: PGY 1
Creation Time: 9/1/2018 8:05 AM

Attestation signed by Renner, Christiana Sahl, MD at 9/1/2018 9:34 PM

**Attending Addendum:**

I have seen and examined Mr. Stancu with Dr. Giles, and I agree with the findings and plan of care as noted above. Mr. Stancu reports that he is now clear and is awaiting his EGD/colonoscopy. Was apologetic about desire to leave yesterday. Exam is stable, ?slightly improved coordination of L hand. Hb stable on repeat this morning.

Plan:
--awaiting EGD and colonoscopy
--TEE ordered, but suspect pt will want to do as outpt
--per Neuro, only on ASA

Counseled pt on the importance of completing workup, but suspect he is high risk to leave AMA.

Christiana S. Renner, MD
x8188

**Internal Medicine Progress Note**

**Subjective:**
Denies nausea and vomiting, but has mild headache. Still feels rather weak and experiences light-headedness when getting out of bed. He is hoping to go home today.

The patient mentioned that he has mild concern for Novichok poisoning but thought this concern was overly paranoid. The patient reports that he is a Soviet dissident and that the numbers tattooed onto his left forearm and right hand were acquired during imprisonment in Romania. In college, he listened to a US-funded Cold War-era radio station called "Radio Free Europe" , which was broadcast to the entire Eastern Bloc. The stories of freedom he heard on this station inspired him to write anti-Soviet literature in college for which he and his friends were imprisoned. After eight years of imprisonment he was released. He then attempted to escape the Eastern Bloc but was captured in Yugoslavia. He reports that the USSR would pay Yugoslavian officials substantial sums of money for each defector captured. Fortunately, the US was paying even more for these defectors at the time, so he was flown to the US where he was allowed to immigrate. After moving to the US, the CIA apparently informed him that he was being followed by Soviet operatives. He doesn't think anyone has been following him since the fall of the Soviet Union in 1991.

ROS: pertinent findings above

**Objective:**
Pulse: 58 (09/01/18 0736), Monitored Heart Rate: 60 bpm (08/31/18 1211)
BP: 128/70, Temp: 36.6 °C (97.9 °F), Temp src: Oral, Respiratory Rate: 16, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 98 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Printed on 9/24/18 11:05 AM

PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 9/1/2018 8:05 AM (continued)

Physical Exam:
Gen: A&O x 3 in NAD.
Eyes: Non-sclerotic, pale-conjunctiva
ENT: Oropharynx clear of exudates and erythema
Neck: No JVD. No LAD.
CV: Non-tachycardic. Regular rhythm. No extra sounds, murmurs, rubs.
Resp: CTAB with normal respiratory effort.
Abd: Non-distended. BS present. Soft, nontender.
Musculoskeletal: ROM full
Skin: No rashes.
Extremities: Pulses full and equal. No edema.
Neuro: CN 2-12 intact. He has unsteady and wide gait. L hand has minor past pointing on finger-to-nose. L arm has mild pronator drift. L hand is 4/5 strength to finger grip and spread. Decreased sensation to light tough on L hand and all L fingers. Apraxia of left hand.
Psych: Somewhat anxious appearing.

**Laboratory/Diagnostics/Imaging:**

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 142 | 08/31/2018 |
| K | 4.2 | 08/31/2018 |
| CL | 105 | 08/31/2018 |
| CO2 | 26 | 08/31/2018 |
| ANIONGAP | 11 | 08/31/2018 |
| BUN | 11 | 08/31/2018 |
| CREATININE | 0.89 | 08/31/2018 |
| GLUCOSE | 99 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.67 | 09/01/2018 |
| HGB | 8.5 (L) | 09/01/2018 |
| HCT | 25.6 (L) | 09/01/2018 |
| MCV | 91.1 | 09/01/2018 |
| PLT | 325 | 09/01/2018 |
| NEUTROABS | 4.31 | 08/31/2018 |
| LYMPHSABS | 2.11 | 08/31/2018 |
| MONOSABS | 0.73 | 08/31/2018 |
| EOSABS | 0.34 | 08/31/2018 |
| BASOSABS | 0.04 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHOL | 165 | 08/31/2018 |
| TRIGLYCERIDE | 125 | 08/31/2018 |
| HDL | 34 (L) | 08/31/2018 |
| LDLCALC | 106 (H) | 08/31/2018 |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 8/31/2018 6:58 AM (continued)

CXR: Unchanged mild left lower lobe atelectasis.

**Assessment/Plan:**
Patient is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 who presented to the ED on 8/30 for light headedness and diaphoresis. Downtrending RBC/Hg, suspicion is high for an ongoing GI bleed. Patient also presents with new neurologic symptoms (unsteadiness, weakness of L hand) in the setting of recently stopping warfarin for melena.

**# Ischemic stroke to R cerebral hemisphere**, concerning for cardioembolus given lack of ipsilateral carotid stenosis. MRI brain showed embolic stroke to R cerebral hemisphere.
- left hand apraxia and unsteadiness on exam
- patient started on ASA 81 per Neuro recs
- TEE ordered

**# Hx of PE in 2017**
In the setting of previous VTE, recent discontinuation of anticoagulation, and development of L sided hand weakness and numbness, he was at risk for stroke. Unfortunately, this is outside of the window (4.5 hrs alteplase and 6 hr thrombectomy) for intervention since it occurred about 6- 7 days ago. I am uncertain of the cause of the embolism. He has no history of atrial fibrillation. TTE in 2015 did not mention any ASD or PFO. However, unifying diagnosis for prior PE and now embolic stroke would be the presence of an ASD.
- on ASA 81
- Must be cautious of anticoagulation in the setting of recent melena
- Continue tele to evaluate for paroxysmal a-fib
- TTE showed Grade II diastolic dusfunction

**# Anemia w/ recent history of melena**
Patient reports black stools prior to stopping warfarin in July. It is not clear how long these black stools have been occurring. This has resolved. His Hgb is down to 9.3 from 15 in 2017. He may have been slowly bleeding from an upper source given description as black and tarry. He denies abdominal pain, reflux symptoms, or excessive NSAID use. He has no history of cirrhosis. Therefore, most likely is vascular lesion (angiodysplasia > dieulafoy's), polyp, or malignancy. He doesn't appear to be actively bleeding now; DRE showed brown stool.
**- RBC 2.68, Hg 8.1. Transfuse patient if Hg<7 or any active bleeding. Ordered PM CBC.**
- 40mg PO pantoprazole daily
- Upper and lower scope planned for tomorrow
- May require prolonged anticoagulation in the setting of prior PE and now embolic stroke, will need to consider risk for GI bleed.
- Trend CBC
- PT, INR
- Anemia studies

**# HTN**
On lisinopril 10mg BID at home.
- Will hold initially given concern for GI bleed vs stroke. Can restart as BP allows.

**# HLD**
On simvastatin 20mg at home.
- Will escalate to high intensity atorvastatin 80mg
- Lipid panel in AM.

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Giles, Michael Alexander, MD at 8/31/2018 6:58 AM (continued)

Bowel: Colace daily
DVT: ASA 81
GI: Pantoprazole
Diet: NPO after midnight
CODE: FULL

**Electronically Signed by:**
Michael Giles, MD
Psychiatry, PGY1
Internal Medicine Service

Chaisilena Sohi MD at 9/12/2018 4:20 PM

EKG - All Results

EKG ADULT [341168860] Resulted: 08/30/18 1340, Result status: Final result

Metzger, Jeffery Craig, MD 08/30/18 1336 Resulting lab: PARKLAND LAB

Normal sinus rhythm
Minimal voltage criteria for LVH, may be normal variant
Borderline abnormal ECG
When compared with ECG of 21-JUN-2017 07:38,
No significant change was found
Confirmed by DELEMOS, M.D., JAMES (226) on 8/30/2018 6:15:23 PM

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| Ventricular Rate | 71 | BPM | — |
| Atrial Rate | 71 | BPM | — |
| P-R Interval | 136 | ms | — |
| QRS Duration | 90 | ms | — |
| Q-T Interval | 394 | ms | — |
| QTC Calc (Bezet) | 428 | ms | — |
| P Axis | 70 | degrees | — |
| R Axis | 1 | degrees | — |
| T Axis | 44 | degrees | — |

View Image 8/30/2018 1:42 PM (below)

View Image 8/30/2018 6:15 PM (below)

PIECES Analytics - All Results

PIECES ANALYTICS RESULT-ALL CAUSE [350262335] Resulted: 08/30/18 1713, Result status: Final result

Interface, Results 08/30/18 1713 Resulting lab: PARKLAND LAB

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| (AC) All Cause | MEDIUM | — | — |

Comment:

DISCLAIMER: Pieces Technologies, Inc., is not a health care provider. All Pieces users must rely on their own clinical judgment in every case and are solely responsible for their own clinical decision making.

PIECES ANALYTICS RESULT-FLAG COUNT [350262337] Resulted: 08/30/18 1713, Result status: Final result

Interface, Results 08/30/18 1713 Resulting lab: PARKLAND LAB



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

PIECES Analytics - All Results (continued)

PIECES ANALYTICS RESULT-FLAG COUNT [350262337] (continued) Resulted: 08/30/18 1713, Result status: Final result

IOAN J. STANCU
Admitted 08/30/2018
DOB: 06/08/1955
Probable Conditions:
PIECES Risk Score: MEDIUM
Recommendations: 1

POTENTIAL FOLLOW-UP NEED
-Patient is moderate risk for readmission. Follow up recommended within 7-14 days

Components

| Component | Value | Reference Range | Flag |
|---|---|---|---|
| Flag Count | 1 | — | — |

Comment:

DISCLAIMER: Pieces Technologies, Inc., is not a health care provider. All Pieces users must rely on their own clinical judgment in every case and are solely responsible for their own clinical decision making.

Imaging - All Results

XR CHEST 2 VIEWS [350262314] Resulted: 08/30/18 1703, Result status: Final result

Roppolo, Lynn Palacol, MD 08/30/18 1603

Resulted by:
Saboo, Sachin Shyamsunder, MD
Errami, Mounir Ben, MD
Accession number: 84948277

08/30/18 1612 - 08/30/18 1618
PARKLAND LAB
Signed by: Saboo, Sachin Shyamsunder, MD on 8/30/2018 5:03 PM

EXAM: XR CHEST 2 VIEWS 8/30/2018 4:12 PM

HISTORY: 63 years-old Male with Dizzy

TECHNIQUE: Frontal and lateral chest radiographs

COMPARISON: Chest radiograph of June 21, 2017

FINDINGS:
Lines and tubes: None.

Cardiomediastinal: The cardiomediastinal silhouette is unremarkable.

Lungs and pleura: Mild left lower lobe atelectasis is unchanged.. No pleural effusion. No pneumothorax.

Musculoskeletal: No significant skeletal abnormality.

Other: None.

Impression

Unchanged mild left lower lobe atelectasis.

FOLLOW-UP RECOMMENDATIONS: Per clinical team.

I have personally reviewed the image(s) and the report above and concur.

 

5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

***Be Advised:** Epic is dynamic electronic medical record software that will produce a copy of the patient's medical records. A Face Sheet report is produced which contains demographic information that is not static as to a specific encounter date, but updated to the last current information.*

Patient Demographics

| Name | Patient ID | SSN | Sex | Birth Date |
|---|---|---|---|---|
| Stancu, Ioan John | 1408904 | xxx-xx-6846 | Male | 06/08/55 (63 yrs) |

| Address | Phone | Email | Employer |
|---|---|---|---|
| 5454 Amesbury Dr # 907<br>Dallas TX 75206 | 469-567-3365 (H)<br>202-689-9233 (M) | | Hyatt Regency Hotel |

County
DALLAS

| Reg Status | PCP |
|---|---|
| Verified | Pandya, Sapna S., DO214-266-3000 |

| Admission Date | Discharge Date | Admitting Provider |
|---|---|---|
| 08/30/18 | 09/01/18 | Renner, Christiana Sahl, MD |

| Marital Status | Alias | Language |
|---|---|---|
| Single | STANCU,IOAN J | English |

Emergency Contact 1
Ryan Stancu (RELATIVE)
469-567-3365 (M)

Patient Ethnicity & Race

| Ethnic Group | Patient Race |
|---|---|
| Non Hispanic | White |

Admit/Appt Department: SIXTEEN EPILEPSY
Advance Directive:No
Privacy Notice: Acknowledgement

Hospital Account

| Name | Acct ID | Class | Status | Primary Coverage |
|---|---|---|---|---|
| Stancu, Ioan John | 623114903 | Inpatient | Billed | None |

Guarantor Account (for Hospital Account #623114903)

| Name | Relation to Pt | Service Area | Active? | Acct Type |
|---|---|---|---|---|
| Stancu, Ioan John | Self | PHHS | Yes | Personal/Family |

| Address | Phone | Gender | DOB |
|---|---|---|---|
| 5454 Amesbury Dr # 907<br>Dallas, TX 75206 | 469-567-3365(H) | Male | 06/08/55 |

| Emp Name | Emp Status | Occupation |
|---|---|---|
| Hyatt Regency Hotel | Part Time | |

| Emp Address | Emp Phone |
|---|---|
| 600 Reunion Blvd<br>DALLAS, TX 75207 | 214-651-1234 |

Coverage Information (for Hospital Account #623114903)

Not on file

Allergies as of 9/1/2018 — **Review Complete** On: **9/1/2018** By: **Abraham, Susy, RN**

No Known Allergies

# EXHIBIT C

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Problem List (continued) as of 9/1/2018

| | ICD-10-CM | Noted - Resolved |
|---|---|---|
| **Gastrointestinal hemorrhage with melena** | K92.1 | 8/30/2018 - Present |
| **Ataxia** | R27.0 | 8/30/2018 - Present |

Allergies as of 9/1/2018

**Review Complete** On: **9/1/2018** By: **Abraham, Susy, RN**

No Known Allergies

Procedure Notes

No notes of this type exist for this encounter.

Discharge Summary Notes

Discharge Summaries by Renner, Christiana Sahl, MD at 9/1/2018 5:23 PM

Author: Renner, Christiana Sahl, MD Service: Internal Medicine Author Type: Attending
Filed: 9/5/2018 2:40 PM Date of Service: 9/1/2018 5:23 PM Creation Time: 9/2/2018 8:16 AM
Status: Addendum Editor: Renner, Christiana Sahl, MD (Attending)
Related Notes: Original Note by Giles, Michael Alexander, MD (PGY 1) filed at 9/2/2018 8:44 AM

**Physician Discharge Summary**

Patient Name: Ioan John Stancu MRN: 1408904 Age: 63 year old DOB: 6/8/1955

**Admit date:** 8/30/2018
**Discharge date:** 9.1.2018

**Treatment Team: Medicine A2**
**Attending:** Dr. Renner
**Resident:** Dr. Keshvani
**Intern:** Dr. Giles

**Admission Diagnosis:**
Ischemic stroke to R cerebral hemisphere
Anemia w/ recent history of melena
Hypertension
Hyperlipidemia

**Discharged Diagnosis:**
Ischemic stroke to R cerebral hemisphere
Anemia w/ recent history of melena
Hypertension
Hyperlipidemia

**Consults:**
Orders Placed This Encounter
Procedure
- Consult GI - General GI Service
- Consult Neurology Service

**Procedures:**



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Discharge Summary Notes (continued)

Discharge Summaries by Renner, Christiana Sahl, MD at 9/1/2018 5:23 PM (continued)

None

**Significant Diagnostic Studies:**

Lab Results

| Component | Value | Date |
|---|---|---|
| NA | 142 | 08/31/2018 |
| K | 4.2 | 08/31/2018 |
| CL | 105 | 08/31/2018 |
| CO2 | 26 | 08/31/2018 |
| ANIONGAP | 11 | 08/31/2018 |
| BUN | 11 | 08/31/2018 |
| CREATININE | 0.89 | 08/31/2018 |
| GLUCOSE | 99 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| WBC | 6.67 | 09/01/2018 |
| HGB | 8.5 (L) | 09/01/2018 |
| HCT | 25.6 (L) | 09/01/2018 |
| MCV | 91.1 | 09/01/2018 |
| PLT | 325 | 09/01/2018 |
| NEUTROABS | 4.31 | 08/31/2018 |
| LYMPHSABS | 2.11 | 08/31/2018 |
| MONOSABS | 0.73 | 08/31/2018 |
| EOSABS | 0.34 | 08/31/2018 |
| BASOSABS | 0.04 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| CHOL | 165 | 08/31/2018 |
| TRIGLYCERIDE | 125 | 08/31/2018 |
| HDL | 34 (L) | 08/31/2018 |
| LDLCALC | 106 (H) | 08/31/2018 |
| CHOLHDLRATIO | 5 | 08/31/2018 |

Lab Results

| Component | Value | Date |
|---|---|---|
| AST | 24 | 08/30/2018 |
| ALT | 21 | 08/30/2018 |
| ALKPHOS | 104 | 08/30/2018 |
| BILITOTAL | 0.3 | 08/30/2018 |
| LIPASE | 23 | 08/30/2018 |
| ALB | 4.3 | 08/30/2018 |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Discharge Summary Notes (continued)

Discharge Summaries by Renner, Christiana Sahl, MD at 9/1/2018 5:23 PM (continued)

CT Angiography Head and Neck:
1. Soft plaque along bilateral carotid bulbs, more prominent on the left. Moderate (around 40%) stenosis of the left ICA origin with signs of plaque ulceration. No significant stenosis on the right. No large vessel occlusion. These changes can be better evaluated with carotid Doppler.
2. Right deep watershed infarcts, seen on prior MRI, are poorly delineated

CV Echo: Grade II diastolic dysfunction

MR Brain W/O contrast:
1. Multiple foci of restricted diffusion involving the right cerebral hemisphere consistent with acute infarcts many of which in a watershed distribution.

CXR: Unchanged mild left lower lobe atelectasis.

**History:**
From H&P on day 1 of admission:
*"Patient is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 previously on warfarin who presented to the ED on 8/30 for light headedness and diaphoresis.*

*Patient reports that he had an episode of light headedness 6 days ago while at work. He states he wasn't feeling well so he sat down and then was profusely sweating. This went away after a while. He has never had this problem before. Since then, he has intermittent unsteadiness, as if he is walking on a "tight rope". He also reports having a loss in sensation and decreased strength in his left hand. He reports dropping some dishes because of the loss of sensation. This has never happened to him before. He also reports some blurry vision when waking up in the morning and watching TV that is new for the past 6-7 days. He denies drooping of eyelids.*

*Additionally, he reports generalized fatigue, decreased appetite, and dark stools. He is on warfarin for a prior PE in 2017. He started to develop dark stools a couple of months ago, and he was told to stop taking warfarin if these develop. He has not taken warfarin since July. At that time, he describes his stools as black and very sticky. He has not had any more of these stools since stopping warfarin. He now has regular, brown, formed stools. He has never had a colonoscopy, but he had FOT test 3 months ago that was negative. He denies abdominal pain, reflux-like symptoms, or excessive NSAID use. He has stopped taking aspirin since the onset of the unsteadiness.*

*In the ED, vitals were 36.7, HR 66, 168/72, 100%. Labs were remarkable for BMP wnl, Hgb 9.3 (15.2 in 2017), hepatic panel wnl, TSH wnl, Trop 10. UA, ECG, and CXR were unremarkable. Neurology was consulted, who recommended MR brain.*
*MR brain showed acute infarcts of R cerebral hemisphere, concerning for embolic source."*

**Hospital Course:**
Ioan Stancu is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 who presented to the ED on 8/30 for light headedness and diaphoresis. Initially had RBC/Hg and with history of melana, our suspicion is high for an ongoing GI bleed. Patient also found to have small R cerebral hemisphere strokes (unsteadiness, weakness of L hand) in the setting of recently discontinued warfarin for melena. The etiology of his stroke was



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Discharge Summary Notes (continued)

Discharge Summaries by Renner, Christiana Sahl, MD at 9/1/2018 5:23 PM (continued)

concerning for cardioembolus given lack of ipsilateral carotid stenosis, however TTE was negative. Patient was scheduled to undergo upper /lower GI scope but left AMA before the procedure was performed. He was also scheduled to undergo TEE and carotid US to further evaluate the etiology of his stroke, however neither these could be completed because he left AMA.

**Physical Exam:**
Pulse: 64 (09/01/18 1549), Monitored Heart Rate: 60 bpm (08/31/18 1211)
BP: 133/62, Temp: 35.8 °C (96.4 °F), Temp src: Oral, Respiratory Rate: 18, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 97 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Gen - AAOx3, NAD
Skin - no rashes
HEENT - atraumatic, EOMI, MMM, no tonsilar exudates
Neck - No lymphadenopathy, no JVD
CV - RRR, no m/r/g
Chest - lungs CTAB, no w/r/r
Abd - soft, NT, ND, +BS
Ext - warm, no c/c/e, 2+ DP pulses bilaterally
Neuro - CN2-12 grossly intact. Strength 5/5 in BUE and BLE. Sensation intact in BUE and BLE.

**Discharge Medications:**
**Discharge Medication List as of 9/1/2018 5:32 PM**

**CONTINUE these medications which have NOT CHANGED**

| | Details |
|---|---|
| **aspirin 81 mg chewable tablet** | Take 1 Tab by mouth one time a day., Disp-30 Tab, R-2, Normal |
| **lisinopril 10 mg tablet** | Take 1 tablet by mouth twice a day, Disp-60 tablet, R-3, e-Rx |
| **simvastatin 20 mg tablet** | Take 1 tablet by mouth daily at bedtime, Disp-30 tablet, R-3, e-Rx |
| **warfarin 5 mg tablet** | One pill daily except take one and half pill on Wednesday and Friday, Disp-30 tablet, R-2, e-Rx |

**Discharged Condition:** fair

**Disposition:** AMA

**Pending at discharge:**
TEE, carotid US, upper and lower GI scope.

**Issues to be addressed by PCP:**
HTN, HLD, secondary stroke prophylaxis.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Discharge Summary Notes (continued)

Discharge Summaries by Renner, Christiana Sahl, MD at 9/1/2018 5:23 PM (continued)

**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 11/8/2018 | 9:30 AM | Pandya, Sapna S., DO | IRVFP | IHC |

Michael Giles, MD
Psychiatry, PGY1
Internal Medicine Service

Of note, Mr. Stancu became frustrated when after completing prep for EGD and colonoscopy, they were not completed on 9/1/18. We have attempted to contact him to return for further w/u and to tell him to continue his ASA and statin.

Other medical problems as above.

Christiana S. Renner, MD
x8188

Electronically signed by Renner, Christiana Sahl, MD at 9/5/2018 2:40 PM

Discharge Instructions

No notes of this type exist for this encounter.

Pathology Results

No results found

Consult Orders

| Ordered | | Start |
|---|---|---|
| 08/30/18 2239 | **Consult GI - General GI Service** AM PAGE<br>Comments: Reason for Consult: 63 yo M hx of PE in 2017 was placed on warfarin. Developed black stools so stopped warfarin in July. No black stools since. Hgb trending down. Admitted today for embolic stroke (6 days old). May need lifelong anticoagulation so we may need to investigate source of GI bleed.<br>Provider: (Not yet assigned) | 08/31/18 0715 |

| Question | Answer | Comment |
|---|---|---|
| Call Back Number: | 77345 | |
| Do you wish the consulting service to co-manage the problem? | Yes | |

| Ordered | | Start |
|---|---|---|
| 08/30/18 1710 | **Consult Neurology Service** ONCE<br>Comments: Reason for Consult: Left side weak, unsteady gait since Friday, also possible GI bleed.<br>Provider: (Not yet assigned) | 08/30/18 1711 |

| Question | Answer | Comment |
|---|---|---|
| Call Back Number: | 70475 Roppolo | |
| Do you wish the consulting | No | |

 

5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consult Orders (continued)

Ordered | | Start
--- | --- | ---
 | service to co-manage the problem? |

Medication List

Medications unreviewed at time of discharge

**aspirin** 81 mg delayed release tablet
Take 1 Tab by mouth one time a day.

**lisinopril** 10 mg tablet
Commonly known as: PRINIVIL ZESTRIL
Take 1 tablet by mouth twice a day

**simvastatin** 20 mg tablet
Commonly known as: ZOCOR
Take 1 tablet by mouth daily at bedtime

**warfarin** 5 mg tablet
Commonly known as: COUMADIN
One pill daily except take one and half pill on Wednesday and Friday

Pending Future Referrals
No pending future referrals found

Immunizations Administered for This Admission
No immunizations on file.

Procedure Notes
No notes of this type exist for this encounter.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Allergies as of 9/1/2018 (continued)

**Review Complete** On: **9/1/2018** By: **Abraham, Susy, RN**

Admission Diagnoses

Gastrointestinal hemorrhage with melena , Ataxia

Diagnoses

| | Comments |
|---|---|
| **Gastrointestinal hemorrhage with melena** - Primary<br>**Ataxia** | |

Medications

ASK your doctor about these medications

**aspirin** 81 mg delayed release tablet
Take 1 Tab by mouth one time a day.

**lisinopril** 10 mg tablet
Take 1 tablet by mouth twice a day

**simvastatin** 20 mg tablet
Take 1 tablet by mouth daily at bedtime

**warfarin** 5 mg tablet
One pill daily except take one and half pill on Wednesday and Friday

ED Provider Notes by Roppolo, Lynn Palacol, MD at 8/30/2018 3:21 PM

Author: Roppolo, Lynn Palacol, MD | Service: Emergency Medicine | Author Type: Attending
Filed: 8/30/2018 5:49 PM | Date of Service: 8/30/2018 3:21 PM | Creation Time: 8/30/2018 3:21 PM
Note Type: Addendum | Editor: Roppolo, Lynn Palacol, MD (Attending)
Related Notes: Original Note by Roppolo, Lynn Palacol, MD (Attending) filed at 8/30/2018 5:40 PM

Chief Complaint
Patient presents with

- Dizziness

History provided by: **Patient**
Language interpreter used: **No**
**15:21** Ioan John Stancu is a 63 year old male who presents to the ED c/o episode of light headedness and diaphoresis that occurred at noon at his building and engineering job 6 days ago. Pt went home after that occurred and took the next day off from work. Reports he has had intermittent episodes of unsteadiness since then; last time last night. Worse when standing. Also c/o L fingertip numbness since then as well. Reports difficulty typing. Admits fatigue; pt states he has not eaten enough since last week 2/2 loss of appetite. Endorses melena. Denies speech change, abd pain, CP , HA, n/v. Pt has not been taking OTC meds. Denies LOC or recent trauma or fall. No other concerns at this time.

**PMHx**: HTN, HLD, PE in 2017. Quit taking warfarin 1 month ago as he told his doctors that it made him dizzy. Takes 1 asa daily. Denies ulcers, GI bleeding.
**SHx**: Denies drinking, smoking, and drug use.

**Chart review**: CTA from June 2017 with PE.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

ED Provider Notes by Roppolo, Lynn Palacol, MD at 8/30/2018 3:21 PM (continued)

Current Outpatient Prescriptions

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 mg chewable tablet | Take 1 Tab by mouth one time a day. | 30 Tab | 2 |
| • lisinopril 10 mg tablet | Take 1 tablet by mouth twice a day | 60 tablet | 3 |
| • simvastatin 20 mg tablet | Take 1 tablet by mouth daily at bedtime | 30 tablet | 3 |
| • warfarin 5 mg tablet | One pill daily except take one and half pill on Wednesday and Friday | 30 tablet | 2 |

No Known Allergies

Past Medical History:

| Diagnosis | Date |
|---|---|
| • HTN (hypertension) | |
| • Hyperlipidemia | |
| • Pulmonary embolism | 06/2017 |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • HX HERNIA REPAIR, *inguinal* | Bilateral | |

Social History

Substance and Sexual Activity

| | |
|---|---|
| • Smoking status: | Never Smoker |
| • Smokeless tobacco: | Never Used |
| • Alcohol use | Yes |
| *Comment: casually* | |

Review of Systems
Constitutional: Positive for diaphoresis and fatigue. Negative for chills and fever.
HENT: Negative for congestion and sore throat.
Eyes: Negative for photophobia and redness.
Respiratory: Negative for shortness of breath and wheezing.
Cardiovascular: Negative for chest pain and palpitations.
Gastrointestinal: Negative for abdominal pain, diarrhea, nausea and vomiting.
**+melena**
Endocrine: Negative for polydipsia and polyuria.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Negative for arthralgias, back pain and myalgias.
Skin: Negative for rash and wound.
Neurological: Positive for light-headedness and numbness. Negative for syncope and headaches.
**+unsteadiness**

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

ED Provider Notes by Roppolo, Lynn Palacol, MD at 8/30/2018 3:21 PM (continued)

Hematological: Does not bruise/bleed easily.

Pulse: 66 (08/30/18 1340)
BP: 168/72, Temp: 36.7 °C (98.1 °F), Temp src: Oral, Respiratory Rate: 17, SpO2: 100 %, O2 Device: None (Room air)
SpO2 WNL

Physical Exam
Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished. No distress.
HENT:
Head: Normocephalic and atraumatic.
**MMM.**
Eyes: Conjunctivae and EOM are normal. Pupils are equal, round, and reactive to light.
Neck: Normal range of motion. Neck supple.
Cardiovascular: Normal rate and regular rhythm.
No murmur heard.
Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress. He has no wheezes.
Abdominal: Soft. Bowel sounds are normal. There is no tenderness.
Musculoskeletal: Normal range of motion. He exhibits no edema or tenderness.
**No BLE edema.**
Neurological: He is alert and oriented to person, place, and time. No cranial nerve deficit. Coordination and gait abnormal.
**Small amount of pronator drift and dysmetria to L hand.**

**Wide base gait.**
Skin: Skin is warm. No erythema.
Nursing note and vitals reviewed.

**MDM:**
63 year old male with h/o HTN, PE 1 year ago, off warfarin x 1 month presents with new dizziness, lateral gaze diplopia, unsteady gait, and incoordination of his L hand. Has pronator drift and dysmetria on LUE on physical exam as well as a wide base gait. Pt also endorses black stools. DDx is concerning for stroke and GI bleed off anticoagulation. Will do CT of head, lab work, and talk to neurology.

**Rechecks/Consults:**
Still waiting for CT head, labs noted, possible GI bleed, will give protonix, admit med; waiting neuro work up for possible stroke.
17:39
Talked to neuro, will be down to see pt.

**Last vitals:**

| | 08/30/18 1340 |
|---|---|
| BP: | 168/72 |
| Pulse: | 66 |
| Temp: | 36.7 °C (98.1 °F) |
| Resp: | 17 |



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

ED Provider Notes by Roppolo, Lynn Palacol, MD at 8/30/2018 3:21 PM (continued)

| | |
|---|---|
| SpO2: | 100% |
| TempSrc: | Oral |

**Follow Up:**
No follow-up provider specified.

**Prescription List:**
**New Prescriptions**
No medications on file

**Modified Medications**
No medications on file

**Encounter Diagnoses:**
No diagnosis found.

**Labs:**
Labs Reviewed - No data to display

**Radiology:**
No orders to display

**Disposition:** Admit

I, WILLIAM SHUTZE, am scribing for, and in the presence of, Lynn Palacol Roppolo, MD, on 08/30/18.
Electronically signed by: WILLIAM SHUTZE , scribe at 15:22 08/30/18 ,

I, Lynn Roppolo MD, personally performed the services described in the documentation, as scribed William Shutze in my presence, and it is both accurate and complete. Dr. Lynn Roppolo MD 17:14 08/30/18

Electronically signed by: Lynn Roppolo, MD 17:14 08/30/18

[illegible]

ED Provider Notes by Klein, Kelly Ruthanne, MD at 8/30/2018 7:15 PM

Klein, Kelly Ruthanne, MD
8/30/2018 7:16 PM
Signed

Service: Emergency Medicine
Date of Service: 8/30/2018 7:15 PM
Editor: Klein, Kelly Ruthanne, MD (Attending)

Author Type: Attending
Creation Time: 8/30/2018 7:15 PM

19:15 pt was seen by neurology. They wanted MR. I have ordered MR of brain w/o contrast.

Kelly R. Klein, MD August 30, 2018, 19:16

 5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

ED Provider Notes by Klein, Kelly Ruthanne, MD at 8/30/2018 7:15 PM (continued)

Kelly Ruthanne, MD at 8/30/2018 7:10 PM

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM

Batley, Kaitlin Young, MD
8/30/2018 8:52 PM
Attested
Warnack, Worthy R., MD at 8/31/2018 1:40 PM

Service: Neurology
Date of Service: 8/30/2018 5:37 PM
Editor: Batley, Kaitlin Young, MD (PGY 4)

Author Type: PGY 4
Creation Time: 8/30/2018 5:37 PM

1. Consult Neurology Service [350262328] ordered by Roppolo, Lynn Palacol, MD at 08/30/18 1710

Attestation signed by Warnack, Worthy R., MD at 8/31/2018 1:40 PM

**VASCULAR NEUROLOGY ATTENDING NOTE**

Chart reviewed, patient seen and examined and patient management discussed with Dr. Batley, Dr. Abhyankar and team. I agree with findings, assessment, and plan of care as noted. 63y/o man admitted to the medicine service on 8/30 with lightheadedness and diaphoresis, seen by neurology for evaluation of L hand weakness. See the consult note of Dr. Batley for details. Patient seen in the ED on 8/31 rounds at about 0915.
Results: 8/30 Brain MRI personally reviewed: multiple R hemispheric acute infarctions, presumably embolic in etiology. 8/31 CTA head and neck: no R ICA stenosis; incidentally identified L carotid stenosis of about 40%. 8/31 TTE w bubble study: no high embolic risk findings. pending.
Exam: NIHSS score 2: L facial weakness-1, L hemisensory-1.
Diagnoses: Multiple R hemispheric acute infarctions, presumably embolic (cardiac vs prothrombotic; no major R ICA stenosis on 8/31 CTA) in etiology. Hx PE 2017. Recent melena. Anemia. HTN. HLD.
Plan: Suggest TEE. Telemetry (consider loop monitor). ASA 81mg/d. Evaluation for etiology melena as per the primary team/GI service.
Worthy R. Warnack, MD
(214)205-5702

**Stroke History & Physical**

**Chief Complaint**

Ioan John Stancu is a 63 year old male who was referred by Dr. Roppolo for evaluation of left sided weakness and sensory changes for one week.

**History of Present Illness:**

Ioan John Stancu is a 63 year old man with HTN and history of PE who presents with one week of lightheadedness, and numbness and weakness of left hand, as well as melena. One week ago, he had an episode of lightheadedness and diaphoresis while at work. He felt off balance and had to sit down. He took the next few days off of work to recover. Since then, symptoms have persisted. He feels tired and feels like he is losing his balance as he walks, generally falling to the left side. His vision has been intermittently blurry, but no diplopia. He also has persistent numbness of his left hand (sparing his thumb), with his pinky finger being more affected than his pointer finger. He feels like his left hand is weak and like it is not working as well.

Of note, he was previously on warfarin due to history of PE about a year ago, etiology unclear. He stopped taking warfarin about a month ago after seeing blood in his stool. He generally takes an aspirin 81 mg daily, but has not taken it for the past few days due to his dizziness. He denies history of stroke.

**Allergies:**



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

BUN

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 12 | 6 - 23 mg/dL | Final |

CREATININE

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 0.84 | 0.67 - 1.17 mg/dL | Final |

Glucose Random

| Date | Value | Ref Range | Status |
|---|---|---|---|
| 08/30/2018 | 108 | 65 - 200 mg/dL | Final |

Other pertinent labs:

Time of system onset: 8/24/2018 11:30 AM
Last known well: 8/24/2018 11:29 AM

**Review of Systems**

**Constitutional:** Positive for increased fatigue. Negative for fever.
**ENT:** Negative for difficulty swallowing and difficulty hearing.
**Eyes:** Positive for blurred vision. Negative for double vision.
**Cardiology:** Negative for chest pain.
**Pulmonary:** Negative for shortness of breath.
**Gastrointestinal:** Negative for vomiting and abdominal pain.
**Genitourinary:** Negative for frequent urination.
**Endocrine:** Negative for polyuria.
**Hema/Lymph:** Positive for excessive bleeding.
**Musculoskeletal:** Negative for pain with function.
**Neurology:** Negative for seizures and coordination.
**Psychiatric:** Negative for sleep changes.
**Dermatology:** Negative for rash.

**General Examination**
Pulse: 62 (08/30/18 1817)
BP: 124/75, Temp: 36.7 °C (98.1 °F), Temp src: Oral, Respiratory Rate: 18, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 100 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Patient is a/an right-handed, well-developed, well-nourished Caucasian in no acute distress.

**Neck bruits** absent
**Cardiovascular:** Regular rate and rhythm and no murmurs, gallops or rubs.
**Pulmonary:** Respirations even and non-labored and lungs clear to auscultation bilaterally .
**Extremities:** No cynosis, clubbing or edema bilaterally and pulses 2+ bilaterally.

**Neurological Exam**
**Mental Status**
Patient is oriented to a time, place and person.

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

Fund of Knowledge is normal.

**Language**
Speech: Normal speech
Naming: 6/6 objects as per NIHSS
Repetition: 6/6 words as per NIHSS
Comprehension (follows simple step commands): 3

**Cranial Nerves (all cranial nerves must be examined)**
**Fundus:** Attempted to do fundoscopic exam, unable to visualize fundi.
**II:** Full visual fields.
**III:** PERRL
**III, IV, VI:** EOMI.
**V:** Facial sensation normal.
**VII:** Normal facial strength and symmetry.
**VIII:** Equal and symmetric to finger rub bilaterally.
**XIIII, X:** Symmetric soft palatal elevation, quality of speech and gag.
**XI:** Head turn on right: 5/5, on left: 5/5
**XII:** Tongue protusion midline and normal strength.

**Motor**
Bulk and tone: Normal bulk and tone.
Pronator drift: Yes left

**Right Arm**
Trapezius 5/5, Deltoid 5/5, Biceps 5/5, Triceps 5/5, Wrist Flexion 5/5, Wrist Extension 5/5, Finger Flexion 5/5, Finger Extension 4/5, Interosseoei 4/5

**Left Arm**
Trapezius 5/5, Deltoid 5/5, Biceps 5/5, Triceps 5/5, Wrist Flexion 5/5, Wrist Extension 5/5, Finger Flexion 5/5, Finger Extension 4/5, Interosseoei 4/5

**Right Leg**
Illiopsoas 5/5, Quadriceps 5/5, Hamstring 5/5, Tibialis/Anterioris 5/5, Gastrocnemius 5/5

**Left Leg**
Illipsoas 5/5, Quadriceps 5/5, Hamstring 5/5, Tibialis/Anterioris 5/5, Gastrocnemius 5/5

**Sensory:**

| | Light Touch | Pin Prick | Vibration |
|---|---|---|---|
| Right Arm | normal | normal | normal |
| Left Arm | decreased | decreased | |
| Right Leg | normal | normal | normal |

Printed on 9/24/18 11:05 AM
PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

| Left Leg | normal | normal | normal |
|---|---|---|---|

**Cerebellar:** Finger to nose and heel to shin without ataxia.
**Gait:** Normal base, stride, stance and arm swing.

**Reflexes - Right**
Biceps 2/4, Triceps 2/4, Brachioradialis 2/4, Patella 2/4, Ankle 2/4, Toe down

**Reflexes - Left**
Biceps 2/4, Triceps 2/4, Brachioradialis 2/4, Patella 2/4, Ankle 2/4, Toe down

**Admission**

National Institutes of Health Stroke Scale

| | |
|---|---|
| Level of Consciousness | 0 - alert |
| LOC Questions | 0 - answers both correctly |
| Commands | 0 - performs both correctly |
| Best Gaze | 0 - normal |
| Visual | 0 - no visual loss |
| Facial Palsy | 1 - minor paralysis |
| Right Motor Arm | 0 - no drift |
| Left Motor Arm | 1 - drift |
| Right Motor Leg | 0 - no drift |
| Left Motor Leg | 0 - no drift |
| Limb Ataxia | 0 - absent |
| Sensory | 1 - mild-to-moderate sensory loss |
| Best Language | 0 - no aphasia |
| Dysarthria | 0 - normal |
| Extinction, Inattention | 0 - no abnormality |

Admission NIHSS Score 3
Date/time of completion 8/30/2018 7:00 PM

**Pre-Morbid Modified Rankin Scale:**
0 - No symptoms at all

ED arrival date/time: 8/30/2018 1335

Imaging (time and date resulted by Neurology)

| | |
|---|---|
| Alteplase given | No |
| Reason(s) | outside of 4.5 hour time window |
| Neuro EVT | No |
| Reason(s) | outside of 6 hour thrombectomy window |

**Assessment and Plan**

Printed on 9/24/18 11:05 AM

PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Consults by Batley, Kaitlin Young, MD at 8/30/2018 5:37 PM (continued)

Ioan John Stancu is a 63 year old man with HTN and history of PE previously on warfarin until a month ago who presents with one week of lightheadedness, and numbness and weakness of left hand, as well as melena, in the setting of anemia secondary to GI bleed. His sensory symptoms are left sided, primarily involving his left hand. He does have some very minimal flattening of left nasolabial fold as well. Given his history of clot with no known etiology and the fact that he has been off of warfarin for a month, he is at increased risk for stroke.

MRI brain w/o contrast

Pt will be staffed on AM rounds tomorrow with the Stroke Service.

Kaitlin Batley, MD
PGY4 Pediatric Neurology
Pager: 972-229-2286

Worthy R., MD at 8/31/2018 1:40 PM

Progress Notes by Abhyankar, Rahul Dilip, MD at 8/31/2018 1:24 PM

Abhyankar, Rahul Dilip, MD | Service: Neurology | Author Type: PGY 4
8/31/2018 1:34 PM | Date of Service: 8/31/2018 1:24 PM | Creation Time: 8/31/2018 1:24 PM
Attested Addendum | Editor: Abhyankar, Rahul Dilip, MD (PGY 4)
Original Note by Abhyankar, Rahul Dilip, MD (PGY 4) filed at 8/31/2018 1:32 PM
Warnack, Worthy R., MD at 8/31/2018 1:42 PM

Attestation signed by Warnack, Worthy R., MD at 8/31/2018 1:42 PM

**VASCULAR NEUROLOGY ATTENDING NOTE**

Chart reviewed, patient seen and examined and patient management discussed with Dr. Abhyankar and team. I agree with findings, assessment, and plan of care as noted. See my attestation of Dr. Batley's consult note for details.

Worthy R. Warnack, MD
(214)205-5702

Short Neurology Update

This patient has multifocal right hemispheric stroke without concurrent carotid stenosis on the right side. The etiology of his stroke is concerning for cardioembolus given lack of ipsilateral carotid stenosis.

His left carotid does have mild to moderate stenosis which can be better evaluated by carotid doppler (pending). TTE is unremarkable.



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

H&P by Huntley, Geoffrey Donald, MD at 8/30/2018 7:15 PM (continued)

stopped warfarin a few weeks ago after developing melena. Since having the melena, he has had worsening fatigue. No recent melena since stopping warfarin.

Exam notable for conjunctival pallor. RRR. Lungs clear. On neuro exam, has decreased coordination in L hand on rapid alternating finger sequency. Had difficulty opening a water bottle that was in a plastic bag. Affect also seems incongruent--is perseverating on small details, but is redirectable with time.

Labs and imaging reviewed

Assessment and Plan as follows:

1. Embolic stroke: unclear source, but occurred after stopping warfarin. TTE negative. Neuro on board, appreciate assistance. Initially had planned on starting heparin gtt, but Neuro recommends only ASA 81 for now. TEE and tele ordered as per Neuro recs. Doubt pt will remain in house for TEE, but we will try. Continue statin

2. Melena with normocytic anemia: suspect UGIB, which is important, as pt may need to be restarted on anticoagulants. Hb stable here today so unlikely to have rapidly bleeding lesion. After much discussion, Mr. Stancu is amenable to EGD/colonoscopy. Prep tonight. Monitor Hb and transfuse prn.

Other medical problems as above.

Christiana S. Renner, MD
Hospitalist
214-786-8188

**R1 Admission H&P**

**Chief Complaint:** Light headedness and diaphoresis

**HPI:**

Patient is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 previously on warfarin who presented to the ED on 8/30 for light headedness and diaphoresis.

Patient reports that he had an episode of light headedness 6 days ago while at work. He states he wasn't feeling well so he sat down and then was profusely sweating. This went a way after a while. He has never had this problem before. Since then, he has intermittent unsteadiness, as if he is walking on a "tight rope". He also reports having a loss in sensation and decreased strength in his left hand. He reports dropping some dishes because of the loss of sensation. This has never happened to him before. He also reports some blurry vision when waking up in the morning and watching TV that is new for the past 6-7 days. He denies drooping of eyelids.

Additionally, he reports generalized fatigue, decreased appetite, and dark stools. He is on warfarin for a prior PE in 2017. He started to develop dark stools a couple of months ago, and he was told to stop taking warfarin if these develop. He has not taken warfarin since July. At that time, he describes his stools as black and very sticky. He has not had any more of these stools since stopping warfarin. He now has regular, brown, formed stools. He has never had a colonoscopy, but he had FOT test 3 months ago that was negative. He denies

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

H&P by Huntley, Geoffrey Donald, MD at 8/30/2018 7:15 PM (continued)

abdominal pain, reflux-like symptoms, or excessive NSAID use. He has stopped taking aspirin since the onset of the unsteadiness.

In the ED, vitals were 36.7, HR 66, 168/72, 100%. Labs were remarkable for BMP wnl, Hgb 9.3 (15.2 in 2017), hepatic panel wnl, TSH wnl, Trop 10. UA, ECG, and CXR were unremarkable. Neurology was consulted, who recommended MR brain.
MR brain showed acute infarcts of R cerebral hemisphere, concerning for embolic source.

**Past Medical History:**

Past Medical History:

| Diagnosis | Date |
|---|---|
| • HTN (hypertension) | |
| • Hyperlipidemia | |
| • Pulmonary embolism | 06/2017 |

**Past Surgical History:**
Hernia repair years ago

**Family History:**
Mother- Healthy
Father- Healthy

**Social History**
Tobacco- Never smoked
Etoh- 2-3 beers on the weekend
Drugs-Denies
Works as an engineer at Hyatt

**Medications**
No current facility-administered medications on file prior to encounter.

Current Outpatient Prescriptions on File Prior to Encounter

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 mg chewable tablet | Take 1 Tab by mouth one time a day. | 30 Tab | 2 |
| • lisinopril 10 mg tablet | Take 1 tablet by mouth twice a day | 60 tablet | 3 |
| • simvastatin 20 mg tablet | Take 1 tablet by mouth daily at bedtime | 30 tablet | 3 |
| • warfarin 5 mg tablet | One pill daily except take one and half pill on Wednesday and Friday | 30 tablet | 2 |

Stopped taking aspirin July

**Allergies**

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

NKDA

**Review of Systems: Positive symptoms in bold**
General: fevers, chills, unintentional weight loss, **Poor appetite, hasn't eaten a good meal in 3-4 days**
HEENT: **new blurry vision change**, runny nose, sore throat
CV: chest pain, palpitations, orthopnea
Resp: cough, wheezing, shortness of breath
GI: **As per HPI**
GU: irregular menses, hot flashes, breast masses
MSK: muscle pain, joint pain, decreased ROM .
Skin: pruritis, rashes, lesions/lumps
Neuro: **As per HPI**
Endo: heat/cold intolerance, thinning hair, dry skin, polyuria, polydipsia

**Physical Exam**
Pulse: 62 (08/30/18 1817)
BP: 124/75, Temp: 36.7 °C (98.1 °F), Temp src: Oral, Respiratory Rate: 18, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 100 %, O2 Device: None (Room air), BMI (Calculated): 24.5

Body mass index is 24.41 kg/m².
Gen: A&O x 3 in NAD.
Eyes: Non-sclerotic
ENT: Oropharynx clear of exudates and erythema
Neck: No JVD. No LAD.
CV: Non-tachycardic. Regular rhythm. No extra sounds, murmurs, rubs.
Resp: CTAB with normal respiratory effort.
Abd: Non-distended. BS present. Soft, nontender.
Musculoskeletal: ROM full
Skin: No rashes.
Extremities: Pulses full and equal. No edema.
Neuro: CN 2-12 intact. He has unsteady and wide gait. L hand has minor past pointing on finger-to-nose. L arm has mild pronator drift. L hand is 4/5 strength to finger grip and spread. Decreased sensation to light tough on L hand and all L fingers.
Psych: Appropriate mood, affect.
DRE negative for melena or hematochezia.

**Pertinent Labs**
Labs were remarkable for BMP wnl, Hgb 9.3 (15.2 in 2017), hepatic panel wnl, TSH wnl, Trop 10, HIV nonreactive

**Imaging:**
CXR 8/30
Unchanged mild left lower lobe atelectasis.

MR BRAIN 8/30
Brain: Multiple foci of restricted diffusion involving the right cerebral hemisphere including right temporal lobe, right occipital lobe, right parietal lobe, right basal ganglia, and right centrum semiovale are noted with corresponding T2 and FLAIR hyperintense most likely representative of acute infarcts.

Additional foci of T2 such FLAIR hyperintensity signal involving the anterior right and left deep and



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

H&P by Huntley, Geoffrey Donald, MD at 8/30/2018 7:15 PM (continued)

periventricular white matter, nonspecific but most like the sequela of chronic microvascular ischemic changes.

Mild global cerebral volume loss. There is no hydrocephalus, acute hemorrhage, mass effect, midline shift, or extra axial fluid collection. Midline structures are within normal limits. The paranasal sinuses are clear. Hypopneumatized right mastoid air cells.

Echo 4/13/15
Normal chamber sizes.
Normal LV wall motion. Left ventricular systolic function is normal. LVEF = 66% by 2D single plane method.
Left Ventricular Filling pattern is normal for age.
The right ventricle is normal in size and function.
Mild aortic regurgitation. Insufficient TR jet to estimate RVSP.
The IVC is normal in size with an inspiratory collapse of greater then 50%, suggesting normal right atrial pressure.
There is no pericardial effusion.
No prior echo study available for comparison.

**EKG:**
Normal sinus rhythm
Minimal voltage criteria for LVH, may be normal variant
Borderline abnormal ECG
When compared with ECG of 21-JUN-2017 07:38,
No significant change was found

**Assessment and Plan:**
Patient is a 63 year old male with PMH significant for HTN, HLD, PE in 2017 who presented to the ED on 8/30 for light headedness and diaphoresis.

Patient presents with new neurologic symptoms (unsteadiness, weakness of L hand) in the setting of recently stopping warfarin for melena. MRI brain showed embolic stroke to R cerebral hemisphere.

# Ischemic stroke to R cerebral hemisphere, likely embolic
# Unsteadiness
# L hand weakness
# Hx of PE in 2017
In the setting of previous VTE, recent discontinuation of anticoagulation, and development of L sided hand weakness and numbness, he was at risk for stroke. Unfortunately, this is outside of the window (4.5 hrs alteplase and 6 hr thrombectomy) for intervention since it occurred about 6- 7 days ago. I am uncertain of the cause of the embolism. He has no history of atrial fibrillation. TTE in 2015 did not mention any ASD or PFO. However, unifying diagnosis for prior PE and now embolic stroke would be the presence of an ASD.
- Neuro consult placed in the E D, will follow as inpatient, appreciate recommendations for secondary prevention and further evaluation
- Must be cautious of anticoagulation in the setting of recent melena
- Tele to evaluate for paroxysmal a-fib
- TTE with bubble study to look for ASD
- Consider carotid artery US
- Lipid panel

# Anemia
# Melena

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

Worthy R. Warnack, MD
(214)205-5702

## Neurovascular (Stroke) Progress Note

| | | | |
|---|---|---|---|
| **Name:** | Ioan John Stancu | **Date:** | 9/1/2018 10:58 |
| **MR#:** | 1408904 | **DOB:** | 6/8/1955 |
| **Room #:** | 16-414/01 | **Age/Sex:** | 63 year old male |
| **Admit Date:** | 8/30/2018 | **LOS:** | 2 |

**Brief Overview:** 63 yo M with LUE weakness/numbness since 1 week, found to have multifocal right hemispheric infarcts. The distribution suggests embolic origin and work up is In place to to find source. Ipsilateral carotid is not stenosed, waiting on dopplers for further clarfication.

**Subjective:**
No acute events overnight.
Patient is scheduled for GI scopy today
States the numbness is improving

ROS: patient denies CP, SOB, N/V

**Objective:**
**Vitals**
Pulse: 58 (09/01/18 0736), Monitored Heart Rate: 60 bpm (08/31/18 1211)
BP: 128/70, Temp: 36.6 °C (97.9 °F), Temp src: Oral, Respiratory Rate: 16, Height: 6', Weight: 81.6 kg (180 lb), SpO2: 98 %, O2 Device: None (Room air), BMI (Calculated): 24.5

RR: Resp Avg: 17.3 Min: 16 Max: 18
O2 Sats: SpO2 Avg: 97.4 % Min: 93 % Max: 99 %

**Physical Examination:**

**Neurological:**
**Mental status:**
Level of consciousness: alert & oriented to self, place & time, responds to voice spontaneously
Speech: fluent with normal rate, tone, and volume.
Language: normal fluency, naming, repetition, reading

**Cranial nerevs:**
- CNII: visual fields intact to confrontation, fundoscope: normal disc/cup
- CNIII, IV, VI: EOM intact, pupils round of equal size bilaterally, reactive to light
- CNV: strong jaw clench. Sensation to light touch equal B L in distribution of V1, V2, V3.
- CNVII: smile and eye closure symmetric. Slight NL fold asymmetry L flatter

Printed on 9/24/18 11:05 AM PARKLAND HEALTH & HOSPITAL SYSTEM



5201 Harry Hines Blvd.
Dallas TX 75235-7708

Stancu, Ioan John
MRN: 1408904, DOB: 6/8/1955, Sex: M
Acct #: 623114903
Adm: 8/30/2018, D/C: 9/1/2018

Progress Notes by Mirza, Shazia A, MBBS at 9/1/2018 10:57 AM (continued)

- CNVIII: hearing intact to finger rubs BL.
- CNIX, X: palatal shelf elevation is equal BL.
- CNXI: shoulder shrug, head turns 5/5 strength BL.
- CNXII: no deficits with side-to-side tongue movement.

**Motor: Motor**: NML Tone and Bulk

| Neck Flex | | 5 |
|---|---|---|
| | Right | *Left* |
| Deltoid | 5 | 5 |
| *Triceps* | 5 | 5 |
| *Biceps* | 5 | 5 |
| *Wrist Exten* | 5 | 5 |
| *Interossei* | 5 | 5 |
| *Grip* | 5 | 5 |
| *Iliopsoas* | 5 | 5 |
| *Quadriceps* | 5 | 5 |
| *Hamstrings* | 5 | 5 |
| *Dorsi Flex* | 5 | 5 |
| *Plantar Flex* | 5 | 5 |

**Reflexes**:

| | R | L |
|---|---|---|
| Biceps | 2/4 | 2/4 |
| Triceps | 2/4 | 2/4 |
| Brachioradialis | 2/4 | 2/4 |
| Patella | 2/4 | 2/4 |
| Ankle | 2/4 | 2/4 |
| Clonus | 0 Beats | 0 Beats |
| Babinski | Downgoing | Downgoing |

**Gait**: Normal arm swing, stride length and posture, Able to walk on heels, toes, and tandem without difficulty.
Extremities: No swelling
Skin: Warm, no rashes or lesions

**Sensation: on both UEs and LEs**
Slightly reduced pinprick on LUE (60%) improved since yesterday

**Coordination:**
Tremor: Absent
Dysmetria: Absent
Heel to Shin: Normal
Nose to Finger: Normal

Romberg (-)